**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| TEXAS, WISCONSIN, ALABAMA, ARKANSAS, ARIZONA, FLORIDA, GEORGIA, INDIANA, KANSAS, LOUISIANA, PAUL LePAGE, Governor of Maine, Governor Phil Bryant of the State of MISSISSIPPI, MISSOURI, NEBRASKA, NORTH DAKOTA, SOUTH CAROLINA, SOUTH DAKOTA, TENNESSEE, UTAH, WEST VIRGINIA, NEILL HURLEY, and JOHN NANTZ,<br><br>                              Plaintiffs,<br><br>   v.<br><br>UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ALEX AZAR, in his Official Capacity as SECRETARY OF HEALTH AND HUMAN SERVICES, UNITED STATES INTERNAL REVENUE SERVICE, and DAVID J. KAUTTER, in his Official Capacity as Acting COMMISSIONER OF INTERNAL REVENUE,<br><br>                              Defendants.<br><br>CALIFORNIA, CONNECTICUT, DISTRICT OF COLUMBIA, DELAWARE, HAWAII, ILLINOIS, KENTUCKY, MASSACHUSETTS, MINNESOTA by and through its Department of Commerce, NEW JERSEY, NEW YORK, NORTH CAROLINA, OREGON, RHODE ISLAND, VERMONT, VIRGINIA, and WASHINGTON,<br><br>               [Proposed] Intervenors-Defendants. | Civil Action No. 4:18-cv-00167-O |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

## INTRODUCTION

By granting the Motion to Intervene, the Court will have the opportunity to hear from thirty-six states and the District of Columbia, and not just the twenty Plaintiff States, prior to determining whether to enjoin a federal law of nationwide import. In this action, the Plaintiffs ask the Court to enjoin the Patient Protection and Affordable Care Act (ACA), claiming it harms states by mandating that they spend unrecoverable state funds, by preventing them from enforcing their own laws and policies, and by requiring that they take affirmative action to fix problems allegedly caused by the ACA. *See generally* Brief of Plaintiffs in Support of Application for Preliminary Injunction at 40-48. The Proposed Intervenors-Defendants or Intervenor States, on the other hand, assert that an injunction would gravely harm their economic, sovereign, and quasi-sovereign interests, including costing them hundreds of billions of dollars for publicly-funded health programs which ensure the health and well-being of millions of their citizens and which protect their state budgets from healthcare costs for the uninsured. In light of the truly devastating consequences that would flow from the relief that the Plaintiff States seek, the Intervenor States require party status so that they may fully present their evidence to the Court. Indeed, it would be difficult to imagine a more compelling case for intervention. The law, and basic notions of fairness, demand no less.

In their response, the Plaintiff States do not dispute that the Intervenor States have substantial interests at stake. Nor do they contest the Intervenor States' showing of the catastrophic harm to millions of Americans (including 1.28 million newly eligible Medicaid beneficiaries that reside in the Plaintiff States themselves) that would result from enjoining the ACA. ECF No. 15 at 3, n.3. Instead, they fault the Proposed Intervenors-Defendants for moving too "quickly." ECF No. 49 at 2. Such timely response, however, is warranted given the Plaintiff States' pending Application for a Preliminary Injunction (ECF No. 40), which seeks to strike down the ACA in its entirety even though the individual mandate penalty is not decreased to zero

until 2019.[1] The Proposed Intervenors-Defendants' participation at this critical juncture will ensure a complete evidentiary record and the full range of legal arguments that only the Intervenor States can provide. The Court should grant the Motion to Intervene.

## ARGUMENT

### I. THE PROPOSED INTERVENOR-DEFENDANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT UNDER RULE 24(A)(2)

As a preliminary matter, the Plaintiff States do not contest—and thus concede—that the Intervenor States meet the first three factors governing mandatory intervention, including that the motion is timely, that the Intervening States have substantial and legally protectable interests in this action, and that the disposition of the action may impair or impede their ability to protect those interests. ECF No. 49 at 2. The Plaintiff States further concede that the burden of demonstrating that the existing parties cannot adequately represent the Intervening States' interests is "minimal." *Id*. at 3, n.2 (citing *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996)). Yet the Plaintiff States assert that such a minimal burden cannot possibly be met before the federal Defendants file a responsive pleading. *Id*. at 3, n.3. The Plaintiff States are mistaken.

#### A. The Intervenor States Have Met Their "Minimal" Burden of Showing That the Federal Defendants "Might" Not Adequately Represent Their Interests

Even without the benefit of a pleading from the federal Defendants, the Intervenor States have easily met their minimal burden of demonstrating that the federal Defendants do not adequately represent their interests. First, this Court has already "determine[d] that a response from Defendants' is unnecessary to resolve the motion to intervene by California, et al." ECF No. 48 at 1. That ruling demonstrates that "complete information about the federal defendants' substantive position" is not necessary to resolve the pending motion. ECF No. 49 at 3, n.3. Moreover, as the Court noted, the federal Defendants themselves do not object to the Court

---

[1] *See* PL 115-97, 2017 HR 1, at *2092 (Dec. 22, 2017) ("Tax Cuts and Jobs Act").

ruling on the Motion to Intervene before they file a response. *Id*. Especially in light of the federal Defendants' non-objection to an expedited ruling, there is no impediment to ruling on the Motion to Intervene before the federal Defendants file a responsive pleading in this matter.

Second, the presumption of adequate representation does not apply here precisely because it is already apparent that the interests of the federal Defendants and the Intervenor States "may not align precisely," which is all the law requires.[2] *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014). As outlined in the moving papers, the federal Defendants and Intervenor States have fundamentally different structural interests in the ACA. ECF No. 15 at 19-21. The federal Defendants are obligated to pay hundreds of billions of dollars for the ACA's healthcare programs, whereas the Intervenor States are the direct recipients of federal funding for those programs. *Id*. The Intervenor States—not the federal Defendants—have relied on the ACA's promises to build their existing healthcare infrastructure and to organize the orderly operation of their healthcare systems. *Id*. The Intervenor States—not the federal Defendants—will pay the uncompensated care costs for millions of their residents who will lose health insurance if billions of dollars in federal tax credits disappear. *Id*. at 15-17. The Intervenor States directly provide and regulate the provision of healthcare to millions of their citizens through the ACA's Medicaid expansion. *Id*. at 3-4.[3] These fundamentally different structural, fiscal, and reliance interests are not—as the Plaintiff States assert (ECF No. 49 at 4)—merely an "abstract" argument that the federal Defendants have broader interests than the Intervenor States. These divergent interests

---

[2] Plaintiffs erroneously assert that the Intervenor States do not "contest[]" that the presumption of adequate representation applies here. ECF No. 49 at 5. In fact, the Intervenor States previously stated that it is "unclear whether the federal government shares the Intervenor States' objective of preserving the ACA" in light of President Trump's numerous public statements and administrative actions designed to undermine it. ECF No. 15 at 21, n.14.

[3] The benefits that flow from the ACA through the Medicaid program are not limited to those states that expanded Medicaid coverage. Indeed, residents of some states are now taking up Medicaid as a result of the ACA, despite the fact that these states have not expanded Medicaid coverage. *See, e.g.*, *id.* at 13-14 & n.3 (313,000 more residents in North Carolina are enrolled in Medicaid as a result of the ACA, even though North Carolina is not one of the 33 Medicaid-expansion jurisdictions).

are concrete, specific, and readily apparent even before the federal Defendants file a responsive pleading in this matter.

Third, the federal Defendants and Intervenor States are already on record with differing legal positions on core issues in this case. Most importantly, the Plaintiff States argue (Amended Complt, ¶ 58) that the ACA's community-rating and guaranteed-issue provisions are not severable from the individual mandate, a point that the federal Defendants have also previously argued. *See NFIB v. Sebelius*, 567 U.S. 519 (2012). The Intervenor States disagree with that position and have a strong interest in ensuring that the ACA's community-rating and guaranteed-issue provisions are upheld because they allow the States' residents to maintain affordable insurance regardless of their health status. The federal government, moreover, has an "institutional interest in shielding its actions from state intervention through the courts," while the Intervenor States plainly do not. *Texas v. United States*, 805 F.3d 653, 663 (5th Cir. 2015). These different legal positions are apparent even at this early stage of the litigation.

Considered all together, these divergent interests and distinct legal positions easily meet an intervenors' "minimal" burden under binding Fifth Circuit precedent. *See Brumfield*, 749 F.3d at 345-46 (three times referring to the "minimal" burden of showing inadequate representation and holding that the presumption of adequate representation does not apply where the interests of the existing parties and the intervenors "may not align precisely"); *see also Texas*, 805 F.3d at 663 (affirming that "the lack of unity in all objectives, combined with real and legitimate additional or contrary arguments, is sufficient to demonstrate that the representation may be inadequate.")

*Brumfield* is directly on point and dispositive. In that case, the Fifth Circuit held that parents whose children received school vouchers under a Louisiana law were entitled to intervene as defendants in a lawsuit brought by the federal government to stop the voucher program. *Brumfield*, 749 F.3d at 346. Although the State of Louisiana and the parents both "vigorously oppose[d] dismantling the voucher program," the court concluded that the presumption of adequate representation did not apply because the State had more extensive

interests to take into consideration than the parents, and because the State had already made a single legal concession (that the district court had continuing jurisdiction over the case) that the parents contested. *Id*. at 345-46. That was sufficient to demonstrate that there "might" be inadequate representation, "which is all that the rule requires." *Id*. at 346. Here, the case for intervention is even stronger. The Intervenor States' fundamentally different sovereign, structural, fiscal, and reliance interests in the ACA, coupled with the federal Defendants' legal concession in *NFIB*, warrant intervention under *Brumfield*. The Intervenor States have met their "minimal" burden of demonstrating that the federal Defendants "might" not adequately represent their interests. *Id.; Texas*, 805 F.3d at 663.

**B. Granting Intervention Will Not Prejudice the Existing Parties, But Denying Intervention Will Greatly Prejudice the Intervenor States**

Allowing the Intervenor States into this lawsuit will also not prejudice the existing parties in any way. The Intervenor States have agreed to proceed on the preliminary injunction briefing schedule ordered by the Court, and therefore will not delay those proceedings. Indeed, the Plaintiffs States do not—and cannot—claim that permitting intervention will prejudice them in any way.[4] And it is well-established that "[f]ederal courts should allow intervention where no one would be hurt and greater justice could be attained." *Wal-Mart Stores, Inc. v. Texas Alcoholic Bev. Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016). Because the Intervenor States have specified the "particular ways in which their interests diverge" from the federal government's, they are entitled to intervene as a matter of right. *Texas*, 805 F.3d at 663.

At the same time, denying their motion would greatly prejudice the Intervenor States. If they are not parties, they cannot present evidence of the harms that would flow if this Court grants the Plaintiff States' request for a preliminary injunction. And the States are uniquely positioned to present evidence about those impacts—it is their residents who depend on the

---

[4] The Plaintiff States note that "there are consequences for unnecessarily admitting purported intervenors" but they do not assert that any of those "consequences" will actually occur here. ECF No. 49 at 6.

ACA, their healthcare systems that have been restructured around the ACA, and it would be their responsibility to care for the millions of people who would find themselves uninsured if this Court rules in the Plaintiff States' favor. Intervention is also necessary to ensure there is at least one party that will present a robust defense of the ACA—a guarantee that the Intervenor States cannot take for granted. *See* ECF No. 15 at 21 n. 14 (noting that this Administration has chosen not to defend key components of the ACA in court).

## II.   THE INTERVENOR STATES ALSO SATISFY THE REQUIREMENTS FOR PERMISSIVE INTERVENTION

The Plaintiff States do not contest—and thus also concede—that the Intervenor States have satisfied the prerequisite for permissive intervention under Rule 24(b) by demonstrating that they have a defense that shares "a common question of law or fact" with the existing action. ECF No. 15 (citing Fed. R. Civ. P. 24(b)). Instead, the Plaintiff States assert that "[e]ven if the conditions set forth in Rule 24(b) are satisfied [] it remains within the discretion of the district court to determine whether to allow the intervention." ECF No. 49 at 6. However, the grounds for opposing permissive intervention fail.

Although the Plaintiff States urge the Court to deny permissive intervention, the cases they cite are inapposite. ECF No. 49 at 6, 7. For instance, a number of these cases involve untimely requests. See, e.g., *Staley v. Harris Cty.*, 160 F. App'x 410, 412 (5th Cir. 2005) (motion to intervene filed nine days after entry of a final judgment deemed untimely); *Lucas v. McKeithen*, 102 F.3d 171, 173 (5th Cir. 1996) (intervention properly denied due to "inordinate delay"). The remainder of the cases cited involve circumstances in which the proposed intervenor did not intend to assert different legal arguments or develop additional facts relevant to the lawsuit. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 (5th Cir. 1984) (intervention denied where party did not "intend to make any contribution to the development of the relevant facts"); *Ingebretsen v. Jackson Public School Dist.*, 88 F.3d 274, 281 (5th Cir. 1996) (proposed intervenor would bring no "new issues to the case"); *Cajun Elec. Power Coop., Inc v. Gulf State Util., Inc*. 940 F.2d 117, 120 (5th Cir. 1991) (party did not offer any "unique

arguments to the litigation."). Here, by contrast, the evidence submitted by the Intervenor States in support of the Motion to Intervene demonstrates how they intend to develop additional facts that are relevant to this litigation, in addition to making distinct legal arguments. The decidedly different facts of these cases do not weigh against the Court granting permissive intervention.

Equally unfounded are the Plaintiff States' concerns regarding the impact of the Intervenor States on these proceedings. The Intervenor States' participation will not needlessly delay this matter, especially in light of what they can offer to the Court by way of relevant evidence to assist it in adjudicating the important issues raised by this case. Also, the Intervenor States have committed themselves to abiding by the preliminary injunction briefing deadlines established by the Court in its April 24, 2018 Order (ECF No. 31). ECF No. 42 at 5. Therefore, the Plaintiff States cannot reasonably argue undue delay or prejudice under the terms of Rule 24(b).

As previously discussed, the Intervenor States' motion is timely, and intervention will not cause undue delay or prejudice to the existing parties. Further, common questions of law and fact plainly exist and permissive intervention is wholly within the Court's discretion to permit. Therefore, if the Court declines to grant mandatory intervention, it should grant permissive intervention to the Intervenor States so that they can protect their economic, sovereign, and quasi-sovereign interests in hundreds of billions of dollars for publicly-funded health programs that ensure the health and well-being of millions of their residents.

## CONCLUSION

For all of the reasons outlined in the moving papers and above, the Intervenor States respectfully ask this Court to grant their Motion to Intervene as of right, or alternatively for permissive intervention, allowing them to intervene in this lawsuit as defendants.

Dated: May 4, 2018                    Respectfully submitted,

                                              XAVIER BECERRA
Attorney General of California
JULIE WENG-GUTIERREZ
Senior Assistant Attorney General
KATHLEEN BOERGERS
Supervising Deputy Attorney General
NIMROD P. ELIAS
Deputy Attorney General

/s/ Neli N. Palma
NELI N. PALMA
Deputy Attorney General
California State Bar No. 203374
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA  94244-2550
Telephone: (916) 210-7522
Fax: (916) 322-8288
E-mail: Neli.Palma@doj.ca.gov

*Attorneys for Intervenors-Defendants*

GEORGE JEPSEN
Attorney General of Connecticut
*Attorneys for Intervenor-Defendant*
*the State of Connecticut*

MATTHEW P. DENN
Attorney General of Delaware
ILONA KIRSHON
Deputy State Solicitor
DAVID J. LYONS
Deputy Attorney General
*Attorneys for Intervenor-Defendant*
*the State of Delaware*

RUSSELL A. SUZUKI
Attorney General of Hawaii
HEIDI M. RIAN
Deputy Attorney General
ROBERT T. NAKATSUJI
Deputy Solicitor General
*Attorneys for Intervenor-Defendant*
*the State of Hawaii*

LISA MADIGAN
Attorney General of Illinois
DAVID F. BUYSSE
Deputy Chief, Public Interest Division
ANNA P. CRANE
Public Interest Counsel
MATTHEW V. CHIMIENTI
Assistant Attorney General, Special Litigation Bureau
*Attorneys for Intervenor-Defendant*
*the State of Illinois*

ANDY BESHEAR
Attorney General of Kentucky
LA TASHA BUCKNER
Executive Director, Office of Civil and
Environmental Law
S. TRAVIS MAYO
TAYLOR PAYNE
Assistant Attorneys General
*Attorneys for Intervenor-Defendant*
*the Commonwealth of Kentucky*

MAURA HEALEY
Attorney General of Massachusetts
STEPHEN P. VOGEL
Assistant Attorney General
*Attorneys for Intervenor-Defendant*
*the Commonwealth of Massachusetts*

OFFICE OF THE ATTORNEY GENERAL
State of Minnesota
SCOTT IKEDA
Assistant Attorney General
*Attorneys for Intervenor-Defendant the State of*
*Minnesota by and through its Department of*
*Commerce*

GURBIR S. GREWAL
Attorney General of New Jersey
JEREMY M. FEIGENBAUM
Assistant Attorney General
ANGELA JUNEAU BEZER
Deputy Attorney General
*Attorneys for Intervenor-Defendant*
*the State of New Jersey*

ERIC T. SCHNEIDERMAN
Attorney General of New York
STEVEN C. WU
Deputy Solicitor General
LISA LANDAU
Bureau Chief, Health Care Bureau
ELIZABETH CHESLER
Assistant Attorney General, Health Care Bureau
*Attorneys for Intervenor-Defendant*
*the State of New York*

JOSHUA H. STEIN
Attorney General of North Carolina
SRIPRIYA NARASIMHAN
Deputy General Counsel
*Attorneys for Intervenor-Defendant*
*the State of North Carolina*

ELLEN F. ROSENBLUM
Attorney General of Oregon
HENRY KANTOR
Special Counsel to the Attorney General
SCOTT KAPLAN
Assistant Attorney General
*Attorneys for Intervenor-Defendant*
*the State of Oregon*

PETER KILMARTIN
Attorney General of Rhode Island
MICHAEL W. FIELD
Assistant Attorney General
MARIA R. LENZ
Special Assistant Attorney General
*Attorneys for Intervenor-Defendant*
*the State of Rhode Island*

THOMAS J. DONOVAN, JR.
Attorney General of Vermont
BENJAMIN D. BATTLES
Solicitor General
*Attorneys for Intervenor-Defendant*
*the State of Vermont*

MARK R. HERRING
Attorney General of Virginia
TOBY J. HEYTENS
Solicitor General
MATTHEW R. MCGUIRE
Deputy Solicitor General
*Attorneys for Intervenor-Defendant*
*the Commonwealth of Virginia*

ROBERT W. FERGUSON
Attorney General of Washington
JEFFREY G. RUPERT
Chief, Complex Litigation Division
JEFFREY T. SPRUNG
Assistant Attorney General
*Attorneys for Intervenor-Defendant*
*the State of Washington*

KARL A. RACINE
Attorney General for the District of Columbia
ROBYN R. BENDER
Deputy Attorney General
VALERIE M. NANNERY
Assistant Attorney General
*Attorneys for Intervenor-Defendant*
*the District of Columbia*

12

## *Certificate of Service*

On _____May 4, 2018_____ I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5 (b)(2).

s/ Michelle Schoenhardt