## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| TEXAS, *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>                    Defendants,<br><br>     and<br><br>CALIFORNIA, *et al.*,<br><br>                    Intervenors-Defendants. | Civil Action No.  4:18-cv-00167-O |

### BRIEF OF AMICI CURIAE JONATHAN H. ADLER, NICHOLAS BAGLEY, ABBE R. GLUCK, ILYA SOMIN, AND KEVIN C. WALSH IN SUPPORT OF INTERVENORS-DEFENDANTS' OPPOSITION TO PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION

**Joshua L. Hedrick**
Texas State Bar No. 24061123
**Britton D. McClung**
Texas State Bar No. 24060248

**HEDRICK KRING, PLLC**
1700 Pacific Avenue, Suite 4650
Dallas, Texas 75201
(Tel.) (214) 880-9600
(Fax) (214) 481-1844
Josh@HedrickKring.com
Britt@HedrickKring.com

**Joseph R. Palmore**
DC Bar No. 465811
(pending *Pro Hac Vice*)

**MORRISON & FOERSTER, LLP**
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-188
(Tel.) (202) 887-6940
(Fax) (202) 887-0763
Jpalmore@mofo.com

**ATTORNEYS FOR JONATHAN H. ADLER, NICHOLAS BAGLEY, ABBE R. GLUCK, ILYA SOMIN, AND KEVIN C. WALSH**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................ii

IDENTITY AND INTEREST OF AMICI ................................................................... 1

ARGUMENT ................................................................................................................ 4

    A.  When Considering Severability, Courts Must Limit The Damage To The Statute And Be Guided By Congressional Intent......................................................... 4

    B.  The Plaintiff States And The United States Erroneously Assess Congressional Intent As Of 2010, Rather Than 2017............................................................... 8

CONCLUSION............................................................................................................11

CERTIFICATE OF SERVICE ................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Association of Am. Railroads v. Costle*,
    562 F.2d 1310 (D.C. Cir. 1977) ..............................................................................9

*Ayotte v. Planned Parenthood of Northern New England*,
    546 U.S. 320 (2006)..............................................................................................5

*Dorsey v. United States*,
    567 U.S. 260 (2012)..............................................................................................9

*Florida v. HHS*,
    648 F.3d 1235 (11th Cir. 2012) ............................................................................3

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010)........................................................................................5, 6, 7

*King v. Burwell*,
    135 S. Ct. 2480 (2015) ..........................................................................................1

*Legal Servs. Corp. v. Velazquez*,
    531 U.S. 533 (2001)..............................................................................................8

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
    138 S. Ct. 1461 (2018) ..................................................................................3, 5, 6, 7

*National Federation of Independent Business v. Sebelius*,
    567 U.S. 519 (2012).......................................................................................1, 3, 5

*Sessions v. Morales-Santana*,
    137 S. Ct. 1678 (2017) ..........................................................................................6

*Virginia v. Sebelius*,
    656 F.3d 253 (4th Cir. 2011) ................................................................................3

**Statutes**

42 U.S.C. § 18091(2)(I) ..............................................................................................8

Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010)..................................1

Pub. L. No. 115-97, § 11081, 131 Stat. 2092 ..............................................................6

**Other Authorities**

Abbe R. Gluck, *Imperfect Statutes, Imperfect Courts: Understanding Congress's
    Plan in the Era of Unorthodox Lawmaking*, 129 Harv. L. Rev. 62 (2015) ..............2

Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ................................................................................................................9

Brief of 104 Health Law Professors as Amici Curiae in Support of Petitioners, *U.S. Dep't of Health & Hum. Servs. v. Florida*, 567 U.S. 419 (2012) (No. 11-398) ................................................................................................................2

Brief for Professors Thomas W. Merrill, Gillian E. Metzger, Abbe R. Gluck, and Nicholas Bagley as Amici Curiae Supporting Respondents, *King v. Burwell*, 135 S. Ct. 2480 (2015) (No. 14-114) .......................................................................2

Brief of Jonathan Adler & Michael F. Cannon as Amici Curiae in Support of Petitioners, *King v. Burwell*, 135 S. Ct. 2480 (2015 ) (No. 14-114).........................................1

Brief of Kevin C. Walsh as Amicus Curiae in Support of Appellant Seeking Reversal, *Virginia v. Sebelius*, 656 F.3d 253 (4th Cir. 2011) (No. 11-1057) ...........................3

Brief of Kevin C. Walsh as Amicus Curiae in Support of Neither Party, *Florida v. HHS*, 648 F.3d 1235 (11th Cir. 2012) (Nos. 11-11021, 11-11067), 2011 WL 2530492..............................................................................................................3

Brief of the Washington Legal Foundation and Constitutional Law Scholars as Amici Curiae in Support of Respondents, *Florida v. U.S. Dep't of Health & Hum. Servs.*, 567 U.S. 519 (2012) (No. 11-400) ......................................................3

Brief of the Washington Legal Foundation and Constitutional Law Scholars as Amici Curiae in Support of Respondents, *U.S. Dep't of Health & Hum. Servs. v. Florida*, 567 U.S. 519 (2012) (No. 11-398) .........................................................1

CBO, *Options for Reducing the Deficit: 2017 to 2026* (Dec. 2016)............................................10

CBO, *Repealing the Individual Health Insurance Mandate: An Updated Estimate* (Nov. 2017) .............................................................................................................10

Ilya Somin, *A Conspiracy Against Obamacare: The Volokh Conspiracy and the Health Care Case* (2013) ......................................................................................3

Ilya Somin, *Democracy and Political Ignorance: Why Smaller Government is Smarter* (rev. 2nd ed., 2016) ...............................................................................2

Ilya Somin, *The Grasping Hand:* Kelo v. City of New London *and the Limits of Eminent Domain* (2015)...........................................................................................2

Kevin C. Walsh, *The Ghost that Slayed the Mandate*, 64 Stan. L. Rev. 55, 75-77 (2012) ................................................................................................................3

Kevin C. Walsh, *Partial Unconstitutionality*, 85 N.Y.U. L. Rev. 738 (2010) ................................3

Nicholas Bagley, *Federalism and the End of Obamacare*, 127 Yale L.J.F. 1
    (2017) .................................................................................................................................. 2

Nicholas Bagley, *Health Care Law and Ethics* (9th ed. 2018) ......................................................... 2

Nicholas Bagley, *Legal Limits and the Implementation of the Affordable Care
    Act*, 164 PENN. L. REV. 1715 (2016) ............................................................................................ 2

William Eskridge Jr., Abbe R. Gluck, & Victoria F. Nourse, *Statutes, Regulation,
    and Interpretation: Legislation and Administration in the Republic of Statutes*
    (2014) .................................................................................................................................. 2

## IDENTITY AND INTEREST OF AMICI

Amici—Jonathan H. Adler, Nicholas Bagley, Abbe R. Gluck, Ilya Somin, and Kevin C. Walsh—are experts in constitutional law, legislation, statutory interpretation, and administrative law. They disagree on many legal and policy questions concerning the Affordable Care Act (ACA), Pub. L. No. 111-148, 124 Stat. 119 (2010), including many questions about how to interpret it and whether the plaintiff States have standing in the present case. And they do not necessarily share the same views on severability doctrine and how it should apply in every case. Yet they agree on this: The arguments of both the plaintiff States and the United States on the severability of the insurance mandate from the other provisions of the ACA are inconsistent with settled law. If adopted, those arguments would introduce errors and confusion into severability doctrine. Amici respectfully submit this amicus brief to explain these points.

**Jonathan H. Adler** is the Johan Verheij Memorial Professor of Law at Case Western Reserve University School of Law and the director of its Center for Business Law and Regulation. He joined an amicus brief arguing against the constitutionality of the individual mandate in *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012) (*NFIB*).[1] The work of Professor Adler (with Michael Cannon) provided the basis for plaintiffs' argument in *King v. Burwell*, 135 S. Ct. 2480 (2015), that the federal government lacked authority under the ACA to issue premium subsidies for insurance coverage purchased through federally established exchanges.[2]

---

[1] *See* Brief of the Washington Legal Foundation and Constitutional Law Scholars as Amici Curiae in Support of Respondents, *U.S. Dep't of Health & Hum. Servs. v. Florida*, 567 U.S. 519 (2012) (No. 11-398), https://www.americanbar.org/content/dam/aba/publications/supreme_court_preview/briefs/11-398_respondents_amcu_washingtonlegalfoundation.authcheckdam.pdf.

[2] *See* Brief of Jonathan Adler & Michael F. Cannon as Amici Curiae in Support of Petitioners at 1, *King v. Burwell*, 135 S. Ct. 2480 (2015 ) (No. 14-114) (collecting scholarship), https://www.americanbar.org/content/dam/aba/publications/supreme_court_preview/BriefsV4/14-114_amicus_pet_Adler.authcheckdam.pdf.

**Nicholas Bagley** is a professor of law at the University of Michigan Law School.  He is the author of a leading health law casebook[3] and has written extensively on the legality of the Affordable Care Act's implementation across both the Obama and Trump administrations.[4]  He also filed an amicus brief on behalf of federalism scholars in *King v. Burwell* arguing that the federal government does have authority under the ACA to issue premium subsidies for insurance coverage purchased through federally established exchanges.[5]

**Abbe R. Gluck** is a professor of law at the Yale Law School and the director of its Solomon Center for Health Law and Policy.  She filed an amicus brief on behalf of health law professors in support of the constitutionality of the individual mandate in *NFIB*.[6]  She was on the same amicus brief as Professor Bagley in *King v. Burwell*.  She wrote the *Harvard Law Review* Supreme Court issue comment on *King v. Burwell*.[7]  She is also the co-author of a leading casebook on legislation and administrative law.[8]

**Ilya Somin** is Professor of Law at George Mason University.  His research focuses on constitutional law and he has written extensively about federalism.  He is the author of *Democracy and Political Ignorance: Why Smaller Government is Smarter* (rev. 2nd ed., 2016),  *The Grasping Hand:* Kelo v. City of New London *and the Limits of Eminent Domain* (2015), and  coauthor of *A*

---

[3] Health Care Law and Ethics (9th ed. 2018).
[4] *See, e.g.*, Nicholas Bagley, *Legal Limits and the Implementation of the Affordable Care Act*, 164 PENN. L. REV. 1715 (2016); Nicholas Bagley, *Federalism and the End of Obamacare*, 127 Yale L.J. F. 1 (2017), http://www.yalelawjournal.org/forum/federalism-and-the-end-of-obamacare.
[5] *See* Brief for Professors Thomas W. Merrill, Gillian E. Metzger, Abbe R. Gluck, and Nicholas Bagley as Amici Curiae Supporting Respondents, *King v. Burwell*, 135 S. Ct. 2480 (2015) (No. 14-114), https://www.americanbar.org/content/dam/aba/publications/supreme_court_preview/BriefsV5/14-114_amicus_resp_merrill.authcheckdam.pdf.
[6] *See* Brief of 104 Health Law Professors as Amici Curiae in Support of Petitioners, *U.S. Dep't of Health & Hum. Servs. v. Florida*, 567 U.S. 419 (2012) (No. 11-398), https://www.americanbar.org/content/dam/aba/publications/supreme_court_preview/briefs/11-398_petitioneramcu104healthlawprofs.authcheckdam.pdf
[7] Abbe R. Gluck, *Imperfect Statutes, Imperfect Courts:  Understanding Congress's Plan in the Era of Unorthodox Lawmaking*, 129 Harv. L. Rev. 62 (2015).
[8] William Eskridge Jr., Abbe R. Gluck, & Victoria F. Nourse, *Statutes, Regulation, and Interpretation:  Legislation and Administration in the Republic of Statutes* (2014).

*Conspiracy Against Obamacare: The Volokh Conspiracy and the Health Care Case* (2013), a book about the Supreme Court's decision in *NFIB v. Sebelius,* 567 U.S. 519 (2012), and the events leading up to it. He authored an amicus brief in *NFIB* urging the Court to strike down the individual health insurance mandate.[9]

**Kevin C. Walsh** is professor of law at University of Richmond School of Law. His scholarship includes law review publications on severability doctrine generally and its application in ACA mandate litigation more specifically.[10] He filed an amicus curiae brief in support of neither party in *Florida v. HHS*, 648 F.3d 1235 (11th Cir. 2012), and in support of the federal government in *Virginia v. Sebelius,* 656 F.3d 253 (4th Cir. 2011).[11]

As noted above, Amici have taken opposing positions in significant and hotly contested cases involving the ACA. But they agree on the severability question presented here. As experts on statutory interpretation, they share an interest in the proper application of severability doctrine, and they believe their views on the question will be helpful to the Court.

---

[9] *See* Brief of the Washington Legal Foundation and Constitutional Law Scholars as Amici Curiae in Support of Respondents, *Florida v. U.S. Dep't of Health & Hum. Servs.*, 567 U.S. 519 (2012) (No. 11-400), https://www.americanbar.org/content/dam/aba/publications/supreme_court_preview/briefs/11-398_respondents_amcu_washingtonlegalfoundation.authcheckdam.pdf.

[10] *See, e.g.,* Kevin C. Walsh, *The Ghost that Slayed the Mandate*, 64 Stan. L. Rev. 55, 75-77 (2012) (examining the relation between severability and standing in the context of state challenges to the ACA's minimum coverage provision); *see also Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1485-87 (2018) (Thomas, J., concurring) (relying on Kevin C. Walsh, *Partial Unconstitutionality*, 85 N.Y.U. L. Rev. 738 (2010), as authority on severability doctrine and its history).

[11] *See* Brief of Kevin C. Walsh as Amicus Curiae in Support of Neither Party, *Florida v. HHS*, 648 F.3d 1235 (11th Cir. 2012) (Nos. 11-11021, 11-11067), 2011 WL 2530492; Brief of Kevin C. Walsh as Amicus Curiae in Support of Appellant Seeking Reversal, *Virginia v. Sebelius*, 656 F.3d 253 (4th Cir. 2011) (No. 11-1057), http://prawfsblawg.blogs.com/files/11-1057-va-v-sebelius-walsh-amicus-brief-filed.pdf.

**ARGUMENT**

Amici's goal in filing this brief is limited.  This brief takes no position on whether plaintiffs have a justiciable claim or on whether they are correct that the minimum coverage provision (commonly called the individual mandate) is unconstitutional in light of Congress's reduction to zero of the penalties associated with it.  Instead, the brief assumes the answer to both questions is yes in order to reach the question of severability.  The United States contends that the statute's guaranteed-issue and community-rating provisions are inseverable from the individual mandate, but that the rest of the statute should stand even if the mandate is found to be unconstitutional.  The plaintiff States argue that the entire statute in inseverable from the mandate and falls with it.  In amici's view, both contentions are based on a fundamental misunderstanding of severability.

The cornerstone of severability doctrine is congressional intent.  Under current Supreme Court doctrine, a court must offer its best guess on what Congress would have wanted for the rest of the statute if a single provision is rendered unenforceable.  But this guessing-game inquiry does not come into play where, as here, Congress itself has essentially eliminated the provision in question and left the rest of a statute standing.  In such cases, congressional intent is clear—it is embodied in the text and substance of the statutory amendment itself.  Under these circumstances, a court's substitution of its own judgment for that of Congress would be an unlawful usurpation of congressional power and violate basic black-letter principles of severability.  Yet that is what the plaintiff States and the United States invite this Court to do.

A.     **When Considering Severability, Courts Must Limit The Damage To The Statute And Be Guided By Congressional Intent**

An unbroken line of Supreme Court severability precedent rests on two foundational principles.

*First*, courts must "try not to nullify more of a legislature's work than is necessary" because "'[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'" *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 329 (2006) (quoting *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984) (plurality opinion)).   Accordingly, "when confronting a constitutional flaw in a statute," courts must "'try to limit the solution to the problem,' severing any 'problematic portions while leaving the remainder intact.'"   *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 509 (2010) (quoting *Ayotte*, 546 at 328-29).

*Second*, "the touchstone for any decision about remedy is legislative intent, for a court cannot 'use its remedial powers to circumvent the intent of the legislature.'" *NFIB*, 567 U.S. at 586 (quoting *Ayotte*, 546 U.S. at 330).   "After finding an application or portion of a statute unconstitutional," a court "must ask:  Would the legislature have preferred what is left of its statute to no statute at all?" *Ayotte*, 546 U.S. at 330.  "Unless it is 'evident' that the answer is no, [a court] must leave the rest of the Act intact."  *NFIB*, 567 U.S. at 587; *see Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1482 (2018) (To invalidate additional provisions as inseverable, "it must be 'evident that [Congress] would not have enacted those provisions which are within its power, independently of [those] which [are] not.'") (quoting *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987)).  Where the intent of Congress is not clear, courts sometimes try to assess congressional intent by asking whether the remaining parts of the statute "remain[] 'fully operative as a law'" with the unconstitutional provision "excised."   *Free Enter. Fund*, 561 U.S. at 509 (quoting *New York v. United States*, 505 U.S. 144, 186 (1992)).  If so—and if "nothing in the statute's text or historical context makes it 'evident'" that Congress would not have wanted the balance of the statute to remain without the excised provision—then the rest of the statute should stand.  *Id.* (quoting *Alaska Airlines*, 480 U.S. at 684).

When analyzing congressional intent for purposes of severability analysis, courts sometimes describe themselves as engaged in a thought experiment. After a court invalidates part of a statute, it must determine what it "believe[s]" Congress would have wanted to happen to the rest of the law if Congress had hypothetically been "[p]ut to the choice." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1700 (2017); *cf. Murphy*, 138 S. Ct. at 1485-86 (Thomas, J., concurring) (criticizing severability doctrine as requiring the courts to "as[k] a counterfactual question" and make "a nebulous inquiry into congressional intent" but concluding that "hypothetical intent is exactly what the severability doctrine turns on, at least when Congress has not expressed its fallback position in the text") (citing Kevin Walsh, *Partial Unconstitutionality*, 85 N.Y.U. L. Rev. 738, 752-53, 777 (2010)).

Here, however, no such hypothesizing is required. We know exactly what Congress intended, and we need not rely on loose conceptions of "intent" at all. Unlike in most cases involving a severability question—where the court is the actor rendering the relevant provision unenforceable—here, the relevant provision was eliminated by Congress itself in the text of the statute.

In 2017, Congress zeroed out all the penalties the ACA had imposed for not satisfying the individual mandate. *See* Pub. L. No. 115-97, § 11081, 131 Stat. at 2092. Yet it left undisturbed the guaranteed-issue and community-rating provisions. That simple fact should be the beginning and end of the severability analysis. It was *Congress*, not a court, that eliminated the penalties. And when Congress did so, it left these two insurance reforms in place. In other words, Congress in 2017 made the judgment that it wanted the insurance reforms to remain even in the absence of an enforceable individual mandate.

Because Congress's intent was explicitly and duly enacted into statutory law, consideration of whether the remaining parts of the law remain "fully operative"—an inquiry courts often use in severability analysis as a proxy for congressional intent, *e.g.*, *Free Enter. Fund*, 561 U.S. at 509— is not necessary.   But such an inquiry would only make the United States' position weaker.   The ACA, as amended by Congress, is "fully operative" with or without the penalty-less mandate. *Free Enter. Fund*, 561 U.S. at 509.   In either case, individuals face no legal consequence from failing to comply with the mandate.   So the ACA will operate the same way whether or not courts declare the minimum coverage opinion to be unconstitutional, and there is thus no basis for invalidating other parts of the Act under the pretense of effectuating Congressional intent.   And as detailed below, the Congressional Budget Office noted in 2017, before the tax law was passed, that the markets would remain stable without the mandate. Thus, even though the kind of functionality analysis courts often undertake when congressional intent is unclear has no place here, such analysis would cut against the United States' position.

For these reasons, no inquiry into hypothetical congressional intent about the ACA's continued operation with an unenforceable "individual mandate" is necessary—Congress's "intentions" were "enshrined in a text that ma[de] it through the constitutional processes of bicameralism and presentment." *Murphy*, 138 S. Ct. at 1486-87 (2018) (Thomas, J., concurring). Nor is it the court's role to hypothesize about whether some members of Congress might have excised more of the statute if only they could have found the votes.   As the United States itself recognizes in its brief (at 19), "the severability analysis should be one of statutory construction, not parliamentary probabilities."   Accordingly, a "court should not hypothesize about the motivations of individual legislators, or speculate about the number of votes available for any

number of alternatives."   *Id.*   All that matters here is that Congress eliminated the individual

mandate penalties while leaving the rest of the statute intact.

**B.      The Plaintiff States And The United States Erroneously Assess Congressional Intent As Of 2010, Rather Than 2017**

The contrary arguments of the United States and the plaintiff States are based on their

assessment of what the Congress that enacted the ACA *in 2010* intended at that time.  They cite to

the 2010 legislative findings that aimed to justify the mandate as a valid exercise of the Commerce

Power:  "The requirement [to maintain health coverage] is essential to creating effective health

insurance markets in which improved health insurance products that are guaranteed issue and do

not exclude coverage of pre-existing conditions can be sold." 42 U.S.C. § 18091(2)(I); *see* Federal

Defendants' Br. 15.  Based in part on that finding, the United States argued in *NFIB* that the

guaranteed-issue and community-rating provisions were inseverable from the individual mandate.

Federal Defendants' Br. 13 (citing Br. for Resp. (Severability) at 45, *NFIB*, No. 11-393).  Because

those findings have not been repealed, plaintiff States and the United States contend they provide

dispositive evidence of congressional intent on the viability of guaranteed issue and community

rating in the absence of an enforceable mandate.

This time-shifting of congressional intent misapplies severability doctrine.  By expressly

amending the statute in 2017 and setting the penalty at zero while not making other changes,

Congress eliminated any need to examine earlier legislative findings or to theorize about what

Congress would have wanted.  Congress told us what it wanted through its 2017 legislative

actions—"One determines what Congress would have done by examining what it did."  *Legal

Servs. Corp. v. Velazquez*, 531 U.S. 533, 560 (2001) (Scalia, J., dissenting).  Whatever Congress

may have believed about the connection among these provisions in 2010, the relevant question

now is what Congress intended in 2017 when it took the action that provides the basis for plaintiffs'

challenge, *i.e.*, when it reduced the mandate's penalty to zero.  And Congress demonstrated that intent not through mere findings but through amendments to the operative provisions of the ACA. It repealed the penalty while leaving the insurance reforms in place.  *Cf. Association of Am. Railroads v. Costle*, 562 F.2d 1310, 1316 (D.C. Cir. 1977) ("A preamble no doubt contributes to a general understanding of a statute, but it is not an operative part of the statute . . . .  The operative provisions of statutes are those which prescribe rights and duties and otherwise declare the legislative will.").

The legitimacy of that 2017 judgment is not undermined just because an earlier Congress might have made a different judgment.  The Supreme Court has explained that "statutes enacted by one Congress cannot bind a later Congress, which remains free to repeal the earlier statute, to exempt the current statute from the earlier statute, to modify the earlier statute, or to apply the earlier statute but as modified."  *Dorsey v. United States*, 567 U.S. 260, 274 (2012).  "And Congress remains free to express any such intention either expressly or by implication as it chooses."  *Id.*; *cf.* Antonin Scalia & Bryan Garner, *Reading Law:  The Interpretation of Legal Texts* 327 (2012) ("[W]hen a statute specific permits what an earlier statute prohibited, the earlier statutes is (no doubt about it) implicitly repealed").  This principle should have extra force when the provision at issue from an earlier Congress is a mere finding, rather than an operative provision. Whatever the significance of Congress's 2010 finding on the connection between the individual mandate and the guaranteed-issue and community-rating provisions, Congress in 2017 delinked them.

And Congress did so in light of changed circumstances.  Before Congress took action in 2017, the Congressional Budget Office had analyzed the effects both of repealing the individual mandate *and* of eliminating the penalties while keeping the mandate in place.  *See* CBO, *Repealing*

*the Individual Health Insurance Mandate:  An Updated Estimate* (Nov. 2017).  Its conclusion for both scenarios:  "Nongroup insurance markets would continue to be stable in almost all areas of the country throughout the coming decade."  *Id.* at 1; *see also* CBO, *Options for Reducing the Deficit:  2017 to 2026* at 227 (Dec. 2016) (concluding that adverse selection problems created by repeal of individual mandate would be "mitigated" by premium subsidies, which "would greatly reduce the effect of premium increases on coverage among subsidized enrollees").  While there is room for reasonable disagreement about the ultimate impact of zeroing out the monetary penalty attached to the individual mandate, this analysis at the very least creates a reasonable basis for 2017 legislators to conclude that they could take this step while leaving the ACA's insurance reforms in place, and that doing so would not unduly disrupt insurance markets.  And for courts to do so in the name of congressional intent is a perversion of that concept when Congress itself has acted expressly.

*  *  *

Although views on the merits of the ACA as a matter of law and policy vary widely, those positions are irrelevant to severability.  When a court finds a portion of a statute unconstitutional and considers what that means for the rest of the law, fundamental questions of separation of powers and the judicial role are implicated.  For that reason, courts have always been rightfully cautious when considering severability, homing in on any available evidence of congressional intent and seeking to salvage rather than destroy.  If courts invalidate an entire law merely because Congress eliminates or revises one part, as happened here, that may well inhibit necessary reform of federal legislation in the future by turning it into  an "all or nothing" proposition.  And for courts to do so in the name of congressional intent is a perversion of that concept when Congress itself has acted expressly.

The positions of the United States and the plaintiff States here get severability exactly backward.  They disregard the clearly expressed intent of Congress and seek judicial invalidation of statutory provisions that Congress chose to leave intact.  Accepting their invitation to rewrite the ACA under the guise of "severability" would usurp Congress's role and inject incoherence into this critical area of law.

## CONCLUSION

If the Court finds that plaintiffs have standing and concludes that the individual mandate is unconstitutional, amici ask that it find the mandate severable from the rest of the ACA, including its guaranteed-issue and community-rating provisions.

Dated: June 14, 2018                                Respectfully submitted,

                                                   */s/ Joshua L. Hedrick*
                                                   **Joshua L. Hedrick**
                                                   Texas State Bar No. 24061123
                                                   **Britton D. McClung**
                                                   Texas State Bar No. 24060248

                                                   **HEDRICK KRING, PLLC**
                                                   1700 Pacific Avenue, Suite 4650
                                                   Dallas, Texas 75201
                                                   (Tel.) (214) 880-9600
                                                   (Fax) (214) 481-1844
                                                   Josh@HedrickKring.com
                                                   Britt@HedrickKring.com

                                                   And

                                                   **Joseph R. Palmore** (pending *Pro Hac Vice*)
                                                   DC Bar No. 465811

                                                   **MORRISON & FOERSTER, LLP**
                                                   2000 Pennsylvania Avenue, N.W.
                                                   Washington, D.C. 20006-188
                                                   (Tel.) (202) 887-6940
                                                   (Fax) (202) 887-0763
                                                   Jpalmore@mofo.com

                                                   **ATTORNEYS FOR JONATHAN H.
                                                   ADLER, NICHOLAS BAGLEY, ABBE
                                                   R. GLUCK, ILYA SOMIN, AND KEVIN
                                                   C. WALSH**

## CERTIFICATE OF SERVICE

I certify that on June 14, 2018, I filed the foregoing document with the Clerk of Court via the CM/ECF system, causing it to be served electronically on all counsel of record.

                                                   */s/ Joshua L. Hedrick*
                                                   Joshua L. Hedrick