**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| TEXAS, WISCONSIN, ALABAMA, ARKANSAS, ARIZONA, FLORIDA, GEORGIA, INDIANA, KANSAS, LOUISIANA, PAUL LePAGE, Governor of Maine, Governor Phil Bryant of the State of MISSISSIPPI, MISSOURI, NEBRASKA, NORTH DAKOTA, SOUTH CAROLINA, SOUTH DAKOTA, TENNESSEE, UTAH, WEST VIRGINIA, NEILL HURLEY, and JOHN NANTZ,<br><br>                                    Plaintiffs,<br><br>         v.<br><br>UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ALEX AZAR, in his Official Capacity as SECRETARY OF HEALTH AND HUMAN SERVICES, UNITED STATES INTERNAL REVENUE SERVICE, and DAVID J. KAUTTER, in his Official Capacity as Acting COMMISSIONER OF INTERNAL REVENUE,<br><br>                                    Defendants. | Civil Action No. 4:18-cv-00167-O |
| CALIFORNIA, CONNECTICUT, DISTRICT OF COLUMBIA, DELAWARE, HAWAII, ILLINOIS, KENTUCKY, MASSACHUSETTS, MINNESOTA by and through its Department of Commerce, NEW JERSEY, NEW YORK, NORTH CAROLINA, OREGON, RHODE ISLAND, VERMONT, VIRGINIA, and WASHINGTON,<br><br>                                    Intervenor-Defendants. | |

**INTERVENOR-DEFENDANTS' BRIEF IN SUPPORT OF MOTION
FOR (1) EXPEDITED CONSIDERATION, (2) CLARIFICATION OR
STAY, AND (3) ENTRY OF PARTIAL FINAL JUDGMENT UNDER
RULE 54(b) OR CERTIFICATION UNDER 28 U.S.C. § 1292(b)**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

BACKGROUND ........................................................................................ 2

ARGUMENT .............................................................................................. 5

    I.    This Court Should Clarify That Its Order Does Not by Itself
Affect Any Party's Rights or Obligations Under the ACA;
or the Court Should Stay Its Order Pending Appellate
Review ............................................................................................ 5

        A.    Clarification is Warranted to Avoid "Extraordinary
Disruption"........................................................................ 5

        B.    The Court Should Stay its Order Pending Appeal ............. 7

               1.    The Defendant States Are Likely to Succeed
on the Merits on Appeal ......................................... 7

               2.    The Equities Favor a Stay .................................... 11

    II.    The Court Should Enter a Partial Final Judgment Under
Rule 54(b) or Certify Its Partial Summary Judgment Order
for Interlocutory Appeal Under 28 U.S.C. § 1292(b) .................. 14

        A.    Rule 54(b) Authorizes an Immediate Appeal ................. 15

               1.    The Court's Judgment Appears to Be Final......... 16

               2.    There is No Just Reason for Delay ...................... 16

        B.    The Court Should Certify the Order for Appeal
Under 28 U.S.C. § 1292(b) ............................................. 17

               1.    The Order Involves a Controlling Question
of Law .................................................................... 18

               2.    There is Substantial Ground for Difference
of Opinion ............................................................. 18

               3.    Interlocutory Appeal Will Materially Speed
Termination of This Litigation............................. 20

    CONCLUSION ....................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bowen v. Kendrick*
    483 U.S. 1304 (1987)........................................................................8

*Briargrove Shopping Ctr. Joint Venture v. Pilgrim Enters., Inc.*
    170 F.3d 536 (5th Cir. 1999) ..........................................................15

*Carreno v. Johnson*
    899 F. Supp. 624 (S.D. Fla. 1995) ...................................................5

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013)........................................................................8

*Clark-Dietz and Assocs. – Eng'rs v. Basic Constr. Co.*
    702 F.2d 67 (5th Cir. 1959) .....................................................18, 20

*Comm. on Judiciary of U.S. House of Representatives v. Miers*
    542 F.3d 909 (D.C. Cir. 2008)...................................................6, 15

*Curtiss-Wright Corp. v. General Elec. Co.*
    446 U.S. 1 (1980)......................................................................16, 17

*DeMelo v. Woolsey Marine Indus., Inc.*
    677 F.2d 1030 (5th Cir. 1982) .......................................................16

*E.F. Hutton & Co. v. Brown*
    305 F. Supp. 371 (S.D. Tex. 1969) ................................................20

*Florida ex rel. Atty. Gen. v. U.S. Dep't of Health and Human Servs.*
    648 F.3d 1235 (11th Cir. 2011) .....................................................11

*Florida ex rel. Bondi v. U.S. Dep't of Health and Human Servs.*
    780 F. Supp. 2d 1256 (N.D. Fla. 2011)..................................5, 6, 14

*Frost v. Corp. Com. of Oklahoma*
    278 U.S. 515 (1928).....................................................................9, 10

*Gelboim v. Bank of Am. Corp.*
    135 S. Ct. 897 (2015)...............................................................15, 16

## TABLE OF AUTHORITIES
### (continued)

Page

*H & W Indus., Inc., v. Formosa Plastics Corp., USA*
  860 F.2d 172 (5th Cir. 1988) ........................................................................17

*Heartland By-Prod., Inc. v. United States*
  568 F.3d 1360 (Fed. Cir. 2009)......................................................................5

*Hechinger v. Metro. Wash. Airports Auth.*
  845 F. Supp. 902 (D.D.C.), (Feb. 15, 1994) ..............................................7, 8

*Hotze v. Burwell*
  784 F.3d 984 (5th Cir. 2015) .........................................................................8

*In re Beef Indus. Antitrust Litig.*
  607 F.2d 167 (5th Cir. 1979) .......................................................................15

*King v. Burwell*
  576 U.S. __ (2015)........................................................................................2

*Legal Servs. Corp. v. Velazquez*
  531 U.S. 533 (2001).....................................................................................10

*Lockett v. Gen. Fin. Loan Co.*
  623 F.2d 1128 (5th Cir. 1980) .....................................................................16

*Morrow v. Harwell*
  768 F.2d 619 (5th Cir. 1985) .........................................................................5

*Murphy v. Nat'l Collegiate Athletic Ass'n*
  138 S. Ct. 1461 (2018).................................................................................10

*Nat'l Fed'n of Indep. Bus. v. Sebelius*
  567 U.S. 519 (2012).........................................................3, 9, 10, 11, 12, 19

*Nken v. Holder*
  556 U.S. 418 (2009).......................................................................................7

*Pub. Citizen v. Carlin*
  2 F. Supp. 2d 18 (D.D.C. 1998) ....................................................................6

*Rico v. Flores*
  481 F.3d 234 (5th Cir. 2007) .......................................................................18

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Ruiz v. Estelle*
  650 F.2d 555 (5th Cir. 1981) ...........................................................................7

*Ryan v. Flowserve Corp.*
  444 F. Supp. 2d 718 (N.D. Tex. 2006) ......................................................18, 20

*Sanders v. Wash. Mut. Home Loans, Inc.*
  2007 WL 734402 (E.D. La. Mar. 5, 2007) ....................................................17

*Sanders v. Wash. Mut. Home Loans, Inc. ex rel. Wash. Mut. Bank*
  248 F. App'x 513 (5th Cir. 2007) ..................................................................17

*Texas v. United States*
  787 F.3d 733 (5th Cir. 2015) ...........................................................................7

*United States v. Ardoin*
  19 F.3d 177 (5th Cir. 1994) .............................................................................9

### STATUTES

26 United States Code
  § 5000A..................................................................................................1, 3, 9
  § 5000A(a) ..................................................................................... *passim*

28 United States Code
  § 1292(a)(1) .................................................................................................15
  § 1292(b).......................................................................................... *passim*

# TABLE OF AUTHORITIES
## (continued)

Page

42 United States Code

§ 280h-5 ......................................................................................14
§ 280k .........................................................................................14
§ 280k-1 ......................................................................................14
§ 280k-2 ......................................................................................14
§ 280k-3 ......................................................................................14
§ 294e-1 ......................................................................................14
§ 299b-33 ....................................................................................14
§ 299b-34 ....................................................................................14
§ 300gg-1 ....................................................................................13
§ 300gg-2 ....................................................................................13
§ 300gg-3 ....................................................................................13
§ 300gg-4 ....................................................................................13
§ 300gg-11 ..................................................................................13
§ 300gg-14 ..................................................................................13
§ 300u-13 ....................................................................................14
§ 300u-14 ....................................................................................14
§ 1395cc ......................................................................................14
§ 1395f ........................................................................................14
§ 1395w-4 ....................................................................................14
§ 1395w-4(e)(1)(H) ......................................................................14
§ 1395ww .....................................................................................14
§ 1396a ........................................................................................14
§ 18022 ........................................................................................13
§ 18091 ........................................................................................10
§ 18091(I) ....................................................................................10

Declaratory Judgment Act ....................................................................5

Patient Protection and Affordable Care Act ................................. *passim*

Tax Cuts and Jobs Act of 2017 ..........................................3, 10, 18, 19

COURT RULES

Federal Rule of Civil Procedure
54(b) ............................................................................... *passim*

OTHER AUTHORITIES

*Black's Law Dictionary* (10th ed. 2014) ...............................................9

**TABLE OF AUTHORITIES**
**(continued)**

Page

Federal Register
    Negotiated Rulemaking Committee; Public Hearings
    75 Fed. Reg. 73,170 (Nov. 29, 2010)...............................................................14

Mem. in Support of Defs.' Mot. to Clarify, *Florida* ex rel. *Bondi v.*
    *U.S. Dep't of Health & Human Servs.*, 2011 WL 1060637, 780
    F. Supp. 2d 1256 (N.D. Fla. 2011) ............................................................5, 14

16 Wright, et al., *Federal Practice & Procedure*
    § 3930 (3d ed. 2017) .......................................................................................19

## INTRODUCTION

Intervenor-Defendants the States of California, Connecticut, Delaware, Hawaii, Illinois, Kentucky, Massachusetts, Minnesota, New Jersey, New York, North Carolina, Oregon, Rhode Island, Vermont, Virginia, and Washington, and the District of Columbia respectfully submit this motion in response to the Court's December 14, 2018 Order declaring the Patient Protection and Affordable Care Act (ACA) requirement to maintain minimum essential coverage[1] unconstitutional, and the remainder of the ACA inseverable.  The Defendant States seek two forms of relief.

First, the Defendant States respectfully request that this Court issue an order clarifying that its December 14 Order does not relieve the parties to this litigation—or any other State, entity, or individual—of their rights and obligations under the ACA until trial court proceedings and appellate review are complete.  The Court's Order has already generated confusion about whether the ACA will remain enforceable once the Act's penalty for failing to maintain minimum coverage is reduced to $0 on January 1, 2019.  An order clarifying the import of the Court's ruling would help quell concerns about the effect of the December 14, ruling while this litigation continues and provide peace of mind to millions of Americans relying on the ACA for health insurance in 2019.  Alternatively, the Defendant States respectfully request that the Court enter an order staying any effect of its ruling pending appeal.  The extraordinary circumstances here clearly justify a stay.  The ACA touches nearly every aspect of the nation's healthcare system.  Treating the Court's Order as immediately effective would create widespread harm and confusion.  Giving the Court's Order the effect of an immediate, unstayed injunction would therefore irreparably harm the Defendant States, their residents, and

---

[1] For ease of reference, we refer to the "requirement to maintain minimum essential coverage" under 26 U.S.C. § 5000A as the "minimum coverage" requirement.  This requirement is sometimes referred to as the "individual mandate."  The "shared responsibility payment" under this same provision is sometimes referred to as the "individual mandate penalty."

millions of others who depend on the ACA for access to high-quality, affordable healthcare.

The Defendant States also respectfully submit that the interests of all parties, and of the public, will be best served by prompt appellate review of the December 14 Order.  To provide a clear basis for immediate appeal, the Defendant States request that the Court either enter a partial final judgment under Federal Rule of Civil Procedure 54(b), in accordance with the terms of the Court's December 14 Order or, in the alternative, certify its partial summary judgment Order for interlocutory appeal under 28 U.S.C. § 1292(b).

Finally, the Defendant States ask the Court to issue its ruling on this motion by December 21, 2018.  The December 14 Order on its face declares that the ACA will be unenforceable in its entirety as of January 1, 2019—the date on which the penalty for failing to maintain minimum coverage is reduced to zero.  Order, ECF No. 211 at 25-27.  A ruling on this motion before that date is necessary to clarify the rights and responsibilities of the parties and the public beginning in the new year.  The possibility of a federal government shutdown also supports clarification by December 21, 2018.

## BACKGROUND

The ACA is a landmark piece of legislation that has fundamentally transformed nearly every aspect of the nation's healthcare system.  *See* Memorandum Opinion and Order, ECF No. 211 at 3-5 ("Order").  Its purpose was to increase the number of Americans with health insurance, lower health costs, and improve financial security and well-being for families.  It has done so by strengthening consumer protections in private insurance; making the individual insurance market accessible and affordable; expanding and improving the Medicaid program; modifying Medicare's payment systems while filling in benefit gaps; increasing funding and prioritization of prevention and public health; and supporting infrastructure such as community health centers, the National Health Services Corp, and the Indian Health Service, among other policies.  Aaron Dec. ¶ 4, ECF No. 91-1 at 9; *see also King v. Burwell*, 576 U.S. __, 135 S. Ct. 2480, 2482 (2015).  To date, nearly 12 million Americans have gained health insurance through the

ACA's Medicaid expansion, over 8 million others have receive ACA-funded tax credits to purchase health insurance through the newly-created exchanges, and 133 million Americans (including 17 million children) with preexisting health conditions have been protected from discrimination by insurance companies because of their poor health. Aaron Dec. ¶¶ 13, 18, 166, ECF No. 91-1 at 14, 17, 66-67.  In addition to those reforms, the ACA established a "[r]equirement to maintain minimum essential coverage."  26 U.S.C. § 5000A(a).  It further imposed a tax penalty on individuals who did not maintain such coverage, at either 2.5 percent of a family's income or $695, whichever was greater. *Id.* § 5000A(b)-(c).  The minimum coverage provision was previously challenged as unconstitutional; and in a divided ruling, the Supreme Court held that the provision was not a valid exercise of Congress's Commerce Clause powers, but could fairly be construed as a proper exercise of Congress's taxing powers.  *See* Order, ECF No. 211 at 5-10 (citing *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) (*NFIB*)).

In December 2017, Congress adopted the Tax Cuts and Jobs Act of 2017 (TCJA). *See* Order, ECF No. 211 at 10-11.  The TCJA amended the tax code by reducing the penalty for failing to maintain minimum coverage to zero dollars, effective January 1, 2019.  *See* P.L. 115-97, 2017 H.R. 1, at *2092 (Dec. 22, 2017).  Shortly after the TCJA became law, Plaintiffs—including 19 States, the Governor of Maine, and two individuals—sued the Federal Defendants (including the Secretary of the U.S. Department of Health and Human Services and the Acting Commissioner of Internal Revenue), seeking (among other things) a declaration that Section 5000A(a) is unconstitutional because of the TCJA's amendment to Section 5000A(c), and that the remainder of the ACA is not severable.  Am. Compl. ¶¶ 55-57, ECF No. 27, at 29.  The Defendant States moved to intervene on April 9, 2018, ECF No. 15; the Court granted that motion on May 16, 2018, ECF No. 74.

On April 26, 2018, the Plaintiffs filed a motion for a preliminary injunction, asking for relief on their declaratory judgment claim (Count I of their Amended Complaint) and seeking an order enjoining the defendants from "enforcing the Affordable Care Act and its associated regulations."  Br. of Pls. in Support of App. for Prelim. Inj., ECF No. 40 at

60 ("Pls.' Br."). The State Defendants opposed the request. Intervenor-Defs.' Br. in Opp., ECF No. 91 ("State Defs.' Resp."). The Federal Defendants also filed a response that agreed with Plaintiffs' assertion that the minimum coverage provision would be unconstitutional once the penalty for failing to maintain coverage was reduced to zero, and that the guaranteed-issue and the community-rating provisions were not severable. *See* Federal Defs.' Br. in Opp., ECF No. 92 at 12-16 ("Fed. Defs.' Resp."). But the Federal Defendants argued that the rest of the ACA was severable and should remain in place. *Id*. at 16-19. As to the Plaintiffs' requested relief, the Federal Defendants argued that a preliminary injunction was not warranted, but urged the Court to construe the motion as a request for summary judgment and then enter a declaratory ruling that the ACA's minimum coverage, community-rating, and guaranteed-issue provisions are invalid. *Id.* at 7.

This Court held argument on the motion on September 5, 2018. At that argument, the Federal Defendants argued that the Court should "deny the preliminary injunction for all the equitable reasons." Transcript from Hr'g on Mot. for Prelim. Inj., Sept. 5, 2018 (Hr'g Tr.) 103. They further emphasized that "we certainly don't want to be in a position where individuals lose their health insurance going into next year" and asked the Court to "defer any question of the remedy or scope of any injunction to allow further briefing into next year on the question of what the remedy should be like." *Id*. at 30. That delay, in their view, was necessary to avoid the "extraordinary disruption" that might otherwise occur. *Id*. at 31. But they also argued that an injunction was unnecessary, because the government is "presumed to comply with the law" and, in their view, a final declaratory judgment "operates in a similar manner as an injunction." *Id.* at 103.

On December 14, 2018, this Court entered an Order denying the Plaintiff States' application for a preliminary injunction but granting partial summary judgment on Count I of the Amended Complaint. Order, ECF No. 211 at 2. The Order declares that (1) the minimum coverage provision will be unconstitutional beginning July 1, 2019, and (2) the remaining provisions of the ACA are inseverable and will therefore be invalid. *Id*. at 55. The Order does not address the immediate legal effect, if any, of its ruling, in the absence

of any injunctive order.  The Defendant States thus seek clarification of whether the Court intends its Order to have any immediate legal effect.

## ARGUMENT

### I. THIS COURT SHOULD CLARIFY THAT ITS ORDER DOES NOT BY ITSELF AFFECT ANY PARTY'S RIGHTS OR OBLIGATIONS UNDER THE ACA; OR THE COURT SHOULD STAY ITS ORDER PENDING APPELLATE REVIEW

#### A. Clarification is Warranted to Avoid "Extraordinary Disruption"

The Defendant States understand the Court's Order as not immediately changing the legal status quo.  In their view, the Order does not of its own force change the rights or obligations of any party to this litigation—or of any other State, entity, or individual— under the ACA.  The federal government apparently shares that understanding.  Amy Goldstein, *Federal Judge in Texas Rules Entire Obama Health-Care Law Is Unconstitutional*, Wash. Post., Dec. 14, 2018 (quoting White House statement that the Administration "'expect[s] this ruling will be appealed,'" and that "'[p]ending the appeal process, the [ACA] remains in place'").[2]  Indeed, that is the position the federal government took the last time a district court issued a final declaratory judgment ruling the ACA unconstitutional.  *See* Mem. in Support of Defs.' Mot. to Clarify, *Florida* ex rel. *Bondi v. U.S. Dep't of Health & Human Servs.*, 2011 WL 1060637, 780 F. Supp. 2d 1256 (N.D. Fla. 2011).

This understanding of the Court's Order makes sense.  The federal Declaratory Judgment Act is "expressly designed 'to provide a milder alternative to the injunction remedy.'"  *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985).  At least one district court has held that "a district court's declaration that a statute is unconstitutional does not bar the government from continuing to apply the statute pending review by the Court of Appeals and . . . the Supreme Court."  *Carreno v. Johnson*, 899 F. Supp. 624, 628 (S.D. Fla. 1995).  *Cf. Heartland By-Prod., Inc. v. United States*, 568 F.3d 1360, 1367 (Fed. Cir.

---

[2] *Available at* https://www.washingtonpost.com/national/health-science/federal-judge-in-texas-rules-obama-health-care-law-unconstitutional/2018/12/14/9e8bb5a2-fd63-11e8-862a-b6a6f3ce8199_story.html?utm_term=.ba48a5586ca0.

2009) ("The government's failure to abide by . . . [a] declaratory judgment pending appeal appears not to have been unlawful."). Giving the Court's Order this purely declaratory effect—as announcing this Court's conclusion but not immediately requiring (or permitting) any change in the status quo with respect to the ACA—would be especially appropriate in light of the profound confusion and harm that might result from construing it differently.

Without, however, some definite indication of this Court's intention in issuing its Order, the immediate effect of such a declaratory order is unclear. At least one district court has held that a final declaratory judgment is effective immediately, and operates as a "*de facto* injunction." *Florida ex rel. Bondi v. U.S. Dep't of Health & Human Servs.*, 780 F. Supp. 2d 1307, 1316 (N.D. Fla. 2011); *see also Pub. Citizen v. Carlin*, 2 F. Supp. 2d 18, 20 (D.D.C. 1998) (federal government must obey declaratory judgment, even when case was on appeal). *Cf. Comm. on Judiciary of U.S. House of Representatives v. Miers*, 542 F.3d 909, 910 (D.C. Cir. 2008) (declaratory judgment ordering executive branch officials to testify at House Committee hearing and produce documents was an "immediately appealable" order). The Federal Defendants have also previously indicated in these proceedings that they would treat at least a *final* declaratory judgment as operating against the federal government "in a similar manner as an injunction." Hr'g Tr. 103. This Court's Order has also already generated public confusion about its intended effect.[3]

---

[3] *See, e.g.*, Jenny Deam, *ACA Still Law of the Land but Consumers Confused and Worried After Judge's Ruling*, Houston Chron., Dec. 15, 2018 (documenting confusion among consumers about whether health insurance will be available through the Exchanges for 2019), *available at* https://www.houstonchronicle.com/news/houston-texas/houston/article/ACA-still-law-of-the-land-but-consumers-confused-13469518.php?utm_campaign=email-premium&utm_source=CMS%20Sharing%20Button&utm_medium=social; Mary Ellen McIntire*, Ruling on Health Care Law Leaves Consumers Confused*, Roll Call, Dec. 15, 2018 (similar), *available at* https://www.rollcall.com/news/politics/health-care-law-ruling-consumers; Amy Goldstein, *ACA Ruling Creates New Anxieties for Consumer and the Health-Care Industry*, Wash. Post (Dec. 16, 2018) (similar), *available at* https://www.washingtonpost.com/national/health-science/aca-

In light of this ambiguity, the Defendant States respectfully request that this Court issue an order clarifying that its December 14, 2018 Order does not by itself change any party's (or any third parties') rights or obligations under the ACA.  Doing so would avoid the "extraordinary disruption" that would ensue from giving the Court's Order immediate effect, Hr'g Tr. 31, while allowing for further proceedings in an orderly fashion.

## B.  The Court Should Stay its Order Pending Appeal

Alternatively, the Defendant States respectfully request that the Court stay any effect of its December 14 Order pending prompt appellate review.  A stay pending appeal "simply suspends judicial alteration of the status quo." *Nken v. Holder,* 556 U.S. 418, 429 (2009).  A request for a stay pending appeal is governed by four factors:  (1) whether the movant is likely to succeed on the merits, (2) whether the movant will be irreparably injured absent a stay, (3) whether a stay will substantially harm the other parties, and (4) whether a stay serves the public interest.  *Texas v. United States*, 787 F.3d 733, 746-47 (5th Cir. 2015).  Where the balance of equities tilts strongly in favor of a stay, the moving party "need only present a substantial case on the merits when a serious legal question is involved."  *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981).

### 1.  The Defendant States Are Likely to Succeed on the Merits on Appeal

For the reasons explained in their response to the Plaintiffs' application for a preliminary injunction and at oral argument, the Defendant States are likely to succeed on the merits on appeal.  State Defs.' Resp., ECF No. 91 at 28-55; Hr'g Tr. 31-97, 129-136.  A stay is appropriate even if this Court disagrees:  a court is "'not required to find that ultimate success by the movant is a mathematical probability,'" and may grant a stay even though its "'own approach may be contrary to movant's view of the merits.'"  *Ruiz*, 650 F.2d at 565.  And that is especially true here because of the "presumption of constitutionality of congressional action."  *Hechinger v. Metro. Wash. Airports Auth.*,

---

ruling-creates-new-anxieties-for-consumers-and-the-health-careindustry/2018/12/16/
be8fc0f0-00b0-11e9-83c0-b06139e540e5_story.html?utm_term=.e708b5e76ba8.

845 F. Supp. 902, 910 (D.D.C.), *amended on reh'g in part* (Feb. 15, 1994), *aff'd*, 36 F.3d 97 (D.C. Cir. 1994). Indeed, that presumption both tips the equities in favor of a stay and is a factor that the Court must consider in "evaluating success on the merits." *Bowen v. Kendrick*, 483 U.S. 1304, 1304 (1987) (Rehnquist, C.J., in chambers).

The Defendant States are likely to establish that the Individual Plaintiffs do not have standing to maintain this action. *See* Hr'g Tr. 37; Br. Am. Med. Ass'n, ECF No. 113 at 15-16. Their sole alleged injury-in-fact is that Section 5000A(a) "requires them to purchase and maintain certain health-insurance coverage"—even though there will be no penalty for declining to do so beginning January 1, 2019. Order, ECF No. 211 at 17. Though this Court has held that harm is a cognizable injury for purposes of Article III, *see id.* at 15-19, the Fifth Circuit is likely to disagree. That court has held that an individual may not challenge the minimum coverage provision unless he or she is required to "choose between purchasing minimum essential coverage, on the one hand, and paying the penalty for not doing so, on the other." *Hotze v. Burwell*, 784 F.3d 984, 993 (5th Cir. 2015). Beginning January 1, 2019, the Individual Plaintiffs will no longer be on the horns of that dilemma; as a result, the Fifth Circuit is likely to hold that they lack standing. That is especially so in light of the Supreme Court's admonition that the standing inquiry should be "'especially rigorous'" where, as here, reaching the merits would require the court to decide whether "an action taken by one of the other two branches of the Federal Government was unconstitutional.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).[4]

The Defendant States are also likely to succeed on their claim that the minimum coverage provision can still be upheld as a lawful exercise of Congress's taxing power

---

[4] Nor is the Fifth Circuit likely to hold that the Plaintiff States have standing. It is entirely speculative to suggest that more individuals will enroll in the Plaintiff States' Medicaid or Children's Health Insurance Plan (CHIP) programs because of the shared-responsibility payment, once that payment is reduced to zero. *See* Pl.'s Br. 42; *Clapper*, 568 U.S. at 410 (rejecting standing theory based on "highly speculative" chain of possibilities).

even after the penalty for failing to maintain coverage is reduced to zero. *See* State Defs.' Resp., ECF No. 91 at 28-34.  After January 1, 2019, Section 5000A will retain most of the features that the Supreme Court pointed to in concluding that it could fairly be construed as a tax.  *See NFIB*, 567 U.S. at 563-564.  To be sure, beginning January 1, 2019, Section 5000A will no longer generate revenue associated with future tax years, absent further congressional action.  *See* Order, ECF No. 211 at 22-27.  But the Fifth Circuit is unlikely to share this Court's view that the production of revenue at all times is the *sine qua non* of a tax.  Indeed, that court has upheld the constitutionality of a statute that taxed the making of machine guns, even though federal law had subsequently banned the possession of machine guns, and even though the federal government no longer collected the tax.  *United States v. Ardoin*, 19 F.3d 177, 179-180 (5th Cir. 1994).

In addition, the Defendant States are likely to succeed on their alternative theory that, if the minimum coverage provision can no longer be fairly construed as a tax, it no longer violates the Commerce Clause.  In *NFIB*, The Supreme Court held that the requirement of maintaining minimum coverage went beyond Congress's powers under the Commerce Clause because it "*compels* individuals" to participate in commerce. *NFIB*, 567 U.S. at 552 (emphasis added).  But once the penalty for failing to maintain coverage is reduced to zero, it will lose its coercive effect.  *See Black's Law Dictionary* (10th ed. 2014) (defining compel as "[t]o cause or bring about by force, threats, or overwhelming pressure").  Beginning January 1, 2019, the constitutional flaw identified by the Supreme Court in *NFIB* will no longer exist; accordingly, the minimum coverage provision will no longer violate the Commerce Clause.

Even if Plaintiffs are able to persuade the Fifth Circuit that the minimum coverage provision is no longer constitutional, they are unlikely to prevail on their claim that the appropriate remedy is to strike down the rest of the ACA, in part or in whole.  Under binding Supreme Court precedent, when a constitutional statute is amended in a way that renders it unconstitutional, the appropriate remedy is to strike the amendment and order that the statute operate the way it did before the amendment was adopted.  *Frost v. Corp. Com. of Oklahoma*, 278 U.S. 515, 525 (1928).  Though this Court held *Frost* inapposite

because the Plaintiffs here challenged the "original statute"—the ACA—"not the TCJA," Order, ECF No. 211 at 54 n.34, the Fifth Circuit is unlikely to conclude that a party can plead its way around *Frost*. Instead, it is likely to adopt the most natural reading of that decision:  that when an amendment to a valid statute makes the statute unconstitutional, the amendment is a "nullity" that is "powerless to work any change in the existing statute." *Frost*, 278 U.S. at 526-527.

Finally, the Defendant States are likely to succeed on their argument that, even if the minimum coverage provision is no longer constitutional, and even if *Frost* is inapplicable, that provision is severable from the rest of the ACA.  The "touchstone for any decision about remedy is legislative intent, for a court cannot 'use its remedial powers to circumvent the intent of the legislature.'" *NFIB*, 567 U.S. at 586.  And "[o]ne determines what Congress would have done by examining what it did." *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 560 (2001) (Scalia, J., dissenting).  Here, we know exactly what Congress did:  it zeroed out the penalty for failing to maintain minimum coverage while leaving the rest of the ACA intact.  *See generally* Br. of Jonathan H. Adler, et al., ECF No. 121.  There is thus no need for the Fifth Circuit to make a "'nebulous inquiry into hypothetical congressional intent.'" *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1486 (2018) (Thomas, J., concurring).  And while this Court deemed the intent of the 2017 Congress irrelevant to the severability inquiry, the Fifth Circuit is likely to disagree.[5]  Moreover, regardless of the moment in time that one assesses congressional intent, the Fifth Circuit is likely to agree that either all or at least

---

[5] Nor is the Fifth Circuit likely to conclude that the 2017 Congress demonstrated an intent to unwind the entire ACA by choosing not to repeal Section 5000A(a) or 42 U.S.C. § 18091.  *See* Order, ECF No. 211 at 52-53.  Indeed, to the extent it concludes those provisions are relevant, the Fifth Circuit would likely view them as evidence that the 2017 Congress believed that the minimum coverage provision was "essential to *creating* effective health insurance markets," 42 U.S.C. § 18091(I) (emphasis added), not to keeping them going.  *See* State Defs.' Resp., ECF No. 91 at 51-55 (explaining why the 2017 Congress did not have any adverse selection concerns that may have worried the 2010 Congress).

the vast majority of the ACA is severable from the minimum coverage requirement. *See Florida ex rel. Atty. Gen. v. U.S. Dep't of Health and Human Services*, 648 F.3d 1235, 1320-1321 (11th Cir. 2011), *aff'd in part, rev'd in part by NFIB*, 567 U.S. 519 (holding the minimum coverage requirement severable from the rest of the ACA); State Defs.' Resp., ECF No. 91 at 42-55 (arguing same); Federal Defs.' Resp., ECF No. 92 at 17-27 (arguing that guaranteed-issue and community-rating provisions are not severable from the minimum coverage provision, but that the rest of the ACA is severable).

### 2. The Equities Favor a Stay

The equities also tip overwhelmingly in favor of a stay. The Defendant States and their citizens would face devastating harm from the invalidation of the ACA. Most directly, the Defendant States would collectively lose $608.5 billion dollars of anticipated federal funds used to provide healthcare to their residents. Aaron Dec. ¶¶ 53, 60, 67, 74, 81, 88, 95, 102, 109, 116, 123, 130, 137, 144, 151, 158, 165, ECF No. 91-1 at 34-66. Six million of their residents would be kicked off of Medicaid. *Id*. at ¶¶ 50, 57, 64, 71, 78, 85, 92, 99, 106, 113, 120, 127, 134, 141, 148, 155, 162, ECF No. 91-1 at 33-65. In addition, billions of dollars in tax credits to subsidize health insurance for low-income Americans would disappear. *Id*. at ¶¶ 49, 56, 63, 70, 77, 84, 91, 98, 105, 112, 119, 126, 133, 140, 147, 154, 161, ECF No. 91-1 at 33-65. And the Prevention and Public Health Fund (PPHF), a new funding stream created by the ACA that has sent over $3.9 billion to states since 2010 ($650 million for fiscal year 2017), would be eliminated. *Id*. at ¶ 34, ECF No. 91-1 at 27. Millions with preexisting health conditions would become unable to purchase affordable health insurance. *Id*. at ¶¶ 48, 55, 62, 66, 76, 83, 90, 97, 104, 111, 118, 125, 132, 139, 146, 153, 160, ECF No. 91-1 at 32-65.[6]

---

[6] A stay will also help prevent consumer confusion in California, Colorado, Connecticut, the District of Columbia, Massachusetts, Minnesota, New York, Rhode Island, where open enrollment is ongoing. *See* Louise Norris, *What's the Deadline to Get Coverage During Obamacare's Open Enrollment Period?* Healthinsurance.org, Dec. 15, 2018, https://www.healthinsurance.org/faqs/what-are-the-deadlines-for-obamacares-open-enrollment-period/#dates.

Conversely, neither the Individual Plaintiffs, nor the Plaintiff States, nor the federal government will suffer any significant harm from a stay.  The Individual Plaintiffs will suffer no harm from a stay because under binding Supreme Court precedent, they can fully comply with their legal obligations by declining to purchase ACA-compliant health insurance and paying a tax penalty of $0.  *See NFIB*, 567 U.S. at 574.  And in any event, since open enrollment in Texas for 2019 has concluded, the Individual Plaintiffs have already purchased (or declined to purchase) ACA-compliant insurance for 2019.  In other words, the Court's decision cannot affect the choices that they have already made for next year.  Thus, staying this decision will not adversely affect the Individual Plaintiffs.

Nor will a stay harm the Plaintiff States.  To the contrary, a stay is necessary to avoid the harms to the Plaintiff States and their residents—including the 1.2 million who would be immediately kicked off the Plaintiff States' Medicaid programs—that would result from giving the Court's Order immediate effect.  Isasi Dec. ¶¶ 7-8, ECF No. 15-2 at 10-11; Eyles Dec. ¶ 6, ECF No. 15-1 at 95; *see also* State Defs.' Resp., ECF No. 91 at 59-62 (documenting additional harms to the Plaintiff States from granting a preliminary injunction).  Furthermore, it would cause even greater disruption if the Plaintiff States abruptly halt ACA programs based on this Court's ruling and that ruling is overturned on appeal.  As for the federal government, it has expressly asked this Court to "defer any question of the remedy or scope of any injunction to allow further briefing into next year on the question of what the remedy should look like," and warned of the "extraordinary disruption" that would ensue if the Court's decision took effect immediately.  Hr'g Tr. 30-31.

Finally, the public interest favors a stay.  If the ACA is invalidated, nearly 12 million Americans who gained coverage through the Medicaid expansion would become uninsured.  Isasi Dec. ¶¶ 7-8, ECF No. 15-2 at 10-11; Eyles Dec. ¶ 6, ECF No. 15-1 at 95.  An additional 8 million low-income residents will lose access to billions of dollars in tax credits.  Isasi Dec. ¶ 6, ECF No. 15-2 at 10.  Nineteen million Medicare Advantage beneficiaries could also lose their plans because the ACA replaced the payment system previously in effect.  *See* Aaron Dec. ¶¶ 42-43, ECF No. 91-1 at 29-30; Corlette Dec. ¶

60, ECF No. 91-1 at 109-110.  And in some States, insurance companies may once again begin be able to discriminate on the basis of health status by charging higher premiums or denying coverage to Americans with preexisting health conditions.  *See* 42 U.S.C. § 300gg-1 (guaranteed issue); 42 U.S.C. § 300gg-2 (guaranteed renewability); 42 U.S.C. § 300gg-3 (prohibition of preexisting condition exclusions); 42 U.S.C. § 300gg-4 (prohibition of discrimination based on health status).

Moreover, a stay pending appeal is necessary to avoid the widespread confusion and massive disruption to the healthcare market that would otherwise ensue.  The ACA is woven into the fabric of the nation's healthcare system.  Suddenly declaring it void would cause chaos for patients, providers, insurance carriers, and the federal and state governments.  It would call into question several of the law's most important rights and protections, including:

- The prohibition of lifetime or annual limits on coverage, 42 U.S.C. § 300gg-11.

- The requirement that insurers that provide family coverage also cover adult children until age 26, 42 U.S.C. § 300gg-14.

- Mandatory coverage of essential health benefits, including ambulatory patient services, emergency services, hospitalization, maternity and newborn care, mental health and substance abuse treatment, prescription drugs, laboratory services, preventative services and chronic disease management, and pediatric services, including oral and vision care, 42 U.S.C. § 18022.

Several programs and platforms might also have to be immediately unwound, including:

- The twelve States that operate their own exchanges, twenty-eight States that rely on federally-facilitated exchanges (healthcare.gov), and eleven States that partner with the Department of Health and Human Services to run hybrid exchanges (the latter two use healthcare.gov) may lose those platforms for facilitating the provision of care to their residents.  *See generally* Aaron Dec. ¶ 17, ECF No. 91-1 at 16-17.

- More than 20 sections of the ACA made changes to Medicare payment rates, *see, e.g.*, 42 U.S.C. § 1395w-4(e)(1)(H), changes that were implemented through notice and comment rulemaking, *see, e.g.*, 75 Fed. Reg. 73,170 (Nov. 29, 2010).  As the federal government has previously warned, attempting to

"devise an alternative, pre-ACA rate structure" at this juncture would impose "staggering administrative burdens on HHS and its fiscal intermediaries, and could cause major delays and errors in the payment of the roughly 100 million Medicare claims processed *each month*." Mem. in Support of Defs.' Mot. to Clarify, *Bondi*, 2011 WL 1060637.

• ACA-authorized initiatives holding hospitals accountable for quality and safety, 42 U.S.C. § 1395w–4, § 1395ww, § 1395f, § 1395cc; allowing providers to receive Medicare payments based on quality and care coordination, 42 U.S.C. § 1395ww; and funding efforts to states, public health officials, educational institutions, and medical providers to improve treatment of chronic illnesses, reduce health disparities, improve efficiency and value, and to provide comprehensive care, including preventive care, and mental health and substance use disorder services could fall by the wayside. *See* 42 U.S.C. § 299b-33, § 299b-34, § 280h-5, § 280k, § 280k-1, § 280k-2, § 280k-3, § 1396a, § 300u-13, § 300u-14, 42 U.S.C. 294e-1.

Furthermore, eliminating the ACA would cause a dramatic increase in the number of uninsured individuals, which in turn would increase the cost of uncompensated care by an estimated $1.1 trillion over a decade, putting stress on the financial markets, state budgets and healthcare systems, state residents, and medical providers. *See* Aaron Dec. ¶¶ 44, 53, 60, 67, 74, 81, 88, 95, 102, 109, 116, 123, 130, 137, 144, 151, 158, 165, ECF No. 91-1 at 30-66. Damaging this country's healthcare system, completely upending a sector that constitutes almost one-fifth of the national economy, and depriving tens of millions of Americans of health insurance is not in the public interest. *See generally* Economic Scholars Amicus Brief, ECF No. 150; AHIP Amicus Brief, ECF No. 131.

## II.   THE COURT SHOULD ENTER A PARTIAL FINAL JUDGMENT UNDER RULE 54(B) OR CERTIFY ITS PARTIAL SUMMARY JUDGMENT ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B)

The Defendant States also respectfully submit that the interests of all parties, and of the public, will be best served by prompt appellate review of the December 14 Order. To provide a clear basis for immediate appeal, the States request that this Court enter a partial final judgment under Federal Rule of Civil Procedure 54(b), or certify its December 14 Order for appeal under 28 U.S.C. § 1292(b).

As discussed above, *see supra* pp. 5-7, the Defendant States understand the Court's Order granting partial summary judgment on "Plaintiffs' claim for declaratory relief in Count I of the Amended Complaint" (Order, ECF No. 211 at 55), but denying the request for a preliminary injunction, as intended to maintain the legal status quo pending further proceedings, rather than to have any immediate effect on the rights or obligations of any party.  If that understanding is correct, then the Defendant States cannot seek immediate review of the Order as an order granting an injunction.  *See* 28 U.S.C. § 1292(a)(1).[7]  Nor is it clear under present circumstances whether the Court's Order is intended to be partially final although non-injunctive.  *See Briargrove Shopping Ctr. Joint Venture v. Pilgrim Enters., Inc.*, 170 F.3d 536, 539 (5th Cir. 1999); *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 181 (5th Cir. 1979).  An order entering a partial final judgment under Rule 54(b) or certifying its partial summary judgment for interlocutory appeal under Section 1292(b), will provide a clear basis for a prompt appeal.  That result would be consistent with the Court's assurance that "either way, [the Court's ruling is] going to be available to be appealed immediately."  *See* Hr'g Tr. 114.[8]

### A.   Rule 54(b) Authorizes an Immediate Appeal

"Rule 54(b) permits district courts to authorize immediate appeal of dispositive rulings on separate claims in a civil action raising multiple claims."  *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902 (2015).  In deciding whether to enter a partial judgment under Rule 54(b), a district court must make two determinations:  (1) it must determine that it is making a final judgment, and (2) it must decide whether any just reason for delay exists.  *Briargrove*, 170 F.3d at 539.  Both prongs appear to be met here.

---

[7] Should that understanding prove incorrect, the Defendant States could and would seek immediate review of the Order.  *See Miers*, 542 F.3d at 910 (declaratory judgment ordering executive branch officials to testify at House Committee hearing and produce documents was an "immediately appealable" order).

[8] At oral argument, Plaintiffs agreed that "the appealability of the order, because of the importance of this question, is paramount."  Hr'g Tr. 115.

### 1.    The Court's Judgment Appears to Be Final

With respect to finality, "Rule 54(b) relaxes 'the former general practice that, in multiple claims actions, all the claims had to be finally decided before an appeal could be entertained from a final decision upon any of them.'" *Gelboim*, 135 S. Ct. at 902 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 434 (1956)).  It offers a route to appellate review for "orders that would be 'final' if entered in a simple single-claim, two-party case." *DeMelo v. Woolsey Marine Indus., Inc.*, 677 F.2d 1030, 1032 (5th Cir. 1982) (citing *Sears, Roebuck*).  "It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7 (1980).  The Court's intent "must appear from the order or from documents referenced in the order." *Briargrove*, 170 F.3d at 539.

Here, the Court's Order states that it "grants Plaintiffs partial summary judgment," and "GRANTS Plaintiffs' claim for declaratory relief in Count I of the Amended Complaint."  Order, ECF No. 211 at 55.  This resolution appears to be intended as a "'final adjudication as to at least one of the multiple claims'" in this lawsuit, making it ready for entry of partial final judgment pursuant to Rule 54(b).  *Lockett v. Gen. Fin. Loan Co.*, 623 F.2d 1128, 1129 (5th Cir. 1980).

### 2.    There is No Just Reason for Delay

Nor is there any just reason for delay.  The question of whether the minimum coverage provision remains constitutional is a pure issue of law—as is whether the Plaintiffs have Article III standing to maintain this lawsuit—and there is no risk of the Court of Appeals having to consider this issue twice if the Defendant States are permitted to appeal now.  Whether the Court's Order is ultimately affirmed or reversed, few if any

issues will remain pending.[9]  This factor favors entry of a partial judgment.  *See H & W Indus., Inc., v. Formosa Plastics Corp., USA*, 860 F.2d 172, 175 (5th Cir. 1988) (quoting *Curtiss-Wright Corp.*, 446 U.S. at 8) (a major factor that the district court should consider is whether the appellate court "would have to decide the same issues more than once even if there were subsequent appeals").

Further, the claims remaining in this case are in the "early stages of litigation"—indeed, no discovery has been conducted, and Plaintiffs' motion for preliminary relief directly addressed only the first of the five counts in their Amended Complaint.  This weighs in favor of permitting the Defendant States to appeal the Order now, rather than awaiting final disposition of Plaintiffs' remaining claims.  *Sanders v. Wash. Mut. Home Loans, Inc*., 2007 WL 734402 (E.D. La. Mar. 5, 2007), *aff'd sub nom*, *Sanders v. Wash. Mut. Home Loans, Inc. ex rel. Wash. Mut. Bank*, 248 F. App'x 513 (5th Cir. 2007).

This case also involves unique equitable concerns that weigh strongly in favor of an immediate appeal.  The legal question is of the utmost nationwide importance.  The interests of the residents of the Plaintiff States, as well as those of individuals and families, health providers, insurers, government agencies, and all others participating in the healthcare system nationwide, will benefit from prompt review of the Court's Order.

For these reasons, the Court should enter a partial final judgment on Count I of Plaintiffs' Amended Complaint under Rule 54(b), in accordance with the Court's Order of December 14, 2018.

### B. The Court Should Certify the Order for Appeal Under 28 U.S.C. § 1292(b)

Alternatively, the Defendant States request that the Court certify its Order for an interlocutory appeal under 28 U.S.C. § 1292(b).  Certification of an interlocutory appeal

---

[9] The State Defendants recognize that the Court's December 16, 2018 scheduling order (ECF No. 212) anticipates further trial court proceedings on the remaining claims in the Amended Complaint.  The State Defendants respectfully submit that appellate guidance on:  (1) whether Plaintiffs have Article III standing; (2) the constitutionality of Section 5000A(a); and (3) the severability of the rest of the ACA would resolve most, if not all, of the remaining issues in this case.

is appropriate where:  (1) a controlling question of law is involved, (2) there is substantial ground for difference of opinion about the question of law, and (3) immediate appeal will materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b); *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007).  And while Section 1292(b) certification may be reserved for "exceptional" circumstances, this is clearly one of the "big" cases to which this provision applies.  *Clark-Dietz and Assocs. – Eng'rs v. Basic Constr. Co*. 702 F.2d 67, 69 (5th Cir. 1959).

### 1.     The Order Involves a Controlling Question of Law

The Order here involves a controlling question of law.  The primary issue it resolves is a purely legal one:  whether the ACA remains in force, wholly or in substantial part, after the passage of the TCJA.  Indeed, this Court has already held that this case involves a purely legal question.  Order Denying Mot. To Intervene, ECF No. 169 at 7, n.2 ("Plaintiffs' bring a facial challenge to the ACA's individual mandate that presents a legal question, not a factual one.").  And the Plaintiffs and the Federal Defendants share that view.  Pls.' Statement on Consideration of the Constitutionality of the Individual Mandate on Summary Judgment, ECF No. 181 at 3 ("Federal Defendants and Plaintiffs do agree, however, that the constitutionality of the ACA's mandate is a 'pure question of law.'") ("Pls.' Summ. Judgment Statement").

The legal question is also controlling.  Whether an issue of law is controlling generally hinges upon the issue's potential to have some impact on the course of the litigation.  *Ryan v. Flowserve Corp*., 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006).  That is clearly the case here:  if the Court's decision is affirmed, there will be no need for the Court to address the remaining counts.

### 2.     There is Substantial Ground for Difference of Opinion

A substantial ground for difference of opinion exists where, among other things, a controlling legal question is a "difficult" one of "first impression."  *Ryan,* 444 F. Supp. 2d at 724.  Also, the court's inquiry into this element of Section 1292(b) should be reflect

the importance of the question presented by a specific case.  16 Wright, et al., *Federal Practice & Procedure* § 3930 (3d ed. 2017).

The Court's resolution of the controlling question of law in this case is both difficult and a matter of first impression.  As the Court itself has observed, the resolution of the claims at issue rests at the intersection of the ACA, the Supreme Court's decision in *NFIB*, and the TCJA.  Order, ECF No. 211 at 2.  Plaintiffs agree that the "issues in this case [are] particularly complex and important."  Pls.' Summ. Judgment Statement, ECF No. 181 at 3.  Moreover, although this Court has concluded that the minimum coverage provision will be unconstitutional beginning January 1, 2019, and that all remaining provisions of the ACA are inseverable, another court (including the Fifth Circuit) could reasonably disagree.  *See supra* pp. 10-11.  A court could, for example, agree with the Defendant States; or it could adopt the Federal Defendants' view that the minimum coverage provision is unconstitutional and inseverable from the ACA's community-rating and guaranteed-issue provisions, but that the rest of the ACA is severable.  Fed. Defs.' Resp., ECF No. 92 at 18-24.  The question presented here is also a matter of first impression.  Plaintiffs filed this case within two months following passage of the TCJA, alleging that by zeroing-out of the penalty for failing to maintain coverage, that Act rendered the minimum coverage provision unconstitutional and the entire ACA unenforceable.  Compl., ECF No. 1.

This case also involves a question of obvious national importance.  *See supra* pp. 11-14.  The ACA was enacted in 2010, and there is widespread agreement that it is the most significant federal health legislation since the Social Security Act amendments that created Medicare and Medicaid in 1965.  Aaron Decl., ¶ 4, ECF No. 91-1 at 9.  The ACA has enabled more than 20 million Americans to gain healthcare coverage, resulting in a 43 percent drop in the uninsured rate.  *Id.* at ¶ 5.  The law's provisions are so interwoven in virtually every aspect of the public and private healthcare system that the elimination of the ACA will cause grievous immediate and long-term harm to Americans' health and financial security, to the healthcare system, and to federal and state budgets.  *Id.* at ¶¶ 42-45.  As the Court itself recognized, the ACA includes hundreds of "minor" provisions

that complement its "major" provisions, including its consumer protections, expansion of the Medicaid program, and state health insurance exchanges.  Order, ECF No. 211 at 5. Because the Court's Order declaring that the entire ACA will become unenforceable after January 1, 2019 has the potential for widespread confusion and harm, this is undoubtedly one of those "big" cases in which interlocutory review under Section 1292(b) is warranted.  *Clark-Dietz,* 702 F.2d at 69.

### 3.   Interlocutory Appeal Will Materially Speed Termination of This Litigation

The requirement that a Section 1292(b) interlocutory appeal materially advance the ultimate termination of the litigation is closely related to the requirement that the subject order present a controlling question of law.  *Ryan,* 444 F. Supp. 2d at 723; *see also E.F. Hutton & Co. v. Brown*, 305 F. Supp. 371, 403 (S.D. Tex. 1969) ("A 'controlling' question, therefore, is properly one whose resolution may appreciably shorten the time, effort, and expense exhausted between the filing of a lawsuit and its termination.").

There is little dispute that an interlocutory appeal will help bring this lawsuit to a speedier conclusion.  If the appellate courts affirm this Court's partial summary judgment in its entirety, there will be no need for the Court to address the remaining causes of action because the Plaintiffs will have resolved the core legal question raised in their Amended Complaint.  The result is the same if the appellate courts affirm this Court's constitutional holding but reverse wholly or partly on severability.  The minimum coverage provision is the only statutory provision whose constitutionality Plaintiffs challenge.  Like Count I, Counts II through V of the Amended Complaint and the relief sought by Plaintiffs turn on the severability question.  If the appellate courts conclude that the rest of the ACA is severable from the minimum coverage provision, Plaintiffs cannot obtain any relief beyond a narrow declaration that Section 5000A(a) is unconstitutional.

On the other hand, if the appellate courts agree with the Defendant States that the Plaintiffs lack standing, that will effectively terminate this litigation.  And if the appellate courts rule that the minimum coverage provision remains constitutional, that would

foreclose Plaintiffs' remaining claims, all of which are premised on their argument that the minimum coverage provision exceeds Congress's Article I powers. *See* Am. Compl. ¶¶ 61-86, ECF No. 27 at 30-33 (Counts II through V).  An interlocutory appeal of this Court's partial summary judgment order will unquestionably advance the resolution of this litigation.  It is in the interest of the parties to efficiently and expeditiously achieve appellate resolution of the important legal questions presented in this case.

Because all three elements of Section 1292(b) are satisfied, the Court should certify this question for interlocutory review if it does not enter a partial final judgment under Rule 54(b).

## CONCLUSION

The Defendant States respectfully request that this Court:

Issue an order clarifying that its ruling does not require or permit any immediate change in the legal rights or obligations of the parties to this litigation—or of any other State, entity, or individual—under the ACA, pending further proceedings and appellate review; or, in the alternative, an order staying the effect of its decision pending appeal; and,

Issue an order directing the entry of a partial final judgment under Rule 54(b), in accordance with the terms of the Court's December 14, 2018 Order or, in the alternative, certify its partial summary judgment Order under 28 U.S.C. § 1292(b).

/ / /

/ / /

/ / /.

Dated:  December 17, 2018

Respectfully submitted,

Xavier Becerra
Attorney General of California
Julie Weng-Gutierrez
Senior Assistant Attorney General
Kathleen Boergers
Supervising Deputy Attorney General

**/s/ Neli N. Palma**

Neli N. Palma
Nimrod P. Elias
Deputy Attorneys General
California State Bar No. 203374
California State Bar No. 251634
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA  94244-2550
Telephone: (916) 210-7522
Fax: (916) 322-8288
E-mail: Neli.Palma@doj.ca.gov
*Attorneys for Intervenors-Defendants*

GEORGE JEPSEN
Attorney General of Connecticut
JOSEPH RUBIN
Associate Attorney General
*Attorneys for Intervenor-Defendant the State of Connecticut*

MATTHEW P. DENN
Attorney General of Delaware
ILONA KIRSHON
Deputy State Solicitor
JESSICA M. WILLEY
DAVID J. LYONS
Deputy Attorneys General
*Attorneys for Intervenor-Defendant the State of Delaware*

RUSSELL A. SUZUKI
Attorney General of Hawaii
ANDREA A. SUZUKI
Deputy Attorney General
ROBERT T. NAKATSUJI
Deputy Solicitor General
*Attorneys for Intervenor-Defendant the State of Hawaii*

LISA MADIGAN
Attorney General of Illinois
David F. Buysse
Deputy Chief, Public Interest Division
Anna P. Crane
Public Interest Counsel
Matthew V. Chimienti
Assistant Attorney General, Special Litigation
Bureau
*Attorneys for Intervenor-Defendant the*
*State of Illinois*

ANDY BESHEAR
Attorney General of Kentucky
LA TASHA BUCKNER
Executive Director, Office of Civil and
Environmental Law
S. TRAVIS MAYO
TAYLOR PAYNE
Assistant Attorneys General
*Attorneys for Intervenor-Defendant*
*the Commonwealth of Kentucky*

MAURA HEALEY
Attorney General of Massachusetts
STEPHEN P. VOGEL
Assistant Attorney General
*Attorneys for Intervenor-Defendant the*
*Commonwealth of Massachusetts*

OFFICE OF THE ATTORNEY GENERAL
State of Minnesota
SCOTT IKEDA
Assistant Attorney General
*Attorneys for Intervenor-Defendant the State of*
*Minnesota by and through its Department of*
*Commerce*

GURBIR S. GREWAL
Attorney General of New Jersey
JEREMY M. FEIGENBAUM
Assistant Attorney General
ANGELA JUNEAU BEZER
Deputy Attorney General
*Attorneys for Intervenor-Defendant the*
*State of New Jersey*

BARBARA D. UNDERWOOD
Acting Attorney General of New York
STEVEN C. WU
Deputy Solicitor General
LISA LANDAU
Bureau Chief, Health Care Bureau
ELIZABETH CHESLER
Assistant Attorney General, Health Care Bureau
*Attorneys for Intervenor-Defendant the*
*State of New York*

JOSHUA H. STEIN
Attorney General of North Carolina
SRIPRIYA NARASIMHAN
Deputy General Counsel
*Attorneys for Intervenor-Defendant the*
*State of North Carolina*

ELLEN F. ROSENBLUM
Attorney General of Oregon
HENRY KANTOR
Special Counsel to the Attorney General
SCOTT KAPLAN
Assistant Attorney General
*Attorneys for Intervenor-Defendant the*
*State of Oregon*

PETER KILMARTIN
Attorney General of Rhode Island
MICHAEL W. FIELD
Assistant Attorney General
MARIA R. LENZ
Special Assistant Attorney General
*Attorneys for Intervenor-Defendant the*
*State of Rhode Island*

THOMAS J. DONOVAN, JR.
Attorney General of Vermont
BENJAMIN D. BATTLES
Solicitor General
*Attorneys for Intervenor-Defendant the*
*State of Vermont*

MARK R. HERRING
Attorney General of Virginia
TOBY J. HEYTENS
Solicitor General
MATTHEW R. MCGUIRE
Deputy Solicitor General
*Attorneys for Intervenor-Defendant the*
*Commonwealth of Virginia*

ROBERT W. FERGUSON
Attorney General of Washington
JEFFREY G. RUPERT
Chief, Complex Litigation Division
JEFFREY T. SPRUNG
Assistant Attorney General
*Attorneys for Intervenor-Defendant the*
*State of Washington*

KARL A. RACINE
Attorney General for the District of Columbia
ROBYN R. BENDER
Deputy Attorney General
VALERIE M. NANNERY
Assistant Attorney General
*Attorneys for Intervenor-Defendant the*
*District of Columbia*

**CERTIFICATE OF SERVICE**

On December 17, 2018, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5 (b)(2).

/s/          *Ashley Harrison*