# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **TEXAS, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **UNITED STATES OF AMERICA, et al.,** | § | **Civil Action No. 4:18-cv-00167-O** |
| | § | |
| **Defendants,** | § | |
| | § | |
| | § | |
| **CALIFORNIA, et al.** | § | |
| | § | |
| **Intervenors-Defendants.** | § | |

## ORDER GRANTING STAY AND PARTIAL FINAL JUDGMENT

On December 14, 2018, the Court entered its Order granting partial summary judgment on Count I of the Plaintiffs' Amended Complaint. *See* ECF No. 211. On December 16, 2018, the Court ordered the Parties to meet and confer and, by January 4, 2019, to jointly propose a schedule for resolving the Plaintiffs' remaining claims. *See* ECF No. 212. On December 17, 2018, the Intervenor Defendants moved the Court to clarify that the December 14, 2018 Order is not binding or to enter a stay if the Order is binding and to enter final judgment or certify the Order for immediate appeal. *See* ECF No. 213.

## I.     BACKGROUND

Plaintiffs are the States of Alabama, Arizona, Arkansas, Florida, Georgia, Indiana, Kansas, Louisiana, Mississippi, Missouri, Nebraska, North Dakota, South Carolina, South Dakota, Tennessee, Texas, Utah, West Virginia, Wisconsin, Governor Paul LePage of Maine (the "State Plaintiffs"), and individuals Neill Hurley and John Nantz (the "Individual Plaintiffs" and, collectively with the State Plaintiffs, "Plaintiffs").

1

Defendants are the United States of America, the United States Department of Health and Human Services ("HHS"), Alex Azar, in his official capacity as Secretary of HHS, the United States Internal Revenue Service (the "IRS"), and David J. Kautter, in his official capacity as Acting Commissioner of Internal Revenue (collectively, the "Federal Defendants").

Finally, the States of California, Connecticut, Delaware, Hawaii, Illinois, Kentucky, Massachusetts, Minnesota, New Jersey, New York, North Carolina, Oregon, Rhode Island, Vermont, Virginia, and Washington, and the District of Columbia intervened as defendants (collectively, the "Intervenor Defendants").

The Plaintiffs sued the Federal Defendants seeking, among other things, a declaration that the Individual Mandate of the Patient Protection and Affordable Care Act (ACA), Pub. L. 111-148, 124 Stat. 119-1045 (2010), as amended by the Tax Cuts and Jobs Act of 2017 (TCJA), Pub. L. No. 115-97, 131 Stat. 2054 (2017), is unconstitutional and that the remainder of the ACA is inseverable. Am. Compl. 2, ECF No. 27. Their theory is that, because the TCJA eliminated the shared-responsibility tax, the tax-based saving construction developed by the Supreme Court in *National Federation of Independent Businesses v. Sebelius (NFIB)*, 567 U.S. 519 (2012), no longer applies. Am. Compl. 2–3, ECF No. 27. Plaintiffs further argue that, as the four joint dissenters reasoned in *NFIB*, the Individual Mandate is inseverable from the rest of the ACA. Pls.' Br. Prelim. Inj. 35, ECF No. 40 (citing *NFIB*, 567 U.S. at 691–703 (joint dissent)) [hereinafter "Pls.' Br."].

The Federal Defendants agree the Individual Mandate is unconstitutional and inseverable from the ACA's pre-existing-condition provisions. But they argue all other ACA provisions are severable from the mandate. The Intervenor Defendants argue all of Plaintiffs' claims fail.

The Plaintiffs filed an Application for Preliminary Injunction, (ECF No. 39), on April 26, 2018; the Federal Defendants and the Intervenor Defendants responded, (ECF Nos. 91 and 92), on

June 7, 2018; and Plaintiffs replied, (ECF No. 175), on July 5, 2018. Because the Federal Defendants argued a judgment, as opposed to an injunction, was more appropriate, the Court provided notice of its intent to resolve the issues raised by the Application for Preliminary Injunction on summary judgment. *See* July 16, 2018 Order, ECF No. 176 (citing FED. R. CIV. P. 56(f)(3)). The parties responded. *See* ECF Nos. 177–79.

On December 14, 2018, the Court issued its order denying the Plaintiffs' request for a preliminary injunction but granting summary judgment on Count I of the Amended Complaint, finding the Individual Mandate is unconstitutional because it no longer triggers a tax and is inseverable from the remainder of the ACA. *See* Dec. 14, 2018 Order, ECF No. 211. On December 17, 2018, the Intervenor Defendants moved the Court to (1) clarify whether the December 14, 2018 Order is immediately binding on the parties and (2) stay the order or certify it for appeal, as appropriate. *See* Intervenor Defs.' Mot. Stay, ECF No. 213. The Court ordered expedited briefing, *see* ECF No. 215, and the Parties promptly complied, *see* ECF Nos. 216, 217, and 218.

As an initial matter, the Court recognizes the Parties' diligent work on this delicate and complex matter. Counsel have conducted themselves with grace and professionalism, consistently advocating zealously on behalf of their clients with candor and class. And it is no small feat, the Court acknowledges, to prepare such crisp briefing, with so many moving parts, on an expedited basis during the holiday season. For all this, the Court is grateful.

Having reviewed the briefing and applicable law, the Court finds it is most efficient and appropriate to **GRANT** the Intervenor Defendants' request for final judgment on the December 14, 2018 Order granting summary judgment on Count I of the Amended Complaint and to **GRANT** the Intervenor Defendants' request for a stay of that judgment.

## II.    LEGAL STANDARDS

### A.    Partial Final Judgment

Federal Rule of Civil Procedure 54(b) provides: "When an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b). This Rule "permits district courts to authorize immediate appeal of dispositive rulings on separate claims in a civil action raising multiple claims." *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902 (2015). "As both the rule's text and the Supreme Court have made clear, a district court deciding whether to certify a judgment under Rule 54(b) must make two determinations." *Briargrove Shopping Ctr. Joint Venture v. Pilgrim Enterprises, Inc.*, 170 F.3d 536, 539 (5th Cir. 1999) (citation omitted). First, the court must determine that it is entering judgment on "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.* (citation omitted). Second, the court must determine that no "just reason for delay exists." *Id.* (citation omitted).

### B.    Stay of Judgment

"The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). To determine whether to grant a stay pending appeal courts consider four factors: "(1) whether the stay applicant has made a strong showing that he [or she] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Campaign for S. Equality v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014) (quoting *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014)). But when "evaluating these factors, [the Fifth Circuit] has

4

refused to apply them 'in a rigid . . . [or] mechanical fashion.'" *Id.* (quoting *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983)).

## III. ANALYSIS

### A. The Court Will Enter Partial Final Judgment

Given the Parties' inquiries about whether the Court's December 14, 2018 Order is final and binding—and the unanimous agreement that the Order should be immediately appealable[1]—the Court finds it is most efficient to enter a partial final judgment under Rule 54(b) on the Order and then stay it pending appeal.

The Federal Defendants suggest it would be inappropriate for the Court to enter partial final judgment under Rule 54(b) "because the Amended Complaint presents only one claim for purposes of Rule 54(b)—that the individual mandate is unconstitutional and that it is not severable from the rest of the ACA."[2] They assert that "Counts I through V represent merely alternative theories of relief or different forms of remedy."[3] The Court finds that Counts I through V of the Amended Complaint are not mere redundancies.

Count I, for example, asks for a declaratory judgment that the Individual Mandate is unconstitutional.[4] Count II, however, raises a Due Process Clause claim and asserts that because "Section 5000A's individual mandate is unconstitutional, the rest of the ACA is irrational under Congress's own findings" and that "[t]he ACA lacks a rational basis now that the individual mandate's tax penalty has been repealed."[5] It is true this claim is likely moot if the Court's December 14, 2018 Order is affirmed on appeal; but if the Order is reversed in whole or in part,

---

[1] *See, e.g.*, Intervenor Defs.' Mot. Stay 14, ECF No. 213-1; Fed. Defs.' Resp. 6, ECF No. 216; Pls.' Resp. 5, ECF No. 217.
[2] Fed. Defs.' Resp. 8, ECF No. 216.
[3] *Id.*
[4] *See* Am. Compl. 28, ECF No. 27.
[5] *Id.* at 30.

the Plaintiffs could still seek relief under the theory put forth in Count II. And Count IV, for example, presents an APA claim that presupposes the ACA's unconstitutionality but seeks different relief entirely.[6] The claims, in other words, are related but distinct.

Moreover, the Court finds that summary judgment on Count I is an "ultimate disposition of an individual claim." *Pilgrim Enterprises*, 170 F.3d at 539 (citation omitted). By the Court's Order, the Plaintiffs have succeeded on Count I—the entry of summary judgment "dispose[d] of that claim *entirely*." *Monument Mgmt. Ltd. P'ship I v. City of Pearl*, 952 F.2d 883, 885 (5th Cir. 1992) (emphasis in original). And that claim—that the Individual Mandate is unconstitutional—is the Plaintiffs' "*primary* claim." *Id.* (emphasis in original). Plus, for the reasons discussed in the below stay analysis, the Court finds there is "no just reason for delay[ing]" appeal of the December 14, 2018 Order. *See Pilgrim Enterprises*, 170 F.3d at 539.

The Court therefore **GRANTS** the Intervenor Defendants' motion for final judgment on the December 14, 2018 Order, (ECF No. 211), granting summary judgment on Count I of the Amended Complaint and declaring the Individual Mandate unconstitutional and inseverable.

### B.     The Order is Stayed

The Intervenor Defendants bear the burden of demonstrating that a stay is warranted. *Nken*, 556 U.S. at 433–34. In their briefing, the Intervenor Defendants address all four factors relevant to a district court's analysis of whether to exercise its discretion to grant a stay pending appeal.[7] For the reasons set forth below, the Court finds the Intervenor Defendants cannot carry their burden on the first relevant factor—likelihood of success on the merits. But the Intervenor Defendants prevail on the remaining elements, and the Plaintiffs do not argue otherwise.

---

[6] *Id.* at 32.
[7] *See* Intervenor Defs.' Mot. Stay 7–14, ECF No. 213-1.

1.     The Intervenor Defendants Are Unlikely to Succeed

The Intervenor Defendants put forth a very powerful narrative in this case—one they assert the Fifth Circuit is likely to adopt. In truth, the narrative presents a forceful, surface-level appeal. It goes something like this.

The Individual Plaintiffs have no standing because they suffer no injury. After the TCJA, there is no tax penalty for non-compliance with the Individual Mandate. And anyways, the Individual Mandate is purely optional. So, at most, the ACA presents the Individual Plaintiffs with a simple choice between buying ACA-compliant insurance or "paying" a $0 tax. No harm, no foul.

But even if the choice between buying insurance and doing nothing creates standing, the Intervenor Defendants continue, the Individual Mandate is constitutional. It is constitutional as an exercise of Congress's Tax Power because the now-eliminated shared-responsibility payment still satisfies a number of the tax factors discussed in *NFIB*. And even if the Individual Mandate is no longer salvageable as an exercise of the Tax Power, it may now be viewed as a proper exercise of Congress's Interstate Commerce Power because it does not compel anyone to do anything.

Finally, even if the Individual Mandate is unconstitutional, it is severable from the remainder of the ACA. We know that because the 2017 Congress that passed the TCJA eliminated the shared-responsibility payment but left the rest of the ACA intact.

So stated, this narrative is compelling. But it rests on two crucial premises, without which it falls apart. First, it is premised on a belief that written law is not binding. Second, it is premised on the view that the Supreme Court's reasoning in *NFIB* did not simply craft a saving construction but instead permanently supplanted Congress's intent by altering the very nature of the ACA. In the Court's view, neither of these premises hold and therefore neither does the narrative. The Court

therefore finds the Intervenor Defendants are unlikely to succeed on the merits of their appeal for at least the following basic reasons.

a.    <em>Standing</em>

The Intervenor Defendants assert that, on appeal, they "are likely to establish that the Individual Plaintiffs do not have standing to maintain this action" because, after January 1, 2019, the Individual Plaintiffs will not be put to a choice "between purchasing minimum essential coverage, on the one hand, and paying the penalty for not doing so, on the other." Intervenor Defs.' Mot. Stay 8, ECF No. 213-1 (citing *Hotze v. Burwell*, 784 F.3d 984, 993 (5th Cir. 2015)). The Court finds it unlikely that the Fifth Circuit will hold the Individual Plaintiffs lack standing to challenge the constitutionality of the Individual Mandate—under *Hotze* or otherwise.

In *Hotze*, the plaintiffs challenged the ACA as unconstitutional under the Origination Clause and the Takings Clause, unlike the Individual Plaintiffs here who, like the plaintiffs in *NFIB*, challenge the Individual Mandate as beyond Congress's enumerated powers.[8] In deciding the case, the Fifth Circuit did not hold that an individual may challenge the constitutionality of the ACA *only if* the individual pleads that they lack ACA-compliant coverage and are therefore faced with a choice between purchasing insurance or paying a penalty.[9] Instead, it held on the basis of the pleadings before it that the plaintiffs failed to adequately plead that precise dilemma and that doing so would have been "the most straightforward" way to demonstrate standing. *Id.* at 994 ("Accordingly, we hold that Dr. Hotze has failed to demonstrate standing on the most straightforward ground—that is, that the ACA forces him to choose between paying the penalty and purchasing compliant insurance.").

---

[8] *Compare Hotze*, 784 F.3d at 986, *with NFIB*, 567 U.S. at 530–32.

[9] *See Hotze*, 784 F.3d at 993 (noting the distinction in other circuits that "plaintiffs . . . who already have minimum essential coverage *ordinarily* will not have an injury in fact for standing purposes" (emphasis added)).

Specifically, Dr. Hotze pleaded that the "ACA compels Plaintiff Hotze and other Texans to pay enormous penalties to the federal government, or else purchase health insurance that is far more expensive and less useful than existing employer-based coverage." Complaint at 1, *Hotze v. Sebelius*, 991 F. Supp. 2d 864 (S.D. Tex. 2014) (No. 4:13-cv-01318).[10] This "purchase or penalty" theory of economic injury forced the court to contend with the fact that Dr. Hotze never actually pleaded the facts necessary to support *his own theory of standing*—i.e., that he was put to a concrete choice between the costs of obeying 26 U.S.C. § 5000A(a) or paying the penalty amount set by § 5000A(c).[11] To the contrary, the complaint there suggested Dr. Hotze faced no such dilemma because he was covered by his employer. *See Hotze*, 784 F.3d at 989 ("[T]he complaint at no point clearly alleges that the health-insurance policy that Braidwood already provides to Dr. Hotze fails to satisfy the mandates.").

*Hotze*, then, is not a broad holding that individuals lack standing to challenge the Individual Mandate's constitutionality unless they first disobey that provision and fail to maintain compliant coverage. To read *Hotze* in such a manner would run headlong into the well-established doctrine that individuals need not first disobey a law to earn standing to challenge it.[12] Instead, *Hotze* is a

---

[10] *See also id.* at 6 ("Plaintiffs will suffer irreparable harm in being compelled to switch to a more expensive government-approved insurance plan that does not cover or reimburse for desired medical services."); *id.* at 6–7 ("Plaintiffs will suffer unrecoverable financial losses from the implementation of ACA, which they will have no practical way of recouping from the federal government or from private, government-approved insurance carriers."); *id.* at 7 ("Plaintiffs have already suffered harm by the reduction in market choice for affordable health insurance, as insurance premiums have already increased in the market due to ACA.").

[11] *See Hotze*, 784 F.3d at 994 ("Given the complaint's allegation that Dr. Hotze has an employer-provided health-insurance plan, coupled with the complaint's failure to allege that this plan falls into the narrow category of employer-provided plans that do not constitute 'minimum essential coverage' under § 5000A, we cannot 'reasonably ... infer[ ]' that Dr. Hotze lacks the minimum essential coverage required by the mandate." (citations omitted)).

[12] *See, e.g.*, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974); *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 455 (5th Cir. 2017), *cert. denied*, 139 S. Ct. 408 (2018) ("This argument ignores the well-established principle that a threatened injury may be sufficient to establish standing . . . The Individual Plaintiffs thus need not wait to file suit until PPGC is forced to close its doors to them and all other Medicaid beneficiaries." (citing *Comsat Corp. v. FCC*, 250 F.3d 931, 936 (5th Cir. 2001); *Loa–Herrera v. Trominski*, 231 F.3d 984, 988 (5th Cir. 2000))).

narrow, fact-specific holding that the plaintiff failed to adequately plead his own purchase-or-penalty theory of standing. *Hotze*, 784 F.3d at 991 ("Thus, although we do not doubt that many have suffered an injury in fact at the hands of the individual mandate, the plaintiffs' complaint *does not adequately allege* that Dr. Hotze is among them." (emphasis added)).

Importantly, the Individual Plaintiffs here chart a different course than Dr. Hotze. Their pleadings clearly allege they are required by the Individual Mandate to *maintain* insurance they do not want to *continue* purchasing—i.e., they are required by a law to continue activity they do not want to engage in—and that this requirement is inherently beyond Congress's enumerated powers. *See* Am. Compl. 5, ECF No. 27 ("Mr. Hurley maintains minimum essential health insurance coverage, which he purchased on the ACA-created exchange."); *id.* at 27 ("In the absence of the ACA, the Individual Plaintiffs would purchase a health-insurance plan different from the ACA-compliant plans that they are currently required to purchase were they afforded the option without the ACA."); *id.* at 28 ("Section 5000A's individual mandate exceeded Congress's enumerated powers by forcing Individual Plaintiffs to maintain ACA-compliant health insurance coverage.").

The Fifth Circuit is therefore likely to find that the Individual Plaintiffs pleaded a sufficient injury in two respects.[13] First, unlike the purely theoretical and contradictory allegations in *Hotze*,[14] the Individual Plaintiffs here actually allege a clear and present injury. Indeed, the Individual Plaintiffs put it quite plainly: "In the absence of the ACA, the Individual Plaintiffs would purchase a health-insurance plan different from the ACA-compliant plans that they are currently required to purchase."[15] Compl. 27, ECF No. 27. There is no equivocation, there is no speculation. The

---

[13] *See, e.g.*, *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 636 (5th Cir. 2012) (holding the plaintiffs alleged a "sufficient economic *and* constitutional injury" (emphasis in original)).

[14] *See* Complaint at 1–7, *Hotze*, 991 F. Supp. 2d 864 (S.D. Tex. 2014) (No. 4:13-cv-01318).

[15] It is also worth noting that the Fifth Circuit in *Hotze* held that Dr. Hotze failed to adequately plead an injury caused by the *possibility* of being faced with a choice between accepting undesirable health insurance or violating the Individual Mandate only because that injury presupposed the decision of a third party—Dr.

Individual Plaintiffs allege they are bound to purchase something they do not want to purchase and that if they were not so bound they would not make the purchase.[16] And whereas Dr. Hotze would face his injury only were his employer to stop providing ACA-compliant coverage, the Individual Plaintiffs here face their alleged injury now—they are being required to continue buying something they do not want.

Second, as discussed in the Court's Order,[17] the Individual Plaintiffs sufficiently allege that they are the direct objects of an unconstitutional exercise of power traceable to the Individual Mandate that will be redressed by a holding that the mandate is invalid.[18] That is to say, the Individual Plaintiffs allege a straightforward constitutional injury: Congress legislated in a way the Constitution does not allow and the Individual Plaintiffs are the direct object of that legislation. The "alleged violation[] of the Constitution here [is] not immaterial, but form[s], rather, the sole

---

Hotze's employer. *See Hotze*, 784 F.3d at 995 ("The existence of Dr. Hotze's alleged injury rests on . . . a third-party decision: Dr. Hotze will be injured by the individual mandate, the plaintiffs say, because, once the employer mandate takes effect, Braidwood may offer him less desirable insurance, which may prompt him to drop his employer-provided insurance, which he will not be able to do without violating the individual mandate. Speculation about a decision made by a third party . . . constitutes an essential link in this chain of causation."). The court therefore left open the possibility that such a choice could constitute sufficient injury if not contingent on a third-party decision. The Individual Plaintiffs allege such an injury here. *See* Am. Compl. 27, ECF No. 27.

[16] *See Doe v. Chao*, 540 U.S. 614, 624–25 (2004) (noting that "an individual subjected to an adverse effect has injury enough to open the courthouse door"); *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998) (noting "the constitutional 'case' or 'controversy' . . . point has always been the same: whether a plaintiff 'personally would benefit in a tangible way from the court's intervention.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 508 (1975))).

[17] *See* December 14, 2018 Order 16–17, ECF No. 211.

[18] Compl. 26, ECF No. 27 ("The ACA injures Individual Plaintiffs Hurley and Nantz by mandating that they purchase minimum essential health insurance coverage despite the Supreme Court's determination that the requirement is unconstitutional."); *id.* at 27 ("Individual Plaintiffs have an obligation to comply with the individual mandate under the ACA while it remains federal law, despite the provision's unconstitutionality."); *id.* at 5 ("Mr. Hurley is subject to the individual mandate and objects to being required by federal law to comply with it."); *id.* at 6 ("Mr. Nantz is subject to the individual mandate and objects to being required by federal law to comply with it."); *id.* at 27 ("Each of the injuries to Individual Plaintiffs is caused by the Defendants' continued enforcement of the Affordable Care Act, and each of these injuries will be redressed by a declaratory judgment from this Court pronouncing the Affordable Care Act unconstitutional.").

basis of the relief sought." *Bell v. Hood*, 327 U.S. 678, 683 (1946). "And it is established practice for [the Supreme] Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution." *Id.* at 684.

The Individual Plaintiffs' allegation is therefore likely to satisfy the test for constitutional injury on appeal.[19] And to the extent existing constitutional-injury doctrine deals largely with the infringement of enumerated rights, rather than the violation of the Constitution's structural protection of rights, the Court finds it unlikely the Fifth Circuit would rely on such an untenable distinction.[20] The Individual Plaintiffs allege they are subject to a congressional act that inherently

---

[19] *See, e.g.*, *Hudson*, 667 F.3d at 636–37 ("TCA and Time Warner need not prove that they will sustain a quantifiable economic injury. *Cf. Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 588 (1983) (observing that 'the very selection of the press for special treatment threatens the press not only with the current differential treatment, but with the possibility of subsequent differentially more burdensome treatment' and '[t]hus, even without actually imposing an extra burden on the press, the government might be able to achieve censorial effects'). S.B. 5 subjects the plaintiffs to disparate treatment . . . Because the legislation targets the plaintiffs for exclusion from this benefit provided to similarly situated speakers, TCA and Time Warner have shown constitutional injury sufficient to establish standing."); *Texas Cable & Telecomms. Ass'n v. Hudson*, 265 F. App'x 210, 217–18 (5th Cir. 2008) ("In addition to competitive or economic injury, a constitutional injury also provides standing."); *Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 520 (5th Cir. 2014) (holding plaintiff sufficiently pleaded constitutional injury because he alleged he was "the target of the . . . ordinance restricting where registered child sex offenders, like him, can live"); *Hollis v. Lynch*, 827 F.3d 436, 441–42 (5th Cir. 2016) (holding plaintiff pleaded sufficient constitutional injury by challenging law banning machine guns as infringing Second Amendment rights and then holding the Second Amendment challenge failed on the merits); *accord Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 664–66 (1993).

[20] *See* U.S. CONST. amend. IX ("The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."); *United States v. Lopez*, 514 U.S. 549, 552 (1995) ("We start with first principles. The Constitution creates a Federal Government of enumerated powers . . . As James Madison wrote: 'The powers delegated by the proposed Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite.' . . . This constitutionally mandated division of authority 'was adopted by the Framers to ensure protection of our fundamental liberties.'" (citations omitted)); *cf Bond v. United States*, 564 U.S. 211, 221 (2011) ("The Framers concluded that allocation of powers between the National Government and the States enhances freedom . . . by protecting the people, from whom all governmental powers are derived."); *id.* ("[F]ederalism secures to citizens the liberties that derive from the diffusion of sovereign power." (quoting *New York v. United States*, 505 U.S. 144, 181 (1992))); *id.* ("Federalism secures the freedom of the individual."); *id.* at 222 ("The structural principles secured by the separation of powers protect the individual as well."); *id.* ("In the precedents of this Court, the claims of individuals . . . have been the principal source of judicial decisions concerning separation of powers and checks and balances."); *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 164 (D.C. Cir. 2018) (en banc) (Kavanaugh, J., dissenting) ("To prevent tyranny and protect individual liberty, the Framers of the Constitution separated

exceeds that body's power. And "[i]f the constitutional structure of our Government that protects individual liberty is compromised, individuals who suffer otherwise justiciable injury"—such as the requirement to purchase an unwanted product—"may object." *Bond*, 564 U.S. at 223.

This raises one final point: The Intervenor Defendants argue the Individual Plaintiffs cannot plead a constitutional injury (or any justiciable injury, for that matter) because the Individual Mandate no longer compels compliance. *See* Intervenor Defs.' Mot. Stay 8, ECF No. 213-1 ("Beginning January 1, 2019, the Individual Plaintiffs will no longer be on the horns of that dilemma; as a result, the Fifth Circuit is likely to hold that they lack standing."). But standing analysis and merits analysis are fundamentally separate inquiries, and this line of attack conflates them.[21] That is, it rests on the premise that written law, like § 5000A(a), is not binding—which is one of the Intervenor Defendants' premiere merits arguments in this case.[22] That the Individual Mandate does nothing is the Intervenor Defendants' leading argument for why the mandate

---

the legislative, executive, and judicial powers of the new national government."). *See also* THE FEDERALIST NO. 84 (Alexander Hamilton) ("[W]hy declare that things shall not be done which there is no power to do? Why, for instance, should it be said that the liberty of the press shall not be restrained, when no power is given by which restrictions may be imposed?"); RANDY E. BARNETT, OUR REPUBLICAN CONSTITUTION 191 (2016) ("Madison's blasé attitude about the Tenth Amendment was in stark contrast with the imperative he felt to add what eventually became the Ninth Amendment. This provision was needed, he said, to guard against 'one of the most plausible arguments I have ever heard urged against the admission of a bill of rights into this system, namely, that 'by enumerating particular exceptions to the grant of power, it would disparage those rights which were not placed in that enumeration.'" (citations omitted)).

[21] *See Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663 (2015) ("[O]ne must not 'confus[e] weakness on the merits with absence of Article III standing.'" (citing *Davis v. United States*, 131 S.Ct. 2419, 2434 n. 10 (2011); *Warth*, 422 U.S. at 500)); *Steel Co.*, 523 U.S. at 94 (noting the Ninth Circuit's "doctrine of hypothetical jurisdiction" and "declin[ing] to endorse such an approach because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers"); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("Our threshold inquiry into standing 'in no way depends on the merits of the [petitioner's] contention' . . . and we thus put aside for now [petitioner's] Eighth Amendment challenge and consider whether he has established the existence of a 'case or controversy.'" (quoting *Warth*, 422 U.S. at 500)); *Bell*, 327 U.S. at 682 ("[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits, and not for a dismissal for want of jurisdiction.").

[22] *See* December 14, 2018 Order 17, ECF No. 211 ("But this argument begs a leading question in this case by assuming the Individual Plaintiffs need not comply with the Individual Mandate.").

permissibly "regulates" interstate commerce.[23] Putting aside the logical difficulty of that argument,

the Supreme Court has made clear that whether a challenged "statute in fact constitutes an

abridgment of the plaintiff's" constitutional protections "is, of course, irrelevant to the standing

analysis."[24] So, the Fifth Circuit is unlikely to skip ahead to the merits to determine § 5000A(a) is

non-binding and therefore constitutional and then revert to the standing analysis to use its merits

determination to conclude there was no standing to reach the merits in the first place. It is instead

likely to hold that the Intervenor Defendants' merits argument that the Individual Plaintiffs need

not comply with the law is an inappropriate ground for challenging standing[25]—and likely

inappropriate on the merits.

This then brings into focus the proper injury inquiry for the Individual Plaintiffs'

constitutional challenge: Do the Individual Plaintiffs sufficiently allege that the Individual

Mandate *operates* to injure them? The inquiry is not whether the Individual Plaintiffs are injured

if they break the law—i.e., if they *disobey* the Individual Mandate. The Court does not ask whether

a plaintiff is injured by a challenged law if they choose to disregard the law they challenge as

unconstitutional—the injury arises from following the law as Congress intended. That is the entire

---

[23] *See, e.g.*, Intervenor Defs.' Mot. Stay 9, ECF No. 213-1 ("In *NFIB*, The Supreme Court held that the requirement of maintaining minimum coverage went beyond Congress's powers under the Commerce Clause because it '*compels* individuals' to participate in commerce . . . But once the penalty for failing to maintain coverage is reduced to zero, it will lose its coercive effect." (citation omitted)).

[24] *Meese v. Keene*, 481 U.S. 465, 473 (1987) (citation omitted).

[25] *See, e.g.*, *Gee*, 862 F.3d at 455 ("LDHH also argues that the Individual Plaintiffs have not and will not sustain any legal injury . . . because the Individual Plaintiffs have a right to choose only a 'qualified' provider, and PPGC is no longer a qualified provider. This contention turns on the sole substantive question before us on appeal, and we decline to allow LDHH to bootstrap this issue into our standing inquiry."); *Duarte*, 759 F.3d at 520 ("The factors the district court found significant may ultimately bear on whether Duarte can show constitutional injury to merit an award of damages or injunctive relief—on which we express no opinion. But the district court improperly relied on these considerations in dismissing the Duartes' constitutional challenge for lack of standing."); *Croft v. Governor of Texas*, 562 F.3d 735, 746 (5th Cir. 2009) ("The ADF *amicus* claims that a moment of silence cannot violate the Establishment Clause, as there is no active religious component. But that is a question to be determined on the merits, which must come after determining whether we have jurisdiction to hear the case.").

point of a constitutional challenge. Were courts to assess whether plaintiffs are injured by *disregarding* allegedly unconstitutional laws, courts would not only be implicitly sanctioning lawlessness but would be foreclosing a large swath of constitutional challenges already entertained by the Supreme Court.[26]

In this regard, the Individual Plaintiffs' alleged injury—the requirement to purchase an unwanted product—is not self-inflicted, it is congressionally inflicted. Congress intended to achieve something through the Individual Mandate, the Individual Plaintiffs allege, that is beyond its constitutional reach. It would be illogical to ask whether the allegedly unconstitutional Individual Mandate injures the Individual Plaintiffs when it is ignored. The answer is obviously "no," but it is also obviously irrelevant. Answering whether the Individual Mandate injures the Plaintiffs by unconstitutionally requiring them to do something requires analyzing what the law requires them to do, not whether the Plaintiffs can get away with not doing it.

In sum, the pleadings satisfy *Hotze* and otherwise sufficiently state a constitutional injury sufficient to meet the Article III requirements of standing. And to the extent an independent, justiciable injury other than regulation by unconstitutional legislation is necessary, the Individual Plaintiffs have alleged that, too—they are required to purchase a product that, in the absence of

---

[26] For example, the Supreme Court did not ask in *Clements v. Fashing* whether the officeholders would be injured if they simply *disregarded* the law and did not resign their current offices upon announcing candidacy. 457 U.S. 957, 961–62 (1982) ("We find the uncontested allegations in the complaint sufficient to create an actual case or controversy. The officeholder-appellees have alleged that they have not and will not announce their candidacy for higher judicial office because such action will constitute an automatic resignation of their current offices pursuant to § 65."). And Chief Justice Marshall never asked whether William Marbury would be injured if he *ignored* the law and began serving as a justice of the peace without an official commission from James Madison. *See Marbury v. Madison*, 5 U.S. 137, 137 (1803) ("This motion was supported by affidavits of the following facts; that notice of this motion had been given to Mr. Madison; that Mr. Adams, the late president of the United States, nominated the applicants to the senate for their advice and consent to be appointed justices of the peace of the district of Columbia; that the senate advised and consented to the appointments; that commissions in due form were signed by the said president appointing them justices, &c. and that the seal of the United States was in due form affixed to the said commissions by the secretary of state; that the applicants have requested Mr. Madison to deliver them their said commissions, who has not complied with that request.").

§ 5000A(a), they allege they would not purchase. If the Fifth Circuit has held that an allegation of death to whooping cranes—majestic as they are—is sufficient injury-in-fact to confer standing on an individual,[27] surely it is unlikely to hold that an allegation of unconstitutional coercion is not. And while it may not agree on the merits of that allegation, it may not thereby dismiss it at the threshold. The Court therefore finds the Intervenor Defendants are unlikely to succeed on their standing argument.

### b.      Merits

The Intervenor Defendants also contend they are likely to succeed on the merits of the Plaintiffs' claims. First, the Intervenor Defendants assert they are likely to succeed in arguing the Individual Mandate "can still be upheld as a lawful exercises of Congress's taxing power" because "Section 5000A will retain most of the features that the Supreme Court pointed to in concluding that it could fairly be construed as a tax" and because "the Fifth Circuit is unlikely to share this Court's view that the production of revenue at all times is the *sine qua non* of a tax." Intervenor Defs.' Mot. Stay 8–9, ECF No. 213-1. They also assert the Fifth Circuit "has upheld the constitutionality of a statute that taxed the making of machine guns, even though federal law had subsequently banned the possession of machine guns, and even though the federal government no longer collected the tax." *Id.* at 9 (*United States v. Ardoin*, 19 F.3d 177, 179–80 (5th Cir. 1994)).

Next, the Intervenor Defendants argue they "are likely to succeed on their alternative theory that, if the minimum coverage provision can no longer be fairly construed as a tax, it no longer violates the Commerce Clause" because "once the penalty for failing to maintain coverage is reduced to zero, it will lose its coercive effect." *Id.* The Intervenor Defendants then insist that, even if the Fifth Circuit holds the Individual Mandate unconstitutional, the court is likely to hold

---

[27] *See Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014) (per curiam) (holding plaintiff sufficiently "alleged injury (death to cranes and injury to those who enjoy them)").

that "the appropriate remedy is to strike the amendment and order that the statute operate the way it did before the amendment was adopted." *Id.* (citing *Frost v. Corp. Comm'n Okla.*, 278 U.S. 515, 525 (1928)). Finally, the Intervenor Defendants argue that, even if they lose on all the above arguments, they "are likely to succeed on their argument" that the Individual Mandate "is severable from the rest of the ACA." *Id.* at 10. This is because the 2017 Congress "zeroed out the penalty for failing to maintain minimum coverage while leaving the rest of the ACA intact." *Id.*

The Court disagrees with each of the Intervenor Defendants' contentions for the reasons set out in the Court's 55 pages of analysis in the December 14, 2018 Order. *See* ECF No. 211. But the Court finds it appropriate to briefly summarize the logic of why the Intervenor Defendants' arguments, though well-made, are ultimately unavailing and unlikely to succeed on appeal.

i.     Unconstitutional Under the Tax Power[28]

The Individual Mandate can no longer be saved as an exercise of Congress's Tax Power for the following reasons:

- The Individual Mandate, 26 U.S.C. § 5000A(a), and the shared-responsibility payment, §§ 5000A(b) and (c), are textually and functionally distinct.[29]
- The Supreme Court's decision in *NFIB* recognized this distinction.[30]
- The Supreme Court held the Individual Mandate could be saved under Congress's Tax Power because it triggered the shared-responsibility payment, which could be plausibly read as a tax.[31]

---

[28] *See* December 14, 2018 Order 19–27, ECF No. 211.

[29] *Id.* at 20–22.

[30] *See id.* at 22 ("*NFIB* does not contravene Congress's intent to separate the Individual Mandate and shared-responsibility penalty. To the extent the Supreme Court held § 5000A could be fairly read as a tax, it reasoned only that the Individual Mandate could be viewed as part and parcel of a provision supported by the Tax Power—not that the Individual Mandate itself was a tax. The Supreme Court stated its 'precedent demonstrate[d] that Congress had the power to impose the exaction in § 5000A under the taxing power'— and § 5000A(b) is the exaction—'and that § 5000A need not be read to do more than impose a tax. That is sufficient to sustain it.'" (quoting *NFIB*, 567 U.S. at 570 (emphasis added))).

[31] *Id.* at 23–24.

17

- The Supreme Court held the shared-responsibility payment could be treated as the tax the Individual Mandate triggered based on the following factors: The payment
  - "is paid into the Treasury by 'taxpayer[s]' when they file their tax returns,"
  - "does not apply to individuals who do not pay federal income taxes because their household income is less than the filing threshold,"
  - "amount is determined by such familiar factors as taxable income, number of dependents, and joint filing status,"
  - "is found in the Internal Revenue Code and enforced by the IRS," and
  - "yields the essential feature of any tax: It produces at least some revenue for the Government."[32]
- In light of the TCJA, § 5000A(b) no longer "looks like a tax in many respects."[33] It now fails at least Factor 1 (no longer paid by taxpayers into the Treasury), Factor 3 (no amount and $0 is not determined by familiar factors), Factor 4 (not enforced by the IRS) and, crucially, Factor 5 (no longer yields the "essential feature" of a tax).
- Section 5000A(b) now fails four out of the five factors identified by the Supreme Court as justifying its saving construction, including the one feature the Supreme Court identified as "essential."[34] The mandate therefore no longer triggers a tax.

Accordingly, the Court finds the Fifth Circuit is likely to draw a straight line from the majority's reasoning in *NFIB* and agree that the Individual Mandate cannot be sustained under the saving construction that construed the mandate as triggering a tax.[35]

---

[32] *NFIB*, 567 U.S. at 563–64.

[33] *Id.* at 563; *see* December 14, 2018 Order 24–25, ECF No. 211.

[34] The Intervenor Defendants contend that "the Fifth Circuit is unlikely to share this Court's view that the production of revenue at all times is the *sine qua non* of a tax." Intervenor Defs.' Mot. Stay 9. This Court does not have a view on the issue. But the Supreme Court does. *See NFIB*, 567 U.S. at 564 (reasoning that "the essential feature of any tax" is that "[i]t produces at least some revenue for the Government"). And the Court finds that the Fifth Circuit is likely to follow it.

[35] Nothing in *United States v. Ardoin*, 19 F.3d 177 (5th Cir. 1994), alters this analysis. There, the Fifth Circuit held that 26 U.S.C. §§ 5821, 5861(d), (e), (f), (l), 5871, and 5845 remained permissible exercises of Congress's Tax Power even though the provisions taxed an illegal activity and an Executive branch agency refused to accept applications to pay the taxes created by the provisions. *Ardoin*, 19 F.3d at 179–80. The *Ardoin* decision does not abrogate the Supreme Court's holding that the generation of revenue is the essential feature of a tax—and not only because a Fifth Circuit opinion ought not be read to contravene Supreme Court precedent. The two attacks on the constitutionality of the tax provisions in *Ardoin* were that they (1) taxed an activity that was no longer legal and (2) were no longer enforced by the Bureau of Alcohol,

ii.    <u>Unconstitutional Under the Interstate Commerce Power</u>[36]

The Individual Mandate continues to be unsustainable under Congress's Interstate Commerce Power, as the Supreme Court already held, for the following reasons:

- The Supreme Court held the Individual Mandate is unconstitutional under the Interstate Commerce Clause.[37]

- The Individual Mandate no longer triggers a tax, so the saving construction crafted in *NFIB* no longer applies.[38]

- Even under the saving construction crafted in *NFIB*, the Individual Mandate was a requirement to act—otherwise, the failure to act would not have triggered a tax.[39]

---

Tobacco, and Firearms (ATF). As to the first challenge, the court reasoned that "Congress can tax illegal conduct" so that "[a]lthough it is illegal to possess or manufacture these weapons, one illegally doing so would be required to register them with ATF and pay taxes on them." *Id.* at 180. The illegality of the activity did not render the legislation a nullity. Here, even though applicable individuals are required to purchase ACA-compliant health insurance, if someone disobeyed that requirement they would not be subject to a tax—because it is gone. The Intervenor Defendants make that point repeatedly. As to the second challenge, the court reasoned that, whatever the agency's enforcement decisions, the *legislation* continued to give "ATF . . . the authority to tax now-illegal macheguns . . . Thus, the basis for ATF's authority to regulate— the taxing power—still exists; it is merely not exercised." *Id.* Here, however, the IRS's authority to tax noncompliance is gone. In other words, *Ardoin* confirms that legislative text is the proper object of any analysis of legislative activity—Executive actions do not constitutionalize or de-constitutionalize Legislative actions. And here, Congress itself *legislatively eliminated* the shared-responsibility payment.

[36] *See* December 14, 2018 Order 27–34, ECF No. 211.

[37] *NFIB*, 567 U.S. at 572 (majority).

[38] *See* Josh Blackman, *Undone: the New Constitutional Challenge to Obamacare*, 23 TEX. REV. L. & POL. (forthcoming 2018) (manuscript at 17) ("Now that the penalty has been zeroed out, and the saving construction cannot hold, we are left with '[t]he *most straightforward reading* of the mandate.' What is that reading? Section 5000A 'commands individuals to purchase insurance.'" (quoting *NFIB*, 567 U.S. at 562)).

[39] *See* December 14, 2018 Order 32–33, ECF No. 211; *accord* Intervenor Defs.' Mot. Stay 9, ECF No. 213-1 ("In *NFIB*, the Supreme Court held that *the requirement of maintaining minimum coverage* went beyond Congress's powers under the Commerce Clause because it '*compels* individuals' to participate in commerce." (citing *NFIB*, 567 U.S. at 552) (first emphasis added, second emphasis in Motion)). As the Intervenor Defendants recognize, the Supreme Court in *NFIB* did not hold that the *shared-responsibility payment* impermissibly compelled the purchase of health insurance. Instead, the Chief Justice reasoned that "[t]he *individual mandate* . . . compels individuals to *become* active in commerce by purchasing a product." *NFIB*, 567 U.S. at 552 (Roberts, C.J.) (first emphasis added). The elimination of the shared-responsibility payment, but not the Individual Mandate, does not obviate that text-driven reasoning.

- All that remains now is a written law with plain text that mandates the Individual Plaintiffs to purchase minimum essential coverage—which the evidence suggests they and others will do.[40]

  - Plain text confirms the Individual Mandate is a mandate.[41] It is entitled, "*Requirement* to maintain minimum essential coverage."[42] It states, "An applicable individual *shall . . . ensure* that the individual . . . is covered."[43]

  - Five Supreme Court Justices concluded "[t]he most straightforward reading of the mandate is that it commands individuals to purchase insurance. After all, it states that individuals 'shall' maintain health insurance."[44]

  - Surrounding text confirms the Individual Mandate creates an obligation in the absence of the shared-responsibility payment.[45] Section 5000A(e), for example, "did and still does exempt some individuals from the eliminated shared-responsibility payment but not the Individual Mandate."[46] Section

---

[40] *See* December 14, 2018 Order 29–30, ECF No. 211; *accord* Blackman, *supra* note 38, at 12 ("According to a November 8, 2017 report from CBO and the Joint Committee on Taxation, CBO observed that 'with no penalty at all, only a small number of people who enroll in insurance because of the mandate under current law would continue to do so solely because of a willingness to comply with the law.' The number is no doubt 'small,' but it is not zero. No matter how small this class is, such virtuous individuals do exist. Therefore, a certain number of individuals are *still* affected by a penalty-less mandate. The mandate still has force, even if no penalty accompanies it." (citation omitted)).

[41] *See* December 14, 2018 Order, 30–32, ECF No. 211. *See also United States v. Kaluza*, 780 F.3d 647, 658 (5th Cir. 2015) ("When construing statutes and regulations, we begin with the assumption that the words were meant to express their ordinary meaning." (quoting *Bouchikhi v. Holder*, 676 F.3d 173, 177 (5th Cir.2012))); *Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355, 364 (5th Cir. 2009) (en banc) (Jones, J., concurring) ("Proper statutory analysis begins with the plain text of the statute.").

[42] 26 U.S.C. § 5000A(a) (emphasis added).

[43] *Id.* (emphasis added); *see Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399 (2008) (reasoning "'shall' imposes obligations on agencies to act"); *Lopez v. Davis*, 531 U.S. 230, 241 (2001) (noting "shall" indicates an intent to "impose discretionless obligations").

[44] *NFIB*, 567 U.S. at 562 (Roberts, C.J.); *id.* at 662 (joint dissent) ("In this case, there is simply no way, 'without doing violence to the fair meaning of the words used,' *Grenada County Supervisors v. Brogden,* 112 U.S. 261, 269 (1884), to escape what Congress enacted: a mandate that individuals maintain minimum essential coverage, enforced by a penalty.").

[45] *Id.* at 665 (joint dissent) (noting that "some are exempt from the tax who are not exempt from the mandate—a distinction that would make no sense if the mandate were not a mandate"); *see Doe v. KPMG, LLP*, 398 F.3d 686, 688 (5th Cir. 2005) ("When interpreting a statute, we start with the plain text, and read all parts of the statute together to produce a harmonious whole.").

[46] December 14, 2018 Order 33, ECF No. 211. It is not surprising Congress would subject some individuals to the mandate but not the penalty. Congress's stated goal was to "add millions of new consumers to the health insurance market, increasing the supply of, and demand for, health care services, and . . . increase the number and share of Americans who are insured." 42 U.S.C. § 18091(2)(C). Congress made a policy

20

5000A(d) "exempted, and continues to exempt, certain individuals from the Individual Mandate itself."[47]

- o Reading the Individual Mandate to be anything other than a mandate would twice violate the canon against surplusage by rendering the mandatory words of § 5000A(a) ineffective—i.e., "requirement" and "shall"—and rendering whole provisions of § 5000A ineffective—i.e., §§ 5000A(d) and (e).[48]

- • Written law is binding, with or without the specter of an enforcement provision.[49]

  - o The Individual Mandate, § 5000A(a), is federal law—having satisfied the Constitution's bicameralism and presentment requirements—and federal

---

[47] December 14, 2018 Order 33, ECF No. 211.

decision that some individuals should not be subject to the penalty but should still be bound to satisfy their legal obligation to maintain minimum essential coverage. That policy decision has always been embedded in the ACA's plain text.

[48] *Id.* at 31; *accord NFIB*, 567 U.S. at 665 (joint dissent).

[49] December 14, 2018 Order 29–30, ECF No. 211. The Intervenor Defendants assert the Plaintiffs are not bound by federal law unless compelled by "force, threats, or overwhelming pressure." *See* Intervenor Defs.' Mot. Stay 9, ECF No. 213-1. In other words, "might makes right." But "might makes right" is incompatible with the concept of a "government of laws, and not of men." *See* John Adams, NOVANGLUS ESSAYS NO. 7 (Feb. 6, 1775). And it is incompatible with the concepts of equality and, relatedly, government by consent. *See* DECLARATION OF INDEPENDENCE (U.S. 1776) ("We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness. That to secure these rights, Governments are instituted among Men, *deriving their just powers from the consent of the governed*." (emphasis added)). That the binding nature of law is justified by something other than brute force is a first principle of American society and in the very nature of a written Constitution—as well as constitutionally sanctioned statutes. *Cf.* Nicholas C. Dranias, *Consideration As Contract: A Secular Natural Law of Contracts*, 12 TEX. REV. L. & POL. 267, 270–71 (2008) (contrasting those such as John Locke and St. Thomas Aquinas "who viewed law as deriving its justification from natural principles of morality [against] those who viewed law as having, and needing, no justification other than the force that backs it" and noting that "Lockean philosophy provided the theoretical substance of the Declaration of Independence, the Federalist Papers, the popularly distributed pamphlets of Thomas Paine, and the Constitution"); *id.* (noting Locke rejected the "pre-philosophical tradition best exemplified by the words of Thrasymachus in Plato's Republic: 'I say that justice is simply what is good for the stronger'"); Hadley Arkes, *The Natural Law Challenge*, 36 HARV. J.L. & PUB. POL'Y 961, 963 (2013) ("He [John Marshall] assumed [in *Gibbons v. Ogden*] that all of his literate readers understood that, before we can carry out a demonstration, certain axioms had to be in place—like the law of contradiction. They were things that had to be grasped, as the saying went, *per se nota* as true in themselves. As Hamilton put it in the Federalist No. 31, there are certain 'primary truths, or first principles, upon which all subsequent reasonings must depend.' They contain, he said, 'an internal evidence which antecedent to all reflection or combination commands the assent of the mind.'" (citations omitted)). In any event, the Intervenor Defendants' view does not comport with *NFIB*'s recognition that the Individual Mandate *itself* is compulsory. *See NFIB*, 567 U.S. at 552 (Roberts, C.J.) ("The *individual mandate* . . . compels individuals to *become* active in commerce by purchasing a product." (first emphasis added)).

law is *inherently* binding on those within its jurisdiction.[50] Not even the Founders, who were leery of Federal power, argued otherwise.[51]

o   This is as true with respect to the Constitution as it is with respect to the Individual Mandate: Most of the Constitution's provisions are unaccompanied by a penalty—tax or otherwise. Yet time and again courts recognize the Constitution, as written law, is inherently binding.[52]

The Individual Mandate no longer triggers a tax and therefore can no longer be read as an exercise of Congress's Tax Power. That being true, the Court finds the Fifth Circuit is unlikely to either disagree with the Supreme Court's *NFIB* holding that the mandate is unsustainable under Congress's Interstate Commerce Power or accept the alternative theory that the mandate, though it regulates interstate conduct, is simply not binding.

---

[50] *See, e.g.*, U.S. CONST. art. VI. ("[T]he laws of the United States . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby."); *United States v. Grumka*, 728 F.2d 794, 797 (6th Cir. 1984) (per curiam) ("It is the duty of all citizens to obey the law . . . ."); *Montero v. City of Yonkers*, 890 F.3d 386, 396 (2d Cir. 2018) (noting the "obligation as a citizen to obey the law").

[51] *See, e.g.*, THE FEDERALIST NO. 28 (Alexander Hamilton) ("It merits particular attention in this place, that the laws of the Confederacy as to the enumerated and legitimate objects of its jurisdiction will become the Supreme Law of the land, to the observance of which all officers, legislative, executive, and judicial in each State will be *bound by the sanctity of an oath*." (emphasis added)).

[52] Consider, for example, a suit against the President brought by Intervenor Defendant the District of Columbia alleging violations of the Constitution's Emoluments Clauses. *See* Complaint ¶ 2, *District of Columbia v. Trump*, No. 8:17-cv-01596 (D. Md. June 12, 2017), ECF No. 1. The Foreign Emoluments Clause provides that "no person holding any office of profit or trust under them, *shall*, without the consent of the Congress, accept of any present, emolument, office, or title, of any kind whatever, from any king, prince, or foreign state." U.S. CONST. art. I, § 9, cl. 8. (emphasis added). The Domestic Emoluments Clause provides that "[t]he President *shall*, at stated times, receive for his services, a compensation, which *shall* neither be increased nor diminished during the period for which he shall have been elected, and he shall not receive within that period any other emolument from the United States, or any of them." *Id.* art. II, § 1, cl. 7 (emphasis added). Neither of the clauses includes an enforcement provision—certainly, neither imposes a tax penalty. But both use the word "shall," and both are binding by nature. Intervenor Defendant the District of Columbia understands that basic truth in the context of its suit against the President. There, the District of Columbia asserts, "Applied to President Trump's diverse dealings, the *text and purpose of the clause* speak as one: absent the consent of Congress, private enrichment through the receipt of benefits from foreign governments *is prohibited*." Complaint ¶ 6, *Trump*, No. 8:17-cv-01596 (D. Md. June 12, 2017), ECF No. 1 (emphasis added); *accord* Pls.' Opp'n Mot. Dismiss 59, No. 8:17-cv-01596 (D. Md. Nov. 7, 2017) ("Because 'the President is *bound* to abide by the *requirements*' of these Clauses, his *obligation* to comply with them 'is ministerial and *not discretionary*.'" (citation omitted) (emphasis added)). The President is prohibited not by "force, threats, or overwhelming pressure" but by the text and purpose of a provision that states what he shall and "shall not" do. The Individual Mandate is no different.

### iii.   *Frost* Is Not Dispositive[53]

*Frost* does not control or require invalidating Congress's tax bill for the following reasons:

- In *Frost*, the plaintiff challenged the later-in-time legislation.[54] Here, the Plaintiffs do not challenge the later-in-time legislation.[55]

- In *Frost*, all parties agreed the earlier-in-time legislation was constitutional—and the Supreme Court *expressly relied on that concession*.[56] Here, the entire case is about the constitutionality of the earlier-in-time legislation.

- In *Frost,* the later-in-time legislation did not render an earlier law unconstitutional—it was *itself* unconstitutional because *it* created disparately treated classes.[57] Here, the later-in-time TCJA is constitutional.

  - Anyways, the later-in-time TCJA does not render the ACA unconstitutional—it abrogates the ground on which the Supreme Court concluded the ACA could be saved.[58]

---

[53] *See* December 14, 2018 Order 54 n.34, ECF No. 211.

[54] *Frost*, 278 U.S. at 518–19; *see id.* at 519 (pleading that "that *the proviso*, as construed and applied by the commission . . . was invalid as contravening the due process and equal protection of the law clauses of the Fourteenth Amendment" (emphasis added)).

[55] *See* Am. Compl. 28, ECF No. 27 ("Section 5000A's individual mandate exceeds Congress's enumerated powers by forcing Individual Plaintiffs to maintain ACA-compliant health insurance coverage."). To acknowledge what the Plaintiffs claim and do not claim is not to "conclude that a party can plead its way around *Frost*." Intervenor Defs.' Mot. Stay 10, ECF No. 213-1. It is a recognition of the fundamental rule in district court proceedings that a claim not raised in the complaint is not properly before the court. *Cf. Cutrera v. Bd. Supervisors La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint . . . is not properly before the court."); *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990) ("As the district court correctly noted, this claim was not raised in [plaintiff's] second amended complaint . . . and, as such, was not properly before the court.").

[56] *Frost*, 278 U.S. at 519 ("Both parties definitely concede the validity of these provisions, and, for present purposes at least, we accept that view."); *id.* at 526 ("Here it is conceded that the statute, before the amendment, was entirely valid.").

[57] *Id.* at 524 (noting the "classification *created by the proviso*" (emphasis added)); *id.* ("*[T]he proviso*, as here construed and applied, baldly creates one rule for a natural person and a different and contrary rule for an artificial person." (emphasis added)); *id.* (reasoning the proviso, not the original law, "produces a classification"); *id.* (reasoning the proviso, not the original law, "is essentially arbitrary"); *id.* at 525 (acknowledging "the inequality created by" the proviso, not the original law).

[58] *See NFIB*, 567 U.S. at 574–75 (Roberts, C.J.) ("[T]he statute reads more naturally as a command to buy insurance than as a tax, and I would uphold it as a command if the Constitution allowed it. It is only because the Commerce Clause does not authorize such a command that it is necessary to reach the taxing power question. And it is only because we have a duty to construe a statute to save it, *if fairly possible*, that § 5000A can be interpreted as a tax. Without deciding the Commerce Clause question, I would find no basis to adopt such a saving construction." (emphasis added)).

- *Frost* stands only for the proposition that courts may invalidate unconstitutional action and preserve constitutional action; it does not empower the judiciary to construe constitutional action as unconstitutional to preserve unconstitutional action as constitutional.

For these reasons, the Fifth Circuit is unlikely to invalidate Congress's *constitutional* tax law under the guise of *Frost*, a decision that invalidated an *unconstitutional* law. To read *Frost* as empowering courts to invalidate Congress's constitutional legislation to save a judicial opinion that admittedly construed unconstitutional legislation as something other than what Congress intended would go above and beyond any limits on the judicial power yet seen.

### iv.   Individual Mandate Inseverable[59]

The Individual Mandate is entirely inseverable for the following straightforward reasons:

- The test for severability is congressional intent.[60]

- Congressional intent is expressed through enacted text.[61]

---

[59] *See* December 14, 2018 Order 34–55, ECF No. 211.

[60] *See id.* at 35–37; *accord Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 191 (1999) ("The inquiry into whether a statute is severable is essentially an inquiry into legislative intent."); *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987) ("The more relevant inquiry in evaluating severability is whether the statute will function in a *manner* consistent with the intent of Congress." (emphasis in original)); *Regan v. Time, Inc.*, 468 U.S. 641, 653 (1984) (plurality) ("Whether an unconstitutional provision is severable from the remainder of the statute in which it appears is largely a question of legislative intent, but the presumption is in favor of severability."). *But see R.R. Ret. Bd. v. Alton R.R. Co.*, 295 U.S. 330, 362 (1935) (majority) (recognizing "the presumption . . . of an intent that, unless the act operates as an entirety, it shall be wholly ineffective" (citing *Williams v. Standard Oil Co.*, 278 U.S. 235, 242 (1929); *Utah Power & Light Co. v. Pfost*, 286 U.S. 165, 184 (1932))).

[61] *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) ("The task of resolving the dispute over the meaning of [a provision] begins where all such inquiries must begin: with the language of the statute itself." (citing *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985))); *Kaluza*, 780 F.3d at 658 ("The starting point in discerning congressional intent is the existing statutory text." (quoting *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004))); *Hotze*, 784 F.3d at 997 (noting "the best evidence of Congress's intent is the statutory text" (quoting *NFIB*, 567 U.S. at 544)); *EEOC v. Hernando Bank, Inc.*, 724 F.2d 1188, 1190 (5th Cir. 1984) ("Congressional intent and purpose are best determined by an analysis of the language of the statute in question.").

- If the enacted text is unambiguous, no further inquiry is permitted.[62]

- The enacted text is unambiguous: The Individual Mandate is "essential" to the ACA.[63]

  - The Supreme Court relied on the import of this plain text before *and* after the exchanges were created and the Individual Mandate was in effect.[64]

  - The past two Administrations have agreed the Individual Mandate is inseverable from the guaranteed-issue and community-rating provisions.[65]

  - No Congress—not in 2017, not ever—repealed the Individual Mandate.[66]

  - No Congress—not in 2017, not ever—repealed the ACA's Findings.[67]

  - The Court cannot rely on the 2017 Congress's elimination of *the shared-responsibility payment* to treat the textually and functionally distinct *Individual Mandate* as implicitly repealed when Congress left the Individual Mandate as enacted text and left in place other text that calls the

---

[62] *Germain*, 503 U.S. at 253–54 ("When the words of a statute are unambiguous, this first canon is also the last: 'judicial inquiry is complete.'"); *Ron Pair*, 489 U.S. at 241 ("[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917))).

[63] *See* December 14, 2018 Order 37–41, ECF No. 211.

[64] *See* December 14, 2018 Order 41–46, ECF No. 211; *King v. Burwell*, 135 S. Ct. 2480, 2487 (2015) (citing 42 U.S.C. § 18091(2)(I)); *NFIB*, 567 U.S. at 556 (Roberts, C.J.) ("It is precisely because these individuals, as an actuarial class, incur relatively low health care costs that the mandate helps counter the effect of forcing insurance companies to cover others who impose greater costs than their premiums are allowed to reflect." (citing 42 U.S.C. § 18091(2)(I))); *id.* at 596 (Ginsburg, J., joined by Breyer, Kagan, and Sotomayor, JJ.) ("A central aim of the ACA is to reduce the number of uninsured U.S. residents . . . The minimum coverage provision advances this objective." (citing 42 U.S.C. §§ 18091(2)(C) and (I))); *id.* at 650 (joint dissent) ("First, the Government submits that § 5000A is 'integral to the Affordable Care Act's insurance reforms' and 'necessary to make effective the Act's core reforms.' . . . Congress included a 'finding' to similar effect in the Act itself." (citations omitted)).

[65] *See* December 14, 2018 Order 42, n.29, ECF No. 211.

[66] *See* 26 U.S.C. § 5000A(a). The 2017 Congress, in passing the TCJA, reduced the shared-responsibility payment to $0. It did not repeal the Individual Mandate.

[67] *See* 42 U.S.C. § 18091. "All told, Congress stated three separate times that the Individual Mandate is essential to the ACA. That is once, twice, three times and plainly. It also stated the absence of the Individual Mandate would 'undercut' its 'regulation of the health insurance market.' Thirteen different times, Congress explained how the Individual Mandate stood as the keystone of the ACA. And six times, Congress explained it was not just the Individual Mandate, but the Individual Mandate 'together with the other provisions' that allowed the ACA to function as Congress intended." December 14, 2018 Order 40, ECF No. 211. The 2017 Congress did not repeal this plain text.

Individual Mandate—not the functionally distinct shared-responsibility payment—"essential."[68]

- o The Constitution's separation of powers prohibits the Court from doing for Congress what Congress tried and failed to do itself.[69]

- o Floor statements and policy arguments do not supplant enacted text or allow the Court to construe what Congress did and did not do as what a party asserts Congress *almost* did and did not do.[70]

---

[68] *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) ("The intention must be clear and manifest. And in approaching a claimed conflict, we come armed with the strong presumption that repeals by implication are disfavored and that Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute." (cleaned up)); *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 664 (2007) ("The Ninth Circuit's reading of § 7(a)(2) would not only abrogate § 402(b)'s statutory mandate, but also result in the implicit repeal of many additional otherwise categorical statutory commands . . . While the language of § 7(a)(2) does not explicitly repeal any provision of the CWA (or any other statute), reading it for all that it might be worth runs foursquare into our presumption against implied repeals."); *Posadas v. Nat'l City Bank of New York*, 296 U.S. 497, 503 (1936) ("The amending act just described"—like the TCJA—"contains no words of repeal; and if it effected a repeal of section 25 of the 1913 act, it did so by implication only. The cardinal rule is that repeals by implication are not favored."); *Lockhart v. United States*, 546 U.S. 142, 149 (2005) (Scalia, J., concurring) (noting an "already-powerful presumption against implied repeals"); *United States v. Cavada*, 821 F.2d 1046, 1047 (5th Cir. 1987) ("We say, therefore, that there is a presumption against implicit repeal."); *Victorian v. Miller*, 813 F.2d 718, 721 (5th Cir. 1987).

[69] For example, the House passed H.R. 3762 in 2015 which included a repeal of the Individual Mandate. *See* CONGRESSIONAL RESEARCH SERVICE, LEGISLATIVE ACTIONS IN THE 112TH, 113TH, AND 114TH CONGRESSES TO REPEAL, DEFUND, OR DELAY THE AFFORDABLE CARE ACT 7 (February 7, 2017). But that version of the bill could not garner the necessary votes in the Senate: "Lacking . . . a supermajority in the Senate, the Republicans chose instead to modify the provisions so that they would not violate the Byrd Rule. The Senate version kept the mandates but eliminated the penalties for noncompliance." *Id.* at 8. This is one example of how Congress attempted to, but did not, repeal the mandate. And it is a powerful illustration of why the thing Congress *did* do—eliminate the shared-responsibility payment—is not the thing Congress *did not* do—repeal the Individual Mandate. Yet the Intervenor Defendants insist the Court must construe the former as the latter. This is far beyond the Court's power. *See Epic Sys. Corp.*, 138 S. Ct. at 1624 ("[I]t's the job of Congress by legislation, not this Court by supposition, both to write the laws and to repeal them."); *United States v. Goldenberg*, 168 U.S. 95, 102–03 (1897) ("The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used. He is presumed to know the meaning of words and the rules of grammar. The courts have no function of legislation, and simply seek to ascertain the will of the legislator.").

[70] *See, e.g.*, Intervenor Defs.' Resp. 29–30, ECF No. 91 (collecting statements by members of 2017 Congress). "More fundamentally, . . . intentions do not count unless they are enshrined in a text that makes it through the constitutional processes of bicameralism and presentment." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1487 (2018) (Thomas, J., concurring) (citing *Wyeth v. Levine*, 555 U.S. 555, 586–588 (2009) (Thomas, J., concurring in judgment)). But "[b]ecause we have a Government of laws, not of men, we are governed by legislated text, not legislators' intentions—and especially not legislators' hypothetical intentions." *Id.* (cleaned up).

- Congress included a severability clause for Medicaid Expansion but not for the Individual Mandate, which Congress called "essential."[71]

- The 2017 Congress's "decision" to not repeal the remainder of the ACA was not a "decision" that supports an inference of severability intent—it was a consequence of the TCJA being passed as part of the budget and reconciliation process.[72]

- If Congress intends to sever the Individual Mandate from the remainder of the ACA, Congress can sever the Individual Mandate from the remainder of the ACA. The Court cannot do that for Congress.[73]

Accordingly, the Fifth Circuit is unlikely to accept the Intervenor Defendants' countertextual severability argument based on extratextual evidence.[74] Policy arguments and

---

[71] See December 14, 2018 Order 40, n.26, ECF No. 211. As noted in the December 14, 2018 Order, the absence of a severability clause is by no means dispositive, but it is certainly of evidentiary value in a situation where one provision—the Individual Mandate—was called "essential" and contained no severability clause while another part of the statute—Medicaid Expansion—was not called "essential," did contain a severability clause, and was expressly held by the Supreme Court to be severable to the extent necessary *due to the severability* clause. *See NFIB*, 567 U.S. at 586 (Roberts, C.J., joined by Breyer and Kagan, JJ.) (noting the Supreme Court was "follow[ing] Congress's explicit textual instruction"); *id.* at 645 (Ginsburg, J., joined by Sotomayor, J.) ("I agree . . . that the Medicaid Act's severability clause determines the appropriate remedy."); *see also id.* at 544 (majority) ("Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally." (citing *Russello v. United States*, 464 U.S. 16, 23 (1983))).

[72] See CONGRESSIONAL RESEARCH SERVICE, THE BUDGET RECONCILIATION PROCESS: STAGES OF CONSIDERATION ii (January 4, 2017) ("In adopting a budget resolution, Congress is agreeing upon its budgetary goals for the upcoming fiscal year. Because it is in the form of a concurrent resolution, however, it is not presented to the President or enacted into law. As a consequence, any statutory changes concerning spending or revenues that are necessary to implement these policies must be enacted in separate legislation."). Even if it were appropriate to look beyond the unambiguous text of the ACA, in other words, the 2017 Congress demonstrated *no legislative intent* to leave the ACA intact when it passed the TCJA because the TCJA gave Congress *no legislative choice* on the matter.

[73] See, e.g., *Alton*, 295 U.S. at 362 ("[W]e cannot rewrite a statute and give it an effect altogether different from that sought by the measure viewed as a whole."); *Hill v. Wallace*, 259 U.S. 44, 70 (1922) (severing an inseverable statute would be "legislative work beyond the power and function of the court"); *Oneale v. Thornton*, 10 U.S. 53, 68 (1810) ("Men use a language calculated to express the idea they mean to convey. If the legislature had contemplated various and successive sales, so that any intermediate contract or purchaser was within the view of the lawmaker and intended to be affected by the power of resale given to the commissioners, the words employed would have been essentially different from those actually used.").

[74] The Intervenor Defendants assert, "Nor is the Fifth Circuit likely to conclude that the 2017 Congress demonstrated an intent to unwind the entire ACA by choosing not to repeal Section 5000A(a) or 42 U.S.C. § 18091." Intervenor Defs.' Mot. Stay 10 n.5, ECF No. 213-1. This is a mischaracterization of the Court's reasoning and conclusion. The Court did not conclude "the 2017 Congress demonstrated an intent to unwind the entire ACA"—it concluded exactly the opposite. The Court concluded that, if any intent can be inferred from the 2017 Congress's budget and reconciliation legislation at all, it is that Congress intended to *preserve*

countertextual evidence do not change the text Congress enacted, and "[a]s Justice Kagan recently stated, 'we're all textualists now.'"[75] This reflects a deep-seated respected within the judiciary for its role within the separation of powers: Discerning congressional intent from the end product of a constitutionally mandated process for legislative action. "If the text is sufficiently clear, the text usually controls. The text of the law is the law."[76] And the enacted text could not be clearer as to Congress's intent that the Individual Mandate not be severed from the ACA. To accept the Intervenor Defendants' countertextual argument based on extratextual evidence would represent a breathtaking conception of the judicial power.[77]

### 2.    The Equities Favor a Stay

As to the remaining elements of the stay analysis, the Intervenor Defendants assert "[t]he equities . . . tip overwhelmingly in favor of a stay." Intervenor Defs.' Mot. Stay 11, ECF No. 213-

---

the Individual Mandate—which remains on the books—because it understood the mandate was "essential" to the remainder of the ACA. In other words, the enacted text the Court has to work with unequivocally communicates that (1) the Individual Mandate is essential to the ACA functioning as Congress intended, (2) the mandate operates independently of the tax penalty, and (3) the mandate remains on the books. And because courts are better positioned to interpret written law than pick policy, Congress must be the one to repeal the Individual Mandate if that is what it intends to do. It has not.

[75] Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 HARV. L. REV. 2118, 2118 (2016) (reviewing Robert A. Katzmann, JUDGING STATUTES (2014)) (citation omitted). *See* John F. Manning, *Textualism and Legislative Intent*, 91 VA. L. REV. 419, 424 (2005) ("Textualists . . . deny that Congress has a collective will apart from the outcomes of the complex legislative process that conditions its ability to translate raw policy impulses or intentions into finished legislation. For them, intended meaning never emerges unfiltered; it must survive a process that includes committee approval, logrolling, the need for floor time, threatened filibusters, conference committees, veto threats, and the like. For better or worse, only the statutory text navigates all those hurdles. Accordingly, whereas intentionalists believe that legislatures have coherent and identifiable but *unexpressed* policy intentions, textualists believe that the only meaningful collective legislative intentions are those reflected in the *public meaning* of the final statutory text.")

[76] Kavanaugh, *supra* note 75, at 2118.

[77] *See* Transcript of Oral Argument at 36, *NFIB*, 567 U.S. 519 (2012) (No. 11-393) ("JUSTICE KENNEDY: When you say judicial restraint, you are echoing the earlier premise that it increases the judicial power if the judiciary strikes down other provisions of the Act. I suggest to you it might be quite the opposite. We would be exercising the judicial power if one Act was—one provision was stricken and the others remained to impose a risk on insurance companies that Congress had never intended. By reason of this Court, we would have a new regime that Congress did not provide for, did not consider. That, it seems to me can be argued at least to be a more extreme exercise of judicial power than to strike -than striking the whole.").

1. To this point, the Intervenor Defendants catalog the real-life impact the Court's December 14, 2018 Order is likely to have in the absence of time for lawmakers to respond. *See id.* at 13 ("Suddenly declaring [the ACA] void would cause chaos for patients, providers, insurance carriers, and the federal and state governments."). Meanwhile, the Intervenor Defendants point out, "since open enrollment in Texas for 2019 has concluded, the Individual Plaintiffs have already purchased (or declined to purchase) ACA-compliant insurance for 2019. In other words, the Court's decision cannot affect the choices that they have already made for next year." *Id.* at 12.

The Plaintiffs suggest certifying the Order for appeal and therefore do not brief the stay analysis; instead, they "leave to the Court's discretion whether [a stay] may be appropriate under these unique Circumstances." Pls.' Resp. 5–6, ECF No. 216. The Federal Defendants "do not object to Intervenor-Defendants' request that the Court stay enforcement of the Order pending appeal, given the potential for disruption to the healthcare markets if immediate implementation were required." Fed. Defs.' Resp. 10–11, ECF No. 216. "Indeed, the ACA has now been in effect for several years," the Federal Defendants continue, "and it is in the parties' and the public's interest that appellate review be exhausted before the Federal Defendants begin implementing the Court's judgment." *Id.* at 11.

The Intervenor Defendants' arguments on the equities of a stay are well-taken. And the Plaintiffs' and Federal Defendants' agreement, or lack of disagreement, that a stay is warranted for those reasons is telling. The Court therefore **GRANTS** the Intervenor Defendants' request for a stay of the Rule 54(b) Final Judgment on the December 14, 2018 Order.

## IV.     CONCLUSION

"The American rule of law . . . depends on neutral, impartial judges who say what the law is, not what the law should be."[78] And courts must refrain from resolving policy disputes, relying instead on *text*-based decisions.  The more courts step into breaches for Congress, the more courts will be called upon to step into breaches for Congress. That would represent a fundamental shift in the Constitution's careful balancing of powers—not only on the Judiciary-Legislature plane, but also on the citizen-government plane. If the judicial power encompasses ignoring unambiguous enacted text—the text citizens read to know what their representatives have done—to approximate what a judge believes Congress meant to do, *but did not*, then policymaking lies in the hands of unelected judges and Congress may transfer politically unwinnable issues to the bench. This the Constitution does not allow. This the Supreme Court does not allow. And for those reasons, the Court finds it is powerless to read the ACA as the Intervenor Defendants request and believes the Fifth Circuit is unlikely to disagree.

But because many everyday Americans would otherwise face great uncertainty during the pendency of appeal, the Court finds that the December 14, 2018 Order declaring the Individual Mandate unconstitutional and inseverable should be stayed. Accordingly, the Court **ORDERS** that the December 14, 2018 Order, (ECF No. 211), and the Partial Final Judgment severing Count I and finalizing that Order—which will issue by separate order—be stayed during the pendency of the Order's appeal.

**SO ORDERED** on this **30th day** of **December, 2018**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[78] Kavanaugh, *supra* note 75, at 2119.