**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| |
|---|
| TEXAS, *et al.*, |
|         Plaintiffs, |
| v. |
| UNITED STATES OF AMERICA, *et al.*, |
|         Defendants, |
| CALIFORNIA, *et al.*, |
|         Intervenors-Defendants. |

Civil Action No. 4:18-cv-00167-O

**OPPOSED MOTION OF THE U.S. HOUSE OF REPRESENTATIVES TO INTERVENE
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

The United States House of Representatives respectfully moves pursuant to Federal Rule of Civil Procedure 24 to intervene as a defendant in this action.  Intervention as of right is warranted here under Federal Rule of Civil Procedure 24(a) on two independently sufficient grounds:  because 28 U.S.C. § 530D gives the House an unconditional right to intervene and because the statute makes explicit the House's interest in this action, which is not adequately represented by the existing parties.  In the alternative, permissive intervention is warranted under Federal Rule of Civil Procedure 24(b) because Section 530D gives the House, at a minimum, a conditional right to intervene and the House seeks to offer a defense addressing the same questions of law that the present parties are litigating.

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................5

I.     THE HOUSE OF REPRESENTATIVES IS ENTITLED TO INTERVENE AS
       OF RIGHT. .................................................................................................................5

       A.     Intervention as of right under Rule 24(a)(1). ..........................................7

       B.     Intervention as of right under Rule 24(a)(2). ..........................................8

       C.     Timeliness of intervention motion. ........................................................12

II.    IN THE ALTERNATIVE, THIS COURT SHOULD GRANT THE HOUSE OF
       REPRESENTATIVES PERMISSIVE INTERVENTION. .............................................16

CONCLUSION....................................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adolph Coors Co. v. Brady*,
944 F.2d 1543 (10th Cir. 1991) ..................................................................................6

*Ameron, Inc. v. U.S. Army Corp of Eng'rs*,
607 F. Supp. 962 (D.N.J. 1985), *aff'd*, 809 F.2d 979 (3d Cir. 1986)........................6

*Ameron, Inc. v. U.S. Army Corps of Eng'rs*,
787 F.2d 875 (3d Cir. 1986)......................................................................................5

*Aranas v. Napolitano*,
No. 12-1137, 2013 WL 12251153 (C.D. Cal. Apr. 19, 2013) ..................................6

*Aransas Project v. Shaw*,
404 F. App'x 937 (5th Cir. 2010) ............................................................................12

*Avoyelles Sportsmen's League, Inc. v. Marsh*,
715 F.2d 897 (5th Cir. 1983) .....................................................................................4

*In re Balas*,
449 B.R. 567 (Bankr. C.D. Cal. 2011).......................................................................6

*Barnes v. Carmen*,
582 F. Supp. 163 (D.D.C. 1984), *rev'd sub nom. Barnes v. Kline*, 759 F.2d 21
(D.C. Cir. 1984), *rev'd on mootness grounds sub nom. Burke v. Barnes*, 479
U.S. 361 (1987)...........................................................................................................6

*In re Benny*,
44 B.R. 581 (Bankr. N.D. Cal. 1984), *aff'd in part & dismissed in part*, 791
F.2d 712 (9th Cir. 1986) .............................................................................................6

*Bishop v. Smith*,
760 F.3d 1070 (10th Cir. 2014) ..................................................................................6

*Blodgett v. Holden*,
275 U.S. 142 (1927) (Holmes, J.) .............................................................................15

*Brumfield v. Dodd*,
749 F.3d 339 (5th Cir. 2014) ....................................................................................12

*Cardona v. Shinseki*,
26 Vet. App. 472 (2014) ..............................................................................................6

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Cheng Fan Kwok v. INS,*
   392 U.S. 206 (1968)................................................................................................5

*Comm. on the Judiciary of the U.S. House of Representatives v. Miers,*
   542 F.3d 909 (D.C. Cir. 2008)........................................................................13, 14

*Cooper-Harris v. United States,*
   No. 12-cv-00887, 2013 WL 12125527 (C.D. Cal. Feb. 8, 2013) .............................6

*Cozen O'Connor, P.C. v. Tobits,*
   No. 11-0045, 2013 WL 3878688 (E.D. Pa. July 29, 2013) .....................................6

*Dragovich v. U.S. Dep't of Treasury,*
   872 F. Supp. 2d 944 (N.D. Cal. 2012), *vacated in part* (Oct. 28, 2013) ...................6

*Edwards v. City of Houston,*
   78 F.3d 983 (5th Cir. 1996) ...........................................................................9, 12

*Entergy Gulf States Louisiana, LLC v. EPA,*
   817 F.3d 198 (5th Cir. 2016) ..............................................................................12

*Golinski v. U.S. Office of Pers. Mgmt.,*
   824 F. Supp. 2d 968 (N.D. Cal. 2012) ....................................................................6

*INS v. Chadha,*
   462 U.S. 919 (1983)...........................................................................2, 5, 6, 8

*John Doe No. 1 v. Glickman,*
   256 F.3d 371 (5th Cir. 2001) .........................................................................13, 14

*King v. Burwell,*
   135 S. Ct. 2480 (2015)...........................................................................................1

*In Re Koerner,*
   800 F.2d 1358 (5th Cir. 1986) .....................................................................2, 3, 5, 6

*In re Lease Oil Antitrust Litig.,*
   570 F.3d 244 (5th Cir. 2009) .................................................................................5

*Lucas v. McKeithen,*
   102 F.3d 171 (5th Cir. 1996) .........................................................................14, 15

*Lui v. Holder,*
   No. 11-CV-01267, 2011 WL 10653943 (C.D. Cal. Sept. 28, 2011) ........................6

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Marrese v. Am. Acad. of Orthopaedic Surgeons*,
  470 U.S. 373 (1985)......................................................................................................4

*Massachusetts v. U.S. Dep't of Health & Human Servs.*,
  682 F.3d 1 (1st Cir. 2012)...........................................................................................6

*McDonald v. E.J. Lavino Co.*,
  430 F. 2d 1065 (5th Cir. 1970) ..............................................................................12, 13

*McLaughlin v. Hagel*,
  767 F.3d 113 (1st Cir. 2014).......................................................................................6

*In re Moody*,
  46 B.R. 231 (Bankr. M.D.N.C. 1985).......................................................................6

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012).....................................................................................................1

*Nicol v. Gulf Fleet Supply Vessels, Inc.*,
  743 F.2d 298 (5th Cir. 1984) ....................................................................................4

*Pedersen v. Office of Pers. Mgmt.*,
  881 F. Supp. 2d 294 (D. Conn. 2012)........................................................................6

*In re Production Steel, Inc.*,
  48 B.R. 841 (Bankr. M.D. Tenn. 1985).....................................................................6

*Revelis v. Napolitano*,
  844 F. Supp. 2d 915 (N.D. Ill. 2012) ........................................................................6

*Ross v. Marshall*,
  426 F.3d 745 (5th Cir. 2005) .................................................................5, 9, 13, 14

*Rostker v. Goldberg*,
  453 U.S. 57 (1981)......................................................................................................10

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) ..........................................................12, 13, 14, 17

*Stallworth v. Monsanto Co.*,
  558 F.2d 257 (5th Cir. 1977) ...........................................................................14, 15

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Synar v. United States*,
626 F. Supp. 1374 (D.D.C. 1986), *aff'd sub nom. Bowsher v. Synar*, 478 U.S. 714 (1986) ........................................................................................................... 6

*Texas v. United States*,
805 F.3d 653 (5th Cir. 2015) ................................................................... 8, 11, 17

*Texas v. United States*,
No. 4:18-cv-00167-O (N.D. Tex. Apr. 23, 2018) ....................................... 1, 2, 4, 11

*In re Tom Carter Enterprises, Inc.*,
44 B.R. 605 (Bankr. C.D. Cal. 1984) ............................................................. 6

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) .................................................................................. 8, 12

*United States v. AT&T Co.*,
551 F.2d 384 (D.C. Cir. 1976) ..................................................................... 13

*United States v. Harris*,
106 U.S. 629 (1883) ................................................................................... 10

*United States v. Lovett*,
328 U.S. 303 (1946) ..................................................................................... 5

*United States v. Windsor*,
570 U.S. 744 (2013) ............................................................................... 6, 7, 8

*United States v. Windsor*,
No. 1:10-cv-08435-BSJ-JCF (S.D.N.Y. May 5, 2011) ..................................... 6

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,
834 F.3d 562 (5th Cir. 2016) ................................................................. 9, 12, 14

### FEDERAL STATUTES

2 U.S.C. § 5571(a) ................................................................................................ 18

26 U.S.C. § 5000A ............................................................................................... 11

26 U.S.C. § 5000A(a) ............................................................................................ 2

28 U.S.C. § 530D ........................................................................................ passim

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

28 U.S.C. § 530D(a)(1)(B)(ii) ................................................................................7

28 U.S.C. § 530D(b)(2) .......................................................................................2, 9

28 U.S.C. § 2403(a) ......................................................................................2, 7, 10

42 U.S.C. § 18091(2)(D) ............................................................................. passim

RULES

Fed. R. Civ. P. 24(a) ................................................................................... passim

Fed. R. Civ. P. 24(b) ...............................................................................3, 16, 17

Fed. R. Civ. P. 24(c) ............................................................................................18

Fed. R. Civ. P. 54(b) .............................................................................................1

Local Rule 7.1 .......................................................................................................1

CONSTITUTIONAL PROVISIONS

U.S. Const. amend. XX, § 2 ................................................................................13

LEGISLATIVE MATERIALS

H. Res. 6 (2019) ....................................................................................................1

OTHER AUTHORITIES

Letter from Jefferson B. Sessions III, Attorney General, to Paul Ryan, Speaker,
U.S. House of Representatives (June 7, 2018),
https://www.justice.gov/file/1069806/download ........................................2

## INTRODUCTION

In 2010, "to increase the number of Americans covered by health insurance and decrease the cost of health care," *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012), Congress enacted the Patient Protection and Affordable Care Act ("ACA"), a landmark law intended to achieve "near-universal coverage" affordable for all Americans.  42 U.S.C. § 18091(2)(D); *King v. Burwell*, 135 S. Ct. 2480, 2485 (2015) (the ACA's reforms were "designed to expand coverage in the individual health insurance market").  In this litigation, the Plaintiffs ask this Court to "hold that the ACA is unlawful and enjoin its operation" because, in their view, the ACA, "as recently amended, forces an unconstitutional and irrational regime onto the States and their citizens."  Am. Compl. at 2, *Texas v. United States*, No. 4:18-cv-00167-O (N.D. Tex. Apr. 23, 2018) (Dkt. No. 27); *id.* (asserting that the 2017 amendment to the law "renders legally *impossible* the Supreme Court's prior savings construction of the [ACA's] core provision—the individual mandate").  On December 30, 2018, this Court entered partial final judgment on Count I pursuant to Fed. R. Civ. P. 54(b), Order Granting Stay and Partial Final Judgment, *Texas v. United States*, No. 4:18-cv-00167-O (N.D. Tex. Dec. 30, 2018) (Dkt. No. 220), and on January 3, 2019, the Intervenor States filed a notice of appeal, Notice of Appeal, *Texas v. United States*, No. 4:18-cv-00167-O (N.D. Tex. Jan. 3, 2019) (Dkt. No. 224).  Pursuant to House Resolution, H. Res. 6 (2019), the U.S. House of Representatives (hereinafter "the House" or "the House of Representatives"), now moves to exercise its right to intervene as to the remaining Counts of the Complaint so that it may defend the validity of the ACA.[1]

---

[1] Pursuant to Local Rule 7.1, attorneys for the House have conferred with an attorney for each party about this intervention motion.  The Plaintiffs and Federal Defendants oppose this motion.  The Intervenor States take no position with respect to this motion.  The certificate required by the Rule is attached.

While the Department of Justice normally defends the validity of Acts of Congress when they are challenged in court, here it has joined the plaintiffs in *attacking* the validity of the individual mandate, arguing that "[a]s of 2019 . . . the individual mandate [portion of the ACA] will be unconstitutional under controlling Supreme Court precedent."  It also has argued that the law's "guaranteed-issue" and "community-rating" provisions are inseverable from its individual mandate and thus should be invalidated.  Fed. Defs.' Mem. In Response To Pls.' Appl. For Prelim. Inj. at 7, *Texas v. United States*, No. 4:18-cv-00167-O (N.D. Tex. June 7, 2018) (Dkt. No. 92); *see* Letter from Jefferson B. Sessions III, Attorney General, to Paul Ryan, Speaker, U.S. House of Representatives (June 7, 2018), https://www.justice.gov/file/1069806/download ("After careful consideration, and with the approval of the President of the United States, I have determined that, in *Texas v. United States*, . . . the Department will not defend the constitutionality of 26 U.S.C. § 5000A(a), and will argue that certain provisions of the Affordable Care Act (ACA) are inseverable from that provision.").

As the Supreme Court has long recognized, "Congress is the proper party to defend the validity of a [federal] statute when an agency of government, as a defendant charged with enforcing the statute, agrees with plaintiffs that the statute is inapplicable or unconstitutional."  *INS v. Chadha*, 462 U.S. 919, 940 (1983).  Indeed, federal law provides that the Attorney General has a right to intervene in litigation to defend the constitutionality of an Act of Congress when the United States or one of its agencies or officers is not already a party, and it empowers the House and/or the Senate to intervene to defend a statute if the Attorney General fails to do so.  *See* 28 U.S.C. §§ 2403(a), 530D(b)(2); *In Re Koerner*, 800 F.2d 1358, 1360 (5th Cir. 1986) (after Department of Justice intervened pursuant to 28 U.S.C. § 2403(a) to support constitutional challenge to federal statute, House Bipartisan Leadership Group intervened to defend statute's constitutionality); *id*. at

2

1364, 1367 (upholding statute in accordance with the House's arguments).

Intervention as of right is warranted here under Federal Rule of Civil Procedure 24. "On timely motion, the court must permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute," Fed. R. Civ. P. 24(a)(1), or who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest," *id.* 24(a)(2). The House of Representatives has timely filed a motion to intervene, and both subsections of Rule 24(a) are satisfied. First, 28 U.S.C. § 530D gives the House a "right to intervene" when the Attorney General fails to defend the constitutionality of an Act of Congress. Fed. R. Civ. P. 24(a)(1). Second, and at a minimum, Section 530D makes explicit the House's "interest" in "the subject of the action," *id.* 24(a)(2), whenever the Department of Justice declines to defend the constitutionality of a federal law. And "disposing of the action may as a practical matter impair or impede the [House's] ability to protect its interest." *Id.* The Department of Justice is not defending the validity of the individual mandate—arguing to the contrary that it should fall, and that other provisions of the ACA should fall with it—and the Intervenor States have interests that diverge in important respects from those of the House. Thus, the House is entitled to intervene as of right under both Rule 24(a)(1) and Rule 24(a)(2).

In the alternative, and for essentially the same reasons, the House of Representatives satisfies the standard for permissive intervention under Rule 24(b). The House has at least a conditional right to intervene under Section 530D: it seeks to offer a defense addressing the same questions of law that the present parties are litigating, and its participation will cause no undue delay or prejudice to the Court or the parties.

3

Accordingly, the House of Representatives moves to exercise its right to intervene in this case with respect to the ongoing proceedings before this Court concerning Counts II-V of the Plaintiffs' Amended Complaint, so that it can participate, in further proceedings before this Court as well as on appeal of those proceedings, to defend the validity of the ACA, and contend that any unconstitutional provision is severable from the remainder of the statute.

Because the Intervenor States' notice of appeal divested this Court of jurisdiction to grant intervention as to Count I, *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 928 (5th Cir. 1983) ("the filing of a valid notice of appeal from a final order of the district court divests that court of jurisdiction to act *on the matters involved in the appeal*" (emphasis added)); *see Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 298, 299 (5th Cir. 1984), the House does not seek to intervene in this Court with respect to Count I.[2]   The Court retains jurisdiction, however, to permit intervention with respect to the remaining Counts.  *See id.*; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985) ("filing of a notice of appeal . . . divests the district court of control *over those aspects of the case involved in the appeal*" (emphasis added)).  This Court has ruled that those Counts present "distinct" challenges to the ACA's constitutionality from the challenge raised in Count I.  Order Granting Stay and Partial Final Judgment at 5-6, *Texas v. United States*, No. 4:18-cv-00167-O (N.D. Tex. Dec. 30, 2018) (Dkt. No. 220).  The House has a unique institutional interest in participating in this litigation to defend the ACA against the remaining challenges, and intervention should be granted.

---

[2] Although this Court has issued an administrative stay of its own proceedings, the stay order states that "[s]hould further proceedings . . . become necessary or desirable, any party may initiate it by filing an appropriate pleading."  Stay Order and Administrative Closure at 1, *Texas v. United States*, No. 4:18-cv-00167-O (N.D. Tex. Dec. 30, 2018) (Dkt. No. 223).  The House notes that it plans simultaneously to seek to intervene in the Fifth Circuit appeal and will file a motion to intervene in that appeal as soon as a docket number exists that would permit it to do so.

## ARGUMENT

I. **THE HOUSE OF REPRESENTATIVES IS ENTITLED TO INTERVENE AS OF RIGHT.**

Under Federal Rule of Civil Procedure 24(a), "[o]n timely motion, the court must permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute," Fed. R. Civ. P. 24(a)(1), or who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest," *id.* 24(a)(2). The rule "is to be construed liberally," with "doubts resolved in favor of the proposed intervenor." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009) (citations and internal quotation marks omitted). "[I]ntervention of right must be measured by a practical rather than technical yardstick" and "should generally be allowed where no one would be hurt and greater justice could be attained." *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005) (citations and internal quotation marks omitted). That remains true when intervention is sought after a district court has entered a judgment. *See id.* at 754.

Intervention is particularly appropriate in a case like this one given that "Congress is the proper party to defend the validity of a [federal] statute when an agency of government, as a defendant charged with enforcing the statute, agrees with plaintiffs that the statute is inapplicable or unconstitutional." *Chadha*, 462 U.S. at 940 (citing *Cheng Fan Kwok v. INS*, 392 U.S. 206, 210 n.9 (1968), and *United States v. Lovett*, 328 U.S. 303 (1946)); *see In Re Koerner*, 800 F.2d at 1360, 1364, 1367 (upholding constitutionality of federal statute that Department of Justice refused to defend after allowing the House to intervene to defend it); *Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d 875, 888 n.8 (3d Cir. 1986) ("Congress has standing to intervene whenever the executive declines to defend a statute or, as in this case, actually argues that it is unconstitutional").

Most recently, when the Department of Justice declined to defend the constitutionality of the Defense of Marriage Act (DOMA), the House of Representatives of the 112th Congress intervened in more than a dozen cases in order to defend the law.[3]   Although the Department of Justice contended that the House should be permitted to intervene only to "present[] arguments in support of the constitutionality of Section 3," *see, e.g.*, Def.'s Response to Mot. to Intervene at 2, *United States v. Windsor*, No. 1:10-cv-08435-BSJ-JCF (S.D.N.Y. May 5, 2011) (Dkt. No. 20), no court denied the House full party status.   And outside the context of DOMA, various courts, including the Fifth Circuit, have routinely granted motions to intervene filed by the House of Representatives.[4]

In this case, too, intervention as of right by the House of Representatives is proper.   Both of the independent grounds for intervention as of right under Rule 24(a) are satisfied.   And the

---

[3] *United States v. Windsor*, 570 U.S. 744 (2013); *McLaughlin v. Hagel*, 767 F.3d 113 (1st Cir. 2014); *Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014); *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 682 F.3d 1 (1st Cir. 2012); *Cardona v. Shinseki*, 26 Vet. App. 472 (2014); *Cooper-Harris v. United States*, No. 12-cv-00887, 2013 WL 12125527 (C.D. Cal. Feb. 8, 2013); *Golinski v. U.S. Office of Pers. Mgmt.*, 824 F. Supp. 2d 968 (N.D. Cal. 2012); *Lui v. Holder*, No. 11-CV-01267, 2011 WL 10653943 (C.D. Cal. Sept. 28, 2011); *Aranas v. Napolitano*, No. 12-1137, 2013 WL 12251153 (C.D. Cal. Apr. 19, 2013); *Revelis v. Napolitano*, 844 F. Supp. 2d 915 (N.D. Ill. 2012); *Cozen O'Connor, P.C. v. Tobits*, No. 11-0045, 2013 WL 3878688 (E.D. Pa. July 29, 2013); *Dragovich v. U.S. Dep't of Treasury*, 872 F. Supp. 2d 944 (N.D. Cal. 2012), *vacated in part* (Oct. 28, 2013); *Pedersen v. Office of Pers. Mgmt.*, 881 F. Supp. 2d 294 (D. Conn. 2012); *In re Balas*, 449 B.R. 567 (Bankr. C.D. Cal. 2011).

[4] *See, e.g., Chadha*, 462 U.S. at 930 n.5; *In re Koerner*, 800 F.2d at 1360 (5th Cir.); *Adolph Coors Co. v. Brady*, 944 F.2d 1543, 1546 (10th Cir. 1991); *Synar v. United States*, 626 F. Supp. 1374, 1378-79 (D.D.C. 1986), *aff'd sub nom. Bowsher v. Synar*, 478 U.S. 714 (1986); *Ameron, Inc. v. U.S. Army Corp of Eng'rs*, 607 F. Supp. 962, 963 (D.N.J. 1985), *aff'd as modified on reh'g*, 809 F.2d 979 (3d Cir. 1986); *Barnes v. Carmen*, 582 F. Supp. 163, 164 (D.D.C. 1984), *rev'd sub nom. Barnes v. Kline*, 759 F.2d 21, 22 (D.C. Cir. 1984), *rev'd on mootness grounds sub nom. Burke v. Barnes*, 479 U.S. 361, 362 (1987); *In re Production Steel, Inc.*, 48 B.R. 841, 842 (Bankr. M.D. Tenn. 1985); *In re Moody*, 46 B.R. 231, 233 (Bankr. M.D.N.C. 1985); *In re Tom Carter Enterprises, Inc.*, 44 B.R. 605, 606 (Bankr. C.D. Cal. 1984); *In re Benny*, 44 B.R. 581, 583 (Bankr. N.D. Cal. 1984), *aff'd in part & dismissed in part*, 791 F.2d 712 (9th Cir. 1986).

House of Representatives of the 116th Congress "timely" filed this motion, Fed. R. Civ. P. 24(a), the same day the new Congress came into being.

### A.      Intervention as of right under Rule 24(a)(1).

First, as required by Rule 24(a)(1), the House of Representatives has an unconditional right to intervene here pursuant to federal law.  As described above, federal law recognizes the uniquely important role of the United States Government in defending the constitutionality of Acts of Congress in litigation.  Under 28 U.S.C. § 2403(a), "[i]n any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene . . . for argument on the question of constitutionality."  When the Attorney General decides not to exercise the authority to defend the validity of an Act of Congress, the House and/or Senate are empowered by statute to intervene in order to exercise that power.  Thus, 28 U.S.C. § 530D requires the Attorney General to "submit to the Congress a report of any instance in which the Attorney General or any officer of the Department of Justice" declines to defend the constitutionality of an Act of Congress "within such time as will reasonably enable the House of Representatives and the Senate to take action, separately or jointly, to intervene in timely fashion in the proceeding."  28 U.S.C. § 530D(a)(1)(B)(ii), (b)(2).  Indeed, as the Supreme Court has observed, "when Congress has passed a statute and a President has signed it, it poses grave challenges to the separation of powers for the Executive at a particular moment to be able to nullify Congress' enactment solely on its own initiative."  *United States v. Windsor*, 570 U.S. 744, 762 (2013).

### B.     Intervention as of right under Rule 24(a)(2).

If there were any doubt about the House's right to intervene in this case under Rule 24(a)(1), there can be no reasonable question that intervention as of right is alternatively provided for here by Rule 24(a)(2).   Under that rule, a party who claims such an interest is entitled to intervene as of right if "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest" and "existing parties [do not] adequately represent that interest."  Fed. R. Civ. P. 24(a)(2); *see Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (explaining that the interest inquiry "turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way").

The requirements of Rule 24(a)(2) are fully satisfied here.  As Section 530D reflects, the House has a powerful and unique institutional interest in defending an Act of Congress in this Court and on appeal to the Fifth Circuit.  That interest is fundamental to "the legislative power" in our Federal system, which the Executive Branch's decision that it will not fully defend the constitutionality of an existing statute undermines.  *Windsor*, 570 U.S. at 762; *see also Chadha*, 462 U.S. at 940.  The House's institutional interest encompasses not only defending the constitutionality of the statute's provisions, but also ensuring the proper application of severability principles, which determine whether other provisions of the statute must fall when one provision is deemed unconstitutional.  As already noted, numerous courts, in cases involving a variety of contexts, have recognized the House's fundamental interest in this context by granting motions for intervention filed by the House.  *See* pp. 5-6, *supra*.

Here too, no existing party "adequately represent[s]" the House's interest.  Fed. R. Civ. P. 24(a)(2).  Under Rule 24(a)(2), the House's burden to establish inadequate representation is a "minimal" one, and the House need show only that representation by existing parties "may be" inadequate.  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see, e.g.*,

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016) (noting with respect to adequacy of representation "the broad policy favoring intervention in our precedent").   A presumption of adequate representation arises when (1) "the putative representative is a governmental body or officer charged by law with representing the interests of the [proposed intervenor]," or (2) when the proposed "intervenor has the same ultimate objective as a party to the lawsuit," in which case the proposed intervenor "must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996).  Neither presumption defeats intervention by the House under Rule 24(a)(2) here.

First, the Attorney General plainly does not adequately represent the House's interest in this case.  Section 530D establishes that the Department of Justice can no longer be regarded as "charged by law with representing the interests" of the House, *Edwards*, 78 F.3d at 1005, when the Department has decided not to fully defend the constitutionality of a statute.  *See* 28 U.S.C. § 530D(b)(2) (contemplating that the House and/or Senate will separately "take action . . . to intervene" when the Department of Justice decides not to defend a statute).  In addition, the Attorney General plainly has a different ultimate objective in this case than the House does, because he (like the Plaintiffs) has affirmatively argued that a provision of the statute is unconstitutional and is inseverable from other provisions.  The House disagrees with the Attorney General's position, which (if enforced) would erase in significant part the statute that Congress enacted, and the House is prepared to argue against this position in any relevant additional proceedings in this Court and on appeal.  *See Ross*, 426 F.3d at 761.  This divergence of interest exists with respect to all of the remaining Counts.  Counts II, III, and V, like Count I, assert that the ACA is unconstitutional for various reasons, and the Attorney General will thus likely agree

with the Plaintiffs with respect to those counts. Count IV asserts that agency regulations promulgated pursuant to the ACA are invalid under the Administrative Procedure Act because the ACA is unconstitutional. The Attorney General will presumably accept the Plaintiffs' premise that the ACA is unconstitutional, while the House would defend on the premise that the statute is valid.

Second, the Intervenor States do not adequately represent the interest of the House. The Intervenor States are not charged with representing the institutional interests of any part of the Federal Government. Indeed, as we have already shown, federal law specifically recognizes the value of having a federal party defending the constitutionality of a federal statute. *Compare* 28 U.S.C. § 2403(a) (permitting the United States to intervene when the constitutionality of a federal law is at issue), *with id.* § 2403(b) (permitting a State to intervene when the constitutionality of the State's law is at issue); *see* 28 U.S.C. § 530D. These provisions reflect the unique interest, not shared by any non-federal party, that Branches of the Federal Government have in defending the constitutionality of a federal statute. The House, unlike the Intervenor States, is part of a "coequal branch of government." *Rostker v. Goldberg*, 453 U.S. 57, 64 (1981). Its "Members take the same oath [members of the judiciary] do to uphold the Constitution of the United States." *Id.* The House thus has an institutional interest not only in defending an Act of Congress against constitutional challenge, but also in defending its prerogative, as a coordinate branch of government, to interpret the Constitution and to pass laws based on that interpretation. *Cf. United States v. Harris*, 106 U.S. 629, 635 (1883) ("Proper respect for a co-ordinate branch of the government requires the courts of the United States to give effect to the presumption that congress will pass no act not within its constitutional power."). The Intervenor States thus cannot adequately represent the interests of the House.

Moreover, while the Intervenor States, like the House, wish to preserve the statute in its entirety, the interest of the Intervenor States is adverse to the interest of the House in certain important respects.  *See Texas*, 805 F.3d at 662 ("In order to show adversity of interest, an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case.").  For instance, the Intervenor States did not advance in their briefs in this Court the argument that the Plaintiff States or the Individual Plaintiffs lack standing to bring this action, *see* slip op. 15 & n.6, *Texas v. United States*, No. 4:18-cv-00167-O (N.D. Tex. Dec. 14, 2018) (Dkt. No. 211)—and such an argument may well run counter to the States' long-term interest in arguing that States have standing in a wide variety of circumstances and that the requirements for such standing are not onerous.  The House, however, wishes to ensure that the Plaintiffs demonstrate truly concrete and particularized harm before they can attack the constitutionality of a federal law.  The Intervenor States therefore cannot adequately represent the House's interest in that respect.

That adversity of interests may well extend to the merits of the arguments about the constitutionality of 26 U.S.C. § 5000A with respect to all Counts, because both the standing issue and the issue of Section 5000A's constitutionality involve the question whether Section 5000A (as amended) actually mandates that covered individuals obtain minimum essential health-care coverage.  *See* slip op. 27-34, *Texas v. United States*, No. 4:18-cv-00167-O (N.D. Tex. Dec. 14, 2018) (Dkt. No. 211); Amici Br. of the AMA *et al.* at 6-10, *Texas v. United States*, No. 4:18-cv-00167-O (N.D. Tex. June 14, 2018) (Dkt. No. 123).  The Intervenor States may be unable to make a full-throated defense on the merits because doing so would undermine their claim to standing. In particular, the House and the Intervenor States also likely have diverging interests with respect to Count III, which asserts that the ACA is invalid under the Tenth Amendment, which reserves

11

powers not delegated to the Federal Government to the States. The House is likely to advance a narrower interpretation of the Tenth Amendment's constraints on Congress than would be in the interests of the Intervenor States.

The divergence of interests between the House and the Intervenor States thus meets the House's "minimal" burden to show that existing representation "may be" inadequate and to entitle the House to participate as a party in further litigation of this case and on appeal. *Trbovich*, 404 U.S. at 538 n.10; *see, e.g.*, *Wal-Mart Stores*, 834 F.3d at 569; *Entergy Gulf States Louisiana, LLC v. EPA*, 817 F.3d 198, 203-06 (5th Cir. 2016); *Brumfield v. Dodd*, 749 F.3d 339, 346 (5th Cir. 2014); *Edwards*, 78 F.3d at 1005-06; *Aransas Project v. Shaw*, 404 F. App'x 937, 941 (5th Cir. 2010) (noting that a federal defendant "could not advocate for . . . a state"). In short, whether this Court construes 28 U.S.C. § 530D as vesting the House of Representatives with an unconditional right to intervene, or as making explicit the House's interest in litigation in which the Justice Department refuses to defend the constitutionality of a federal law, intervention as of right is warranted here, and therefore this Court "must permit" the House to intervene so long as the intervention motion is "timely." Fed. R. Civ. P. 24(a).

## C. Timeliness of intervention motion.

This motion is timely. As the Fifth Circuit has recognized, determining whether a motion to intervene is timely requires a "contextual" analysis, and "absolute measures of timeliness should be ignored." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). The key question is whether the timing of the intervenor's motion prejudices the original parties to the proceeding: "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Id.* Thus, "[f]ederal courts should allow intervention 'where no one would be hurt and greater justice could be attained,'" including after entry of judgment. *Id.* (quoting *McDonald v. E.J. Lavino Co.*, 430

F. 2d 1065, 1074 (5th Cir. 1970)); *Ross*, 426 F.3d at 754 (noting that intervention in the district court can be proper after the court has issued its judgment "provided that the rights of existing parties were not prejudiced and intervention did not interfere with the orderly processes of the court").

That permissive standard has led the Fifth Circuit to adopt a contextual four-factor test for timeliness. Under that test, a court should consider (1) "[t]he length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene"; (2) "the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case"; (3) "the extent of the prejudice that the would-be intervenor may suffer if intervention is denied"; and (4) "the existence of unusual circumstances militating either for or against a determination that the application is timely." *Sierra Club*, 18 F.3d at 1205. No single factor is necessary or outcome determinative: "[a] motion to intervene may still be timely even if all the factors do not weigh in favor of a finding of timeliness." *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001).

In this case, all four factors do strongly militate in favor of granting intervention to the House of Representatives. First, as noted above, the House moved to intervene on the very day that the 116th Congress came into being. *See* U.S. Const. amend. XX, § 2 ("The Congress shall assemble at least once in every year, and such meeting shall begin at noon on the 3d day of January…."). As courts have recognized, the House of Representatives is not a "continuing body," and there is a different House of Representatives with the start of each Congress. *United States v. AT&T Co.*, 551 F.2d 384, 390 (D.C. Cir. 1976); *see Comm. on the Judiciary of the U.S. House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) (noting that "the 110th Congress

13

ends on January 3, 2009" and "[a]t that time, the 110th House of Representatives will cease to exist as a legal entity"). Thus, before January 3, 2019, the 116th House did not exist and had no interests to assert. It moved to intervene not only as soon as it "knew . . . of its interest in the case," but also as soon as those interests came into being. *Sierra Club*, 18 F.3d at 1205; *cf. Glickman*, 256 F.3d at 376-77 (timeliness clock begins to run when an applicant "became aware that his [stake] would no longer be protected by the existing parties to the lawsuit" (citations and internal quotation marks omitted)); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264 (5th Cir. 1977) (noting that in the class-action context the Supreme Court has looked to "the speed with which the would-be intervenor in a class suit acted when she became aware that her interests would no longer be protected by the named representatives" (internal quotation marks omitted)).

Second, there will be no prejudice to the Court or the existing parties from the House intervening now. The House will coordinate with the other parties to ensure that intervention does not affect scheduling in this case, whether in proceedings before this Court or on appeal. The Fifth Circuit has found an absence of prejudice when district courts allowed intervention even after judgment was entered, where the only "inconveniences . . . [were] those commonly associated with defending a ruling or judgment on appeal, and would have arisen regardless of whether [the intervenor] sought to intervene before the district court entered its amended judgment." *Ross*, 426 F.3d at 756; *see, e.g.*, *Stallworth*, 558 F.2d at 267 (noting that "it is difficult to understand how either the plaintiffs or Monsanto could have been harmed" by intervention even after a settlement was entered); *Wal-Mart Stores*, 834 F.3d at 565-66 (intervention motion was timely and caused no prejudice where an intervenor "did not seek to delay or reconsider phases of the litigation that had already concluded"); *see also Lucas v. McKeithen*, 102 F.3d 171, 173 (5th Cir. 1996) (intervention motion was untimely where "permit[ting] intervention at the eleventh hour would have resulted in

revisiting of issues previously addressed at length by the parties" and "further delay[ing]" elections).

Third, both the House of Representatives and the public at large will suffer if intervention is denied. As explained above, federal law expressly recognizes the importance of the U.S. Government having the opportunity to defend the constitutionality of Acts of Congress, and contemplates that the House of Representatives and/or the Senate may exercise their authority to defend a federal law if the Department of Justice declines to do so, as the House has done on other occasions. These statutes reflect the fact that "declar[ing] an Act of Congress unconstitutional . . . is the gravest and most delicate duty" that a court "is called on to perform," *Blodgett v. Holden*, 275 U.S. 142, 147-48 (1927) (Holmes, J.), and that a court should endeavor not to do so without the participation of a federal entity defending such an Act. If permitted to intervene, the House would be the only organ of the Federal Government defending the constitutionality of the ACA. And the House, which has a special interest in the preservation of that law unlike that of any other non-federal party, would do so with arguments likely distinct from those of the Intervenor States that are defending the law. It is therefore important to the interests of the United States, the fair administration of justice, and the public's perception that the judiciary has impartially considered all arguments in support of a law's constitutionality that the House of Representatives be permitted to intervene in this action.

Finally, the Fifth Circuit has explained that, if a court determines that a would-be intervenor failed to move promptly for intervention, that entity may nevertheless satisfy the timeliness requirement by providing "convincing justification[s] . . . that for reasons other than lack of knowledge he was unable to intervene sooner." *Stallworth*, 558 F.2d at 266. For the reasons explained above, the House of Representatives did promptly intervene here. But to the extent this

Court disagrees, the fact of a change of leadership of the House, and the House's status as a distinct legal entity when it is reconstituted following an election, provide the requisite "convincing justification" and render the motion timely.

In short, the motion is timely, and intervention by the House of Representatives is warranted.

## II.  IN THE ALTERNATIVE, THIS COURT SHOULD GRANT THE HOUSE OF REPRESENTATIVES PERMISSIVE INTERVENTION.

The House of Representatives also satisfies the standard for permissive intervention under Federal Rule of Civil Procedure 24(b).  Under that Rule, "[o]n timely motion, the court may permit anyone to intervene who . . . is given a conditional right to intervene by a federal statute," Fed. R. Civ. P. 24(b)(1)(A), or who "has a claim or defense that shares with the main action a common question of law or fact," *id.* 24(b)(1)(B).  The Rule directs the Court "[i]n exercising its discretion" to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  *Id.* 24(b)(3).  Because the House satisfies both independent grounds of Rule 24(b)(1) and its participation would not cause any delay or prejudice, permissive intervention is warranted.

First, to the extent the Court concludes that 28 U.S.C. § 530D does not provide an unconditional right to intervene, that statute, at a minimum, provides "a conditional right to intervene," satisfying Rule 24(b)(1)(A).  As explained above, Section 530D contemplates that the House and Senate will have the opportunity to intervene in proceedings where the Department of Justice declines to defend the constitutionality of a federal law.  Congress's determination that either chamber can do so at a minimum demonstrates that a court may allow the House to intervene—that is, that the House has a conditional right to intervene.

Second, the House seeks to address the same questions of law that the original parties to this suit are addressing.  In defense of the ACA's constitutionality, the House intends to present arguments, *inter alia*, about whether the individual mandate is a constitutional exercise of Congress's powers and whether, if not, the individual mandate is severable from the remainder of the ACA.  The House therefore "has a . . . defense that shares with the main action . . . common question[s] of law," satisfying Rule 24(b)(1)(B).

Finally, intervention would not "unduly delay or prejudice the adjudication of the original parties' rights," *id.* 24(b)(3), because the House seeks only to adjudicate the rights of the original parties, so as to ensure that this Court and appellate courts have the benefit of full and adequate briefing on all sides of this case.  The House will file papers on the same schedule as the other parties, and will not file motions that would delay proceedings—for example, a motion for reconsideration of this Court's December 14 decision—that the present parties to the litigation would not otherwise intend to file.  "[N]o one would be hurt and the greater justice could be attained" by permitting the House to intervene, so this Court "should allow intervention." *Texas*, 805 F.3d at 657 (quoting *Sierra Club*, 18 F.3d at 1205).

## CONCLUSION

For the foregoing reasons, the motion by the House of Representatives to intervene should

be granted.  Pursuant to Rule 24(c), this motion is accompanied by an Answer to the Complaint,

attached as an exhibit hereto, that the House proposes to file as a Defendant-Intervenor.

Dated: January 3, 2019

DOUGLAS N. LETTER
  *General Counsel*
TODD B. TATELMAN
  *Deputy General Counsel*
KRISTIN A. SHAPIRO
  *Assistant General Counsel*
BROOKS M. HANNER
  *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
(202) 225-9700 (telephone)
Douglas.Letter@mail.house.gov

Respectfully submitted,

*s/ Donald B. Verrilli, Jr.*
Donald B. Verrilli, Jr. (D.C. Bar No. 420434)
Elaine J. Goldenberg
Ginger D. Anders
Jonathan S. Meltzer
Rachel G. Miller-Ziegler
MUNGER, TOLLES & OLSON LLP
1155 F. Street N.W., 7th Floor
Washington, D.C. 20004-1361
Tel: (202) 220-1100
Fax: (202) 220-2300
Donald.Verrilli@mto.com

Elizabeth B. Wydra
Brianne J. Gorod
Brian R. Frazelle
Ashwin P. Phatak
CONSTITUTIONAL ACCOUNTABILITY
CENTER
1200 18th Street N.W., Suite 501
Washington, D.C. 20036-2513
Tel: (202) 296-6889
elizabeth@theusconstitution.org
brianne@theusconstitution.org

*Counsel for the U.S. House of
Representatives*[5]

---

[5] Attorneys for the Office of General Counsel for the U.S. House of Representatives, including "any counsel specially retained by the Office of General Counsel," are "entitled, for the purpose of performing the counsel's functions, to enter an appearance in any proceeding before any court of the United States or of any State or political subdivision thereof without compliance with any requirements for admission to practice before such court." 2 U.S.C. § 5571(a).

18

## CERTIFICATE OF CONFERENCE

I hereby certify that Brianne J. Gorod conferred concerning this Motion to Intervene with Darren McCarty, counsel for the Plaintiff States, on January 2, 2019; with Robert Henneke, counsel for the Individual Plaintiffs, on January 3, 2019; with Dan Mauler, counsel for the Federal Defendants, on January 3, 2019; and with Melanie Fontes Rainer, counsel for the Intervenor States, on January 2 and 3, 2019.  Mr. McCarty, Mr. Henneke, and Mr. Mauler indicated that the Plaintiff States, the Individual Plaintiffs, and the Federal Defendants, respectively, would oppose this Motion to Intervene.  Ms. Rainer indicated that the Intervenor States take no position with respect to this Motion to Intervene.


Dated: January 3, 2019                                 Respectfully submitted,

                                                       *s/ Donald B. Verrilli, Jr.*
                                                       Donald B. Verrilli, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2019, the foregoing document was filed with the Clerk

of the Court, using the CM/ECF system, causing it to be served on all counsel of record.

Dated: January 3, 2019                          Respectfully submitted,

                                                *s/ Donald B. Verrilli, Jr.*
                                                Donald B. Verrilli, Jr.